BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
Michael Vatis
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
Tel.: 646.593.7050
mvatis@beneschlaw.com

Attorney for Plaintiff
Vinci Brands LLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCI BRANDS LLC, <br><br>                 Plaintiffs, <br>    vs. <br><br> COACH SERVICES, INC., KATE SPADE, LLC, and TAPESTRY, INC. <br><br>              Defendants. | Civil Action No. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**A PRELIMINARY INJUNCTION, TEMPORARY RESTRAINING**
**ORDER, AND ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     STATEMENT OF FACTS ..................................................................................... 2

A.      The License Agreement ..................................................................................... 2

B.      The Nine-Year Relationship Between the Parties ............................................. 3

C.      Kate Spade Defendants' Intentional Breaches of the License Agreement ........ 3

        1.      Defendants' Actions are in Direct Violation of the Force Majeure
                Clause ....................................................................................................... 4

        2.      Defendants' Knowing and Intentional Breach of Sections 3.2, 15.1
                and 15.2 ...................................................................................................... 6

        3.      Vinci's Right to Continue with In-Process Orders .............................. 10

D.      Vinci Has Been Damaged ................................................................................ 11

III.    LAW AND ARGUMENT ..................................................................................... 13

A.      Vinci Will Suffer Irreparable Harm ................................................................ 14

B.      Vinci Has A Strong Likelihood Of Succeeding On The Merits Because
        The Contract Language Is Indisputable and Kate Spade Defendants'
        Termination Notice was both Improper and Defective ..................................... 16

        1.      Defendants Have Breached, and Continue to Breach, the License
                Agreement ................................................................................................ 17

        2.      Case-Mate Undoubtedly Breached its Confidentiality Agreement ....... 19

        3.      Vinci is Likely to Succeed on its Declaratory Judgment Claim ........... 19

        4.      Defendants Tortiously Interfered with Vinci in at least Four
                Documented Ways ................................................................................... 20

C.      The Balance of Hardships Tips Decidedly in Vinci's Favor ............................ 22

D.      Public Policy Favors The Requested Injunction .............................................. 24

E.      The Court Should Grant Vinci a Temporary Restraining Order ...................... 25

IV.     CONCLUSION ..................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alcatel Space, S.A. v. Loral Space & Communs., Ltd.*,
    154 F. Supp. 2d 570 (S.D. N.Y. Apr. 26, 2001) .....................................................13

*Anacomp, Inc. v. Thompson-Kent Financial, Inc.*,
    No. 96 Civ. 5813 (JSM), 1997 WL 23178 (S.D. N.Y. Jan. 22, 1997)...................15

*AYCO Co. v. Feldman*,
    No. 1:10-CV-1213, 2010 WL 4286154 (N.D. N.Y. Oct. 22, 2010) .......................22

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. Mar. 23, 2011) .....................................................................13

*Forbo-Giubiasco, S.A. v. Congoleum Corp.*,
    463 F. Supp. 1240 (S.D. N.Y. Jan. 23, 1979) .........................................................14

*Galvin v. N.Y. Racing Ass'n*,
    70 F. Supp. 2d 163 (E.D. N.Y. Sept. 28, 1998) ......................................................14

*Golden Krust Patties, Inc. v. Bullock*,
    957 F. Supp. 2d 186 (E.D. N.Y. Jul. 16, 2013).................................................15, 16

*Gulf Oil Limited Partnership v. Semerci*,
    No. CV-12-4731 (SJF)(WDW), 2013 WL 394893 (E.D. N.Y. Jan. 30, 2013) ......24

*Jacobson & Co. v. Armstrong Cork Co.*,
    548 F.2d 438 (2d Cir. Jan. 25, 1977) ......................................................................14

*In re Livent Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D. N.Y. Jun. 29, 2001) ......................................................21

*Local 1814, Int'l Longshoremen's Assoc., AFL–CIO v. New York Shipping Assoc., Inc.*,
    965 F.2d 1224 (2d Cir. Jun. 1, 1992) ......................................................................13

*R Squared Glob. v. Serendipity 3, Inc.*,
    No. 11 Civ. 7155 (PKC), 2011 U.S. Dist. LEXIS 127291 (S.D. N.Y. Nov. 3, 2011) ...............................................................................................................15, 22

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. Jan. 23, 2004) ......................................................................14

*Rex Medical L.P. v. Angiotech Pharmaceuticals (US), Inc.*,
    754 F. Supp. 2d 616 (S.D. N.Y. Dec. 1, 2010) .................................................22, 24

*RFP, LLC v. SCVNGR, Inc.*,
  788 F. Supp. 2d 191 (S.D. N.Y. May 12, 2011) ....................................................21

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. Jul. 12, 1995) .........................................................................13

*Trackwise Sales Corp. v. Gucc*i,
  No. 93 Civ. 8021 (TPG), 1993 U.S. Dist. LEXIS 21356 (S.D. N.Y. Dec. 13,
  1993) ......................................................................................................................25

*TV Tokyo Corp. v. 4Kids Entm't, Inc. (In re 4Kids Entm't, Inc.)*,
  463 B.R. 610 (Bankr. S.D. N.Y. Dec. 29, 2011) ...................................................20

*Uni-World Capital L.P. v. Preferred Fragrance, Inc.*,
  73 F. Supp. 3d 209 (S.D. N.Y. Jul. 10, 2014)..................................................22, 24

*US Airways, Inc. v. Sabre Holdings Corp.*,
  No. 11 Civ. 2725 (LGS), 2015 U.S. Dist. LEXIS 118545 (S.D. N.Y. Sep. 4,
  2015) ......................................................................................................................19

*Wolff v. Rare Medium, Inc.*,
  171 F. Supp. 2d 354 (S.D. N.Y. Nov. 13, 2001)...................................................21

*Yahoo! Inc. v. Microsoft Corp.*,
  983 F. Supp. 2d 310 (S.D. N.Y. Oct. 21, 2013)....................................................13

**State Cases**

*Barbes Rest. Inc. v. ASRR Suzer*
  218, 140 A.D.3d 430 (Sup. Ct. N.Y. Jun. 7, 2016)...............................................17

*Demartini v. Chatham Green, Inc.*,
  169 A.D.2d 689 (Sup. Ct. N.Y. Jan. 31, 1991) .....................................................17

*Harris v. Seward Park Hous. Corp.*,
  79 A.D.3d 425 (Sup. Ct. N.Y. Dec. 2, 2010)........................................................17

*Jem Caterers of Woodbury, Ltd. v. Woodbury Jewish Ctr.*,
  No. 2317-12, 2012 N.Y. Misc. LEXIS 3156 (Sup. Ct. Nassau County Jun. 21,
  2012) ......................................................................................................................14

*McLaughlin, Piven, Vogel, Inc. v. W.J. Noland & Co.*,
  114 A.D.2d 165 (2d Dept. 1986), appeal denied, 67 N.Y.2d 606 (1986)..............17

*Parkmed Co. v. Pro-Life Counseling, Inc.*,
  91 A.D.2d 551 (Sup. Ct. N.Y. Dec. 16, 1982) .....................................................17

*Matter of Rockwood Pigments NA, Inc. v. Elementis Chromium LP*,
　　124 A.D.3d 509 (Sup. Ct. N.Y. Jan. 22, 2015) ...................................................................23

*Terrell v. Terrell*,
　　279 A.D.2d 301 (Sup. Ct. N.Y. Jan. 11, 2001) ...................................................................17

*U.S. Ice Cream Corp. v. Carvel Corp.*,
　　136 A.D.2d 626 (Sup. Ct. N.Y. Jan. 19, 1988) ...................................................................23

**Rules**

CPLR § 3001 ...........................................................................................................................19

CPLR § 6301 ...........................................................................................................................14

**Other Authorities**

https://www.apple.com/newsroom/2022/11/update-on-supply-of-iphone-14-pro-
　　and-iphone-14-pro-max/ ...................................................................................................5

Plaintiff Vinci Brands LLC ("Plaintiff" or "Vinci"), by its attorneys, Benesch Friedlander Coplan & Aronoff, respectfully submits this Memorandum of Law in support of its Motion for a Preliminary Injunction, Temporary Restraining Order, and Order to Show Cause.

## I.     PRELIMINARY STATEMENT

Vinci is seeking to preserve its business, its industry reputation and its goodwill, which defendants Coach Services, Inc. ("Coach Services"), Kate Spade, LLC ("Kate Spade), Tapestry, Inc. ("Tapestry") (Coach Services, Kate Spade, and Tapestry are collectively referred to as "Kate Spade Defendants") and Case-Mate, Inc. ("Case-Mate") have irreparably harmed, and continue to irreparably harm, by their blatant and intentional breaches of contract.

Vinci is a global leader in consumer tech protection, carry and power solutions operating an innovative and diverse portfolio of owned and licensed brands at the intersection of design, functionality, sustainability, and lifestyle. Vinci has an award-winning product portfolio that includes protective cases, shells, sleeves, bags, and power management solutions for cell phones and portable electronics sold under the kate spade new york, and Coach brands, among others.

On June 14, 2023, Kate Spade Defendants, without cause, purported to terminate the License Agreement with Vinci effective immediately.  Prior to notifying Vinci of the improper and invalid termination, Kate Spade Defendants began notifying Vinci's customers and suppliers that Kate Spade Defendants had terminated its License Agreement with Vinci; a fact that Kate Spade Defendants admitted to Vinci.  Not only was the issuance of correspondence of any type, without the mutual consent or involvement of Vinci, in direct breach of the terms of the License Agreement, but this correspondence directly interfered – and continues to interfere – with Vinci's relationships and business dealings with its longstanding suppliers and customers.

Unless injunctive relief is entered enjoining all Defendants from further disseminating damaging communications to Vinci's suppliers and customers, Vinci's reputation and goodwill

with longstanding customers and suppliers will be irreparably damaged. Vinci is further seeking to enjoin Kate Spade Defendants to the terms of the License Agreement as follows: (1) preserve the status quo and allow the License Agreement to continue as the default and termination improper under the Force Majeure clause, or (2) even if the termination is found to have been supported, Kate Spade Defendants must be compelled to comply with Section 12.3 and allow Vinci to complete its work in progress. Last, Vinci seeks relief that the Kate Spade Defendants issue a Letter of Authorization to Vinci's suppliers and customers stating that Vinci is authorized to develop, produce, manufacture, promote, advertise, distribute and sell Kate Spade-branded authentic protective technology cases and mobile accessories.

Damages caused by Defendants' actions, as described herein, are extremely difficult to ascertain in that it is impossible to determine the full value of the loss of Vinci's confidential information, its reputation in the industry, and its goodwill with longstanding customers and suppliers. The unequivocal language of the License Agreement supports this relief as the parties expressly agreed and acknowledged that the other party would suffer great and irreparable harm as a result of the breach of any agreement to be performed or observed under the License Agreement and thus acknowledged that the non-breaching party would be entitled to receive from any court of competent jurisdiction a temporary restraining order, preliminary injunction, or permanent injunction, enjoining the breaching party from further breach of the License Agreement.

## II.    STATEMENT OF FACTS

### A.    The License Agreement

Incipio Technologies, Inc. ("Incipio") and Kate Spade, entered into a License Agreement on or about April 25, 2014, wherein Kate Spade, the Licensor, granted to Incipio, the Licensee, and the Licensee accepted, a license to "use the Licensed Marks in the Territory as a trademark(s) in connection with the manufacture, advertising, merchandising, promotion, sale and distribution

of Approved Licensed Merchandise to Approved Customers."  (**Exhibit 1**, Declaration of S. Latkovic, ¶ 5, and **Exhibit A** thereto at § 2.1(a).)[1][2]

Pursuant to its rights under the License Agreement, for the last nine years Vinci designed, developed, manufactured, and sold goods bearing the Licensed Marks, namely mobile phone cases, portable batteries and tablet cases for the following devices:  Apple iPhones, HTC branded smartphones, Samsung branded smartphones, Amazon Kindle Fires, Apple computers and Microsoft Surface computers. (Ex. A, Schedule 1.3.)

For its part, Licensor was entitled to various fees, royalties and payments from Licensee. (Ex. A, §§ 7.2, 8, 9, 10.)

### B.  The Nine-Year Relationship Between the Parties

The License Agreement commenced on April 15, 2014, and continued through December 13, 2016, and the License Agreement provided Incipio with the option to extend.  (Latkovic Dec., ¶¶8, 9). Over the years, the parties entered into several Amendments to the License Agreement, most recently the Sixth Amendment on January 1, 2022. (Latkovic Dec., ¶21, and **Exhibit E** thereto.)  As with all prior Amendments, the Sixth Amendment provided that, except as expressly modified therein, all terms and conditions of the License Agreement are incorporated by reference and remain in full force and effect.   (*Id*.)

### C.  Kate Spade Defendants' Intentional Breaches of the License Agreement

In March 2023, Coach Services alleged that Vinci had failed to make certain payments under the License Agreement and deemed Vinci's payment delay as an event of default. (Latkovic

---

[1] The License Agreement, inclusive of its amendments, is the subject of Plaintiff's Motion for Leave to File Exhibits under Seal.

[2] On or about November 13, 2019, Defendant Coach Services entered into a Fourth Amendment to the License Agreement claimed it held the exclusive right to use, exploit, and sublicense all trademark rights owned by Kate Spade including, without limitation, the Licensed Marks subject to the License Agreement.  Incipio assigned its rights to the License Agreement to Vinci, and KS Defendants consented, on or about August 6, 2021.

Dec., ¶22.) On June 14, 2023, Kate Spade Defendants notified Plaintiff that it was terminating the License Agreement effective immediately, again based on the misguided perception that Vinci's payment delays were unexcused.  (Latkovic Dec., ¶ 51, and **Exhibit I** thereto).

Kate Spade Defendants purported default and subsequent termination are invalid and are in direct breach of the parties' agreement.  Following the invalid termination, Vinci has discovered additional blatant breaches of the License Agreement by Kate Spade Defendants.

*1.  Defendants' Actions are in Direct Violation of the Force Majeure Clause*

The default and termination are in degradation of Section 21.11 of the License Agreement.  (Latkovic Dec., ¶ 31; Am. Cmplt, ¶ 94.)  The parties mutually agreed and assented to the inclusion of a new clause in the License Agreement as part of the Sixth Amendment, a clause drafted by Kate Spade Defendants:

> **21.11 Force Majeure**. Neither Party shall be liable for loss or damage or be deemed to be in default under this Agreement if such Party is prevented or delayed from timely performing any obligation or condition under this Agreement by any act of God or the elements, natural disaster, earthquake; flood; epidemic; pandemic;

(Ex. E, § 6.)

Apple's Fall 2022 rollout of its iPhone 14 and iPhone 14 Plus were directly impacted and delayed by the outbreak of the Omicron variant of SARS-CoV-2. (Latkovic Dec., ¶¶ 23-28.) In October and November 2022, Foxconn's factory in Zhengzhou, China, the worlds' biggest iPhone factory, was hit with the Omicron outbreak, which significantly impacted the production of iPhones.  (*Id*.)  Labor strikes and violent protests followed in China as a result of working conditions in the factories.  Apple released a statement on November 6, 2022, explaining the same:

> COVID-19 restrictions have temporarily impacted the primary iPhone 14 Pro and iPhone 14 Pro Max assembly facility located in Zhengzhou, China. The facility is currently operating at significantly reduced capacity. … However, we now expect **lower iPhone 14 Pro and iPhone 14 Pro Max shipments** than we previously

anticipated and **customers will experience longer wait times** to receive their new products.[3]

(emphasis added).  Because of Apple's dominate market share in the smartphone arena, iPhone cases and accessories are Vinci's number one product accounting for close to ninety percent of its overall business. With delays in the release of the iPhone, the mobile accessory industry as a whole was brought to a standstill; demand for Vinci's iPhone cases and accessories likewise suffered resulting in a serious financial hardship for Vinci. (Latkovic Dec., ¶¶ 29, 31).

Heading into the iPhone 14 launch, Vinci was on pace to have a record year.  The iPhone delays were of no fault of Vinci's and were completely beyond its reasonable control.  The delay and impacts experienced by Vinci fit squarely within the purview of Section 21.11 and thus constitute a Force Majeure Event as defined by that Section.

In November and December 2022, both during virtual meetings between the parties and in follow-up emails, Vinci promptly and proactively put Licensor on notice of the grave impacts Vinci was experiencing as a direct result of the Apple iPhone shortage.  (Latkovic Dec., ¶¶ 29-31). Specifically, Vinci notified Licensor that the SARS-CoV-2 impact on the production of iPhones would significantly impact Vinci's own performance under the License Agreement. (*Id*.)  Vinci explained that the delay would result in a significant decrease of iPhone sales – and in turn, a significant decrease in Vinci's sales of iPhone cases and accessories, thereby causing a serious financial hardship to Vinci – and that Vinci expected the disruption and hardship to last for a significant period of time. (*Id*.)

Vinci again placed Kate Spade Defendants on notice of the ongoing Force Majeure Event via letter dated March 22, 2023, wherein Vinci explained that Apple was unable to deliver iPhone

---

[3] https://www.apple.com/newsroom/2022/11/update-on-supply-of-iphone-14-pro-and-iphone-14-pro-max/

14 devices to market expectations and such delay continued to have a materially negative impact on Vinci's business thereby affecting Vinci's ability to timely issue payment. (*Id.*)

The Force Majeure Event, and its grave impacts, have continued to the present day.  Vinci's financial hardship has yet to subside.  Despite the continuing nature of the Force Majeure Event, Licensor has failed to comply with the requirements of Section 21.11 which expressly require that the parties meet and negotiate in good faith. The ongoing Force Majeure Event renders Licensor's purported default and termination flagrant and willful breaches of the License Agreement as Section 21.11 unambiguously states in pertinent part that no party can be "deemed to be in **default** under this Agreement if such Party is prevented or **delayed** from timely performing **any obligation**". (emphasis added) (Ex. E).

The iPhone 14 delay, caused by Apple and/or caused by the SARS-CoV-2 pandemic, qualifies as a Force Majeure Event.  This Force Majeure Event in turn gravely impacted Vinci's business operations and delayed Vinci's ability to issue periodic payments to Licensor.[4]  The only reasoning or justification for termination set forth by Licensor in its June 14, 2023, Termination Notice is delay of said periodic payments.  However, under the express language set forth in the first sentence of Section 21.11, no default or termination, may arise out of a Force Majeure Event.

2.  *Defendants' Knowing and Intentional Breach of Sections 3.2, 15.1 and 15.2*

Not surprisingly, the License Agreement contemplated an eventual end to the relationship between Licensee and Licensor.  However, announcement of the conclusion of the parties' contractual relationship was a critical component of the License Agreement.  Because the consumer electronic merchandise industry is built on reputation and relationships, in 2014 when the parties negotiated the License Agreement, it was important for the Licensee to maintain a level

---

[4] Licensor was apprised of Vinci's cash flow trouble in late November 2022, which precipitated the parties' agreement on December 1, 2022, to modify Vinci's Royalty payment schedule from a weekly payment to a monthly payment.

of control and input as to the language of any such announcement.  Specifically, the Licensee protected itself under Section 3.2 which states: "The parties agree that any announcement to the public or trade of the termination or expiration of this Agreement will be made only at a time, and by a joint statement mutually agreed upon by the parties." (Latkovic Dec., ¶12; Ex. A, §3.2)

Section 3.2 could not be clearer that any communication concerning the end of the parties' relationship must be a statement issued by both parties, the content of which must also be mutually agreed upon by both parties. It is broad and applies regardless of whether the License Agreement expires or there was a termination event.  It applies regardless of whether the communication is being disseminated to the trade insiders or the public.

Similarly, the License Agreement specifically prohibits the parties from divulging the other parties' confidential information. (Latkovic Dec., ¶¶14, 15; Ex. A, §§ 15.1, 15.2). Confidential Information is defined in Section 15.1 as, without limitation, "business plans, designs, sketches, materials, colors, costs, pricing, customers, production techniques, sources of supply and other documents, non-public information and trade secrets." (*Id*.)  The parties unequivocally agreed that any improper use or disclosure of Confidential Information would be wrongful and would cause irreparable injury." (*Id*.)

Kate Spade Defendants have failed on multiple occasions to abide by the clear mandates of Sections 3.2, 15.1, and 15.2.

Not only did Licensor issue a one-sided statement to the public and/or trade without Vinci's consent or input, but Licensor also issued various communications *prior* to Licensor formally issuing its improper notice of termination to Vinci, a fact Kate Spade Defendants admitted. (Latkovic Dec., ¶¶53, 54.)   At no time prior to Kate Spade Defendants' issuance of the communications did Licensor: (1) place Vinci on notice that Kate Spade Defendants would be

issuing such an announcement, (2) seek consent of Vinci to seek out the consent of Vinci as to the timing of any such announcement, or (3) seek out the consent of Vinci as to a joint statement regarding the termination of the License Agreement. (Latkovic Dec., ¶¶55-57.) This deprived Vinci of the protection and benefit of Section 3.2 and have caused it irreparable damage.

On June 22, 2023, Kate Spade Defendants issued a letter to Vinci's suppliers and customers unambiguously stating "Case-Mate, Inc., is Kate Spade's only and exclusive licensee, and is the sole partner authorized to use the KSNY Trademarks." (Am. Cmplt. ¶ 85-88, and **Exhibit N**.)

Further, some of Licensor's communications have specifically identified Case-Mate, Inc. ("Case-Mate") as an "Authorized Licensee" to "develop, produce, manufacture, promote, advertise, distribute, & sell" "authentic protective technology cases and mobile accessories, and related packaging materials" on behalf of Kate Spade Defendants.  (Latkovic Dec., ¶63.) Notably, in January 2023 (and again in April 2023), Case-Mate expressed an interest in purchasing Vinci's Incase brand; during those discussions, and after execution of a nondisclosure agreement, Vinci shared with Case-Mate some confidential business information.[5] (Latkovic Dec., ¶¶33-50.) Absent the disclosure of Vinci's Confidential Information from Kate Spade Defendants, and the information it learned during its sale talks with Vinci, Case-Mate would not be able to immediately take the place of Vinci with regard to the production and delivery of Kate Spade branded protective technology cases and mobile accessories and related packaging materials.

---

[5] The NDA also contained a clause wherein the parties agreed that money damages would not be an adequate remedy for any breach of the First Confidentiality Agreement, that Vinci shall be entitled to injunctive relief for any threatened or actual breach of the agreement, and that it would waive any requirement for the securing or posting of any bond in connection with such a remedy. (Latkovic Dec., ¶38).

[6] In May 2023 and after receiving and evaluating Vinci's confidential and sensitive business and financial information, Case-Mate acquired a loan made to Vinci by the Siena Lending Group.  After purchasing the loan, Case-Mate proceeded to effectively handicap Vinci and its business by, among other things, sweeping funds out of Vinci's bank accounts and cutting off its funds for operational expenses. (Latkovic Dec., ¶46).

As proof of the same, Vinci has been made aware of communications Case-Mate has issued to Vinci's suppliers and customers, examples include:

- Case-Mate's CEO, Steve Marzio, has personally communicated to Vinci's distributors that "Case-Mate is the new owner of the global license for Kate Spade phone cases & mobile accessories," and stated that the suppliers "may want to immediately ensure that you are sourcing/selling product from the legal vendor," thereby suggesting that Vinci is an "illegal" vendor. (Latkovic Dec., ¶70, and **Exhibit L** thereto.)
- Case-Mate followed up the Marzio communication by calling at least one of Vinci's distributors and threatening that if the distributor does not shift its business from Vinci to Case-Mate, Case-Mate would call all of the distributor's customers and tell them that they are purchasing "illegal" merchandise from Vinci. (Latkovic Dec., ¶71.)
- Case-Mate has contacted customers that have placed orders for Kate-Spade-branded protective technology cases and mobile accessories slated for delivery in advance of the upcoming Fall launch of the iPhone 15. In those communications, Case-Mate has told Vinci's customers that Case-Mate is stepping into the shoes of Vinci, that Vinci is no longer an authorized licensee, and that Vinci can no longer sell any product. (Latkovic Dec., ¶72.)
- Case-Mate has contacted all four of the suppliers Vinci is using for the iPhone 15 launch. Two of them, Chun Lam and Salmon, were both contacted and informed that Case-Mate was the rightful licensee of Kate Spade and had entered into an exclusive licensing agreement with Kate Spade to design, manufacture, and sell phone cases and other mobile accessories globally. In an email, Case-Mate attached a Kate Spade existing product SKU list and referenced artwork and tooling designs to be used for the production of the described merchandise. Case-Mate wanted to know the status of production, including tooling designs, and asked for information and materials regarding designs for past merchandise. The SKU list, which set forth Vinci's unique codes for the Licensed Merchandise, and the referenced artwork and tooling designs, are confidential and sensitive business information of Vinci. (Latkovic Dec., ¶¶61 and **Exhibit J** thereto; **Exhibit 2**, Declaration of A. Wang, ¶¶ 5-9.)
- Case-Mate has also communicated with Superior and advised Superior to discontinue its relationship with Vinci regarding factory production and selling licensed product to Vinci's customers.  (**Exhibit 3**, Declaration of M. Clark Dec., ¶11).

Communications by Case-Mate to Vinci's suppliers and customers have been continuing, and have become increasingly threatening.  These communications from Case-Mate, including from its CEO, Steve Marzio, are an explicit effort to pressure Vinci's suppliers and customers to break their contracts and/or existing relationships with Vinci and move them to Case-Mate. (Latkovic Dec., ¶67).

Vinci is already experiencing the damage from Defendants communications with Vinci's customers and suppliers.  Verizon, a longstanding customer, affirmatively cancelled its order with Vinci until Vinci explained to Verizon that Vinci was authorized to complete the production of licensed merchandise.  (Latkovic Dec., ¶¶73-76; **Exhibit 4,** Declaration of J. Phillip, ¶12-13.) Verizon has also cancelled a meeting that was scheduled for June 23, 2023. (*Id*.) Verizon has stated that they will not speak with Vinci unless it brought a letter from Kate Spade Defendants confirming that Vinci as an authorized supplier.  (*Id*.)  However, the cancellation is not limited to just Vinci's supply of the kate spade Licensed Merchandise, Verizon now refuses to discuss any business with Vinci, including Vinci's non-kate spade merchandise. (*Id*.)  Other customers and suppliers of Vinci's have also asked for an official letter confirming that Vinci can produce and sell the Licensed Merchandise. (*Id*.)  Without such a Letter of Authorization, Vinci's customers will very likely cancel their orders with Vinci, and its suppliers will halt production.  (*Id*.)

These communications by Case-Mate are a direct result of Kate Spade Defendants' disclosure of Vinci's Confidential Information, and Kate Spade Defendants' disclosures and communications in violation of the License Agreement, are improper interference with the contracts and business relationships between Vinci and its customers and suppliers.  And given that Vinci produces, distributes, and sells other merchandise and brands besides the Licensed Merchandise under the License Agreement, if the Defendants succeed in pressuring Vinci's suppliers to stop their production and its customers to cancel their orders, the negative impact on Vinci's reputation and credibility will irreparably harm not only Vinci's existing relationships with its suppliers and customers but also its prospective business with them.

3.    *Vinci's Right to Continue with In-Process Orders*

The License Agreement controls the parties' rights and obligations as concerns Licensed Merchandise in the event of the expiration or termination of the License Agreement.  While

Licensee's on hand, finished inventory is subject to an Inventory Purchase Option, if exercised, upon a valid and proper termination of the License Agreement, Section 12.3 specifically provides that Licensee is permitted to complete production of Approved Licensed Merchandise which is either already in process, or for which written orders have been received by customers, of the date of termination of the agreement (hereinafter, jointly "In-Process Orders").  (Latkovic Dec., ¶13.)

Vinci did have In-Process Orders, both work in production and orders under contract, at the time of Kate Spade Defendants' purported termination. The majority of sales of phone accessories occur when the new model of a mobile phone is launched, and many have been in place and worked on for over a year – Vinci has written orders from retailers and distributors for Kate Spade branded phone accessories to be sold as part of the Fall 2023 new iPhone launch, including from Target, Walmart, Best Buy, Verizon[7]  (Latkovic Dec., ¶89.) Vinci also has millions of dollars' worth of Licensed Merchandise on hand that it is now unable to move.

Kate Spade Defendants have breached their obligations under Section 12.3 of the License Agreement by disseminating untruthful communications to Vinci's suppliers and customers stating that Vinci is no longer able to complete the production of the In-Process Orders for Licensed Merchandise, which has caused, and continues to cause, irreparable damage to Vinci.

### D.    Vinci Has Been Damaged

On June 19, 2023, Vinci issued a Cease-and-Desist letter to Kate Spade Defendants, demanding that Kate Spade Defendants "cease and desist from any further instructions, directives, or communications with Vinci's suppliers, customers, the trade, or the public indicating or suggesting that Licensee is no longer able to manufacture Licensed Merchandise, and from making

---

[7] Phone accessories like those produced by Vinci account for most of the profits retailers make from phone-related sales, as they do not make much profit from sale of the phones themselves. (Latkovic Dec., ¶90.)

any announcements to the trade or the public concerning the purported termination." (Latkovic Dec., ¶79, and **Exhibit M** thereto.)

Vinci also demanded that Kate Spade Defendants direct Case-Mate, in writing, to cease making the same or similar communications to Vinci's suppliers, customers, the trade, or the public, and to cease holding itself out as holding an exclusive licensing agreement with Kate Spade to design, manufacture and sell phone cases and other mobile accessories globally. (*Id.*)

Vinci's Cease and Desist letter further demanded that Kate Spade Defendants send a letter to any supplier or customer of Licensee to which a "LETTER OF AUTHORIZATION" regarding Case-Mate has been disseminated, or to any other person or entity to which any other communication (verbal or written) has been made that states or suggests that Vinci is no longer able to produce Licensed Merchandise, notifying them that Vinci in fact remains able to produce, manufacture, and deliver Kate Spade branded protective technology cases and mobile accessories and related packaging materials until June 30, 2025 (the end of the Renewal Term specified in the Sixth Amendment). (Latkovic Dec., ¶81.)

Kate Spade Defendants have failed to comply with Vinci's demands and thus Vinci continues to suffer damage. Vinci's damage is irreparable and is ongoing. The only way Vinci can be afforded any relief from its damage is by the following: (1) Kate Spade Defendants must be enjoined from terminating the License Agreement as doing so in light of the Force Majeure Event is a material breach of the underlying agreement; (2) Kate Spade Defendants must further be enjoined from prohibiting Vinci's completion of its In-Process Orders in accordance with Section 12.3 of the License Agreement; and (3) Defendants must be enjoined from issuing any additional correspondence regarding the status of the relationship between Plaintiff and Kate Spade Defendants in violation of Section 3.2 of the License Agreement. Kate Spade Defendants

must further be ordered to issue a letter that Vinci is still authorized to manufacture, distribute and sell Licensed Merchandise under the same terms as the License Agreement

## III.    LAW AND ARGUMENT

The "traditional standards which govern consideration of an application for a temporary restraining order . . . are the same as those standards which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Assoc., AFL–CIO v. New York Shipping Assoc., Inc.*, 965 F.2d 1224, 1228 (2d Cir. Jun. 1, 1992).  "A party seeking a preliminary injunction must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. Mar. 23, 2011).  "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits.  A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. Jul. 12, 1995).  A mandatory injunction should issue upon a "clear" or "substantial" showing "that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Id.*  Courts have recognized that "restoration of the status quo may appropriately require one party to perform contractual obligations." *Yahoo! Inc. v. Microsoft Corp.*, 983 F. Supp. 2d 310, 317 (S.D.N.Y. Oct. 21, 2013); *see, e.g.*, *Alcatel Space, S.A. v. Loral Space & Communs., Ltd.*, 154 F. Supp. 2d 570, 580 (S.D.N.Y. Apr. 26, 2001) (injunction "requiring defendants" to comply with the contract "seeks to preserve the status quo" even "though plaintiffs seek to require defendants to take positive acts").

Here, it does not matter whether the requested temporary restraining order and preliminary injunction are viewed as prohibitory or mandatory because injunctive relief is required under either

standard.  Similarly, a temporary restraining order pending a hearing for a preliminary injunction is appropriate "where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had." CPLR § 6301.  The evidence shows that Vinci will suffer grave, irreparable harm if Defendants are not immediately restrained.

### A.      Vinci Will Suffer Irreparable Harm

Defendants' improper communication with Vinci's suppliers and customers, and Kate Spade Defendants' aiding and abetting of Case-Mate's communications with Vinci's suppliers and customers will cause irreparable harm to Vinci.  Vinci will suffer not only an immediate, direct financial impact, but its goodwill, reputation, credibility and business relationships, with both customers and suppliers, that it has cultivated over the years will all be irreparably damaged.

It is well settled that harm that threatens the business's very existence–as opposed to a mere disruption that temporarily impairs one's profits–constitutes irreparable harm.  *See, e.g., Jem Caterers of Woodbury, Ltd. v. Woodbury Jewish Ctr.*, No. 2317-12, 2012 N.Y. Misc. LEXIS 3156, at *10 (Sup. Ct. Nassau County Jun. 21, 2012) (irreparable harm found by, *inter alia,* alleging that defendants' conduct would cause "loss of [plaintiffs'] entire business"). The "loss of business need not be total, so long as it is so great as to seriously compromise the company's ability to continue in its current form." *Galvin v. N.Y. Racing Ass'n*, 70 F. Supp. 2d 163, 170 (E.D. N.Y. Sept. 28, 1998); *Forbo-Giubiasco, S.A. v. Congoleum Corp.*, 463 F. Supp. 1240, 1242 (S.D. N.Y. Jan. 23, 1979) (sudden loss of 70% of sales threatens business's existence constituting irreparable harm.)

Moreover, courts in this Circuit have also found injunctive relief appropriate where, as here, the defendant's actions cause non-monetary loss such as loss of customers, goodwill, credibility and/or business reputation.  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. Jan. 23, 2004) ("irreparable harm through loss of reputation, good will, and business opportunities" warrants injunctive relief); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir.

Jan. 25, 1977) (finding irreparable harm where the plaintiff "presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"); *R Squared Glob. v. Serendipity 3, Inc.*, No. 11 Civ. 7155 (PKC), 2011 U.S. Dist. LEXIS 127291, at *28-31 (S.D. N.Y. Nov. 3, 2011) (party "[did] not seek merely to avoid lost profits, but the loss of its entire business, present and prospective customers, and commercial goodwill" holding that "[w]here a licensee demonstrates facts showing that termination of its licensing agreement will lead to such non-monetary losses, it has met its burden of showing irreparable injury"); *Anacomp, Inc. v. Thompson-Kent Financial, Inc.*, No. 96 Civ. 5813 (JSM), 1997 WL 23178, at *4 (S.D. N.Y. Jan. 22, 1997) ("The loss of goodwill and customers constitute irreparable harm."); *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 196 (E.D. N.Y. Jul. 16, 2013) ("plaintiffs have met their burden of demonstrating that, absent an injunction, plaintiffs will suffer irreparable harm in the form of damage to their good will.").

Vinci suffers both types of irreparable harm as a direct result of Defendants' actions.

Kate Spade Defendants' Licensed Merchandise, which Vinci has sold for the last nine years, account for a significant portion of Vinci's overall sales. If Kate Spade Defendants are not enjoined from their improper termination of the License Agreement, Vinci stands to lose a significant portion of its revenue overnight, would be immediately unable to meet its financial obligations as a going concern, and would ultimately be forced to shutter its business.

Vinci's reputation, credibility and goodwill has also already, and continues to be damaged by the communications that have been exchanged and Vinci's inability to complete its orders.

Vinci's ability to continue with its In-Process Orders – contracts Vinci has already made with its customers and suppliers – threatens its reputation in the industry. Equipment makers–for example Apple—are relying on Vinci to meet the launch date with its accessories with only a

limited number allowed to participate in a launch. If Vinci's accessories do not arrive by the launch date, that equipment maker's trust in Vinci is irrevocably broken, and Vinci's ability to be included in future launches (with or without the Kate Spade Licensed Merchandise) with that equipment maker irreparably damaged. (Latkovic Dec., ¶¶88, 91-92.) If Vinci loses Apple as a launch partner, it also loses the business of those retailers, and there are no other equipment makers or retail companies that have anything close to the same share of the market, or enough market share to allow Vinci to survive in business. (*Id*.) Case-Mate's CEO confirms how damaging missing a launch date would be: "Missing (i.e. late) an iphone launch is catastrophic in this business and it is nearly impossible to get back into the major accounts if there is severe supply disruption....especially in todays cut throat mobile accessory market." (Latkovic Dec., ¶94, and **Exhibit H** thereto).

Accordingly, absent an immediate injunction allowing, *inter alia*, Vinci to continue to operate under the License Agreement, or, in the least, to continue to produce its In-Process Orders, and with that, an Order requiring the issuance of a Letter of Authorization to Vinci's suppliers and customers stating that Vinci is authorized to continue dealing with Kate Spade-branded goods, Vinci will suffer irreparable harm and the ultimate relief that Vinci seeks in this case would become moot by virtue of the passage of time and the destruction of Vinci's business. By the time the Court reaches the ultimate merits of this case, Vinci's suppliers will have terminated their contracts, Vinci's customers will have gone elsewhere, and Vinci's business reputation and goodwill will be nonexistent.

**B.** **Vinci Has A Strong Likelihood Of Succeeding On The Merits Because The Contract Language Is Indisputable and Kate Spade Defendants' Termination Notice was both Improper and Defective**

It is well settled that on a motion for preliminary injunctive relief, a plaintiff need only make a prima facie showing of a likelihood of success on the merits, and need not demonstrate

certainty of success. *Parkmed Co. v. Pro-Life Counseling, Inc.*, 91 A.D.2d 551, 553 (Sup. Ct. N.Y. Dec. 16, 1982); *Terrell v. Terrell*, 279 A.D.2d 301, 303 (Sup. Ct. N.Y. Jan. 11, 2001) (evidence showing likelihood of success on the merits need not be conclusive); *Demartini v. Chatham Green, Inc.*, 169 A.D.2d 689, 690 (Sup. Ct. N.Y. Jan. 31, 1991) (same). To establish a likelihood of success on the merits, "[a] prima facie showing of a reasonable probability of success is sufficient; actual proof of the petitioners' claims should be left to a full hearing on the merits." *Barbes Rest. Inc. v. ASRR Suzer* 218, 140 A.D.3d 430, 431 (Sup. Ct. N.Y. Jun. 7, 2016). Thus, the moving party need only show that it is more likely than not to prevail on its claims. *McLaughlin, Piven, Vogel, Inc. v. W.J. Noland & Co.*, 114 A.D.2d 165, 172 (2d Dept. 1986), appeal denied, 67 N.Y.2d 606 (1986). Here Vinci will succeed on the merits of all eight causes of action.

### 1. *Defendants Have Breached, and Continue to Breach, the License Agreement*

Counts 1, 2 and 3 of the Amended Complaint set forth causes of action for breach of contract adverse Kate Spade Defendants. To demonstrate a likelihood of success on the merits for its breach of contract claim, Vinci must show that (a) the License Agreement with Kate Spade Defendants is valid; (b) Vinci performed its obligations under the License Agreement; (c) Kate Spade Defendants breached the License Agreement; and (d) resulting damages to Vinci. *Harris v. Seward Park Hous. Corp*., 79 A.D.3d 425, 426 (Sup. Ct. N.Y. Dec. 2, 2010). Vinci demonstrates each element of its breach of contract claims as to Sections 3.2, 12.3, and 15.1.

The License Agreement speaks for itself and Kate Spade Defendants acknowledge, in their multiple correspondence with Vinci, that the Agreement is valid. Kate Spade Defendants further attempted to terminate the License Agreement thereby acknowledging the validity of the same.

Vinci has performed all of its material obligations under the License Agreement. (Am. Cmplt, ¶ 121.) While Kate Spade Defendants will argue that Vinci was in breach as a result of its delayed payments, said payment deficiencies do not rise to the level of a material breach and/or

Vinci is otherwise excused from being deemed in default of the License Agreement due to the iPhone 14 Force Majeure Event as discussed above. (Am. Cmplt, ¶¶146.)  Section 21.11 clearly excuses any alleged performance delays of Vinci's and unambiguously states that delays caused by a Force Majeure Event cannot be used to form the basis of a default or termination.  Apart from said payment delays, Vinci fully performed all of its duties and obligations as required under the License Agreement.

As discussed *supra*, Kate Spade Defendants have breached the License Agreement in several ways, each breach alone is a sufficient basis for Vinci to succeed on the merits.  Kate Spade Defendants have breached Section 3.2 by disseminating communications to Vinci's customers and suppliers without notice, consent or input from Vinci.

Similarly, Kate Spade Defendants are in breach of Section 12.3 of the License Agreement for failing to allow Vinci to complete its In-Process Orders in degradation of the clear language of that section as Kate Spade Defendants' and Case-Mate's improper communications to Vinci's suppliers and customers thus wrongfully state, suggest, and indicate that Vinci is no longer able complete the production of Licensed Merchandise.  (Am. Cmplt, ¶ 99.)

Lastly, Kate Spade Defendants' blatant violation of Section 15 arises from Kate Spade Defendants' disclosure of Vinci's Confidential Information to Case-Mate for its own benefit or the benefit of Case-Mat. (Latkovic Dec., ¶¶14, 15, 63.) Sufficient evidence exists, and will be discovered, that Kate Spade Defendants' disclosed Vinci's Confidential Information to Case-Mate.

Vinci has been damaged, and continues to be damaged, by each of these breaches.  Vinci has already suffered financially from Kate Spade Defendants' purported termination and their refusal to allow Vinci to complete its In-Progress Work.  Vinci has also already been impacted by

non-monetary damages, including damage to its customer, distributor and channel partner relationships, as well as damage to its goodwill and business reputation. (Latkovic Dec., ¶83.)

Accordingly, Vinci has demonstrated a likelihood that it will succeed on the merits of its claims for breach of contract and that it needs injunctive relief to prevent further damage.

### 2. *Case-Mate Undoubtedly Breached its Confidentiality Agreement*

The Confidentiality Agreement between Case-Mate and Vinci was also a contract; a contract which Case-Mate blatantly breached. Vinci has evidence showing that Case-Mate has divulged Vinci's confidential and sensitive business and financial information in a manner detrimental to Vinci in violation of the contract; and Vinci will continue to develop evidence as this litigation continues. Case-Mate also divulged Vinci's confidential and sensitive business and financial information for the purpose of unfairly and improperly competing against Vinci in violation of the contract. Absent Case-Mate's access to Vinci's confidential information, Case-Mate would not have been able to contact Vinci's customers and suppliers on the very day Vinci was terminated. As set forth throughout, Case-Mate's breaches of the Confidentiality Agreement have already caused significant damage to Vinci.

### 3. *Vinci is Likely to Succeed on its Declaratory Judgment Claim*

To succeed on a claim for declaratory relief, Vinci must show that there is an actual controversy meaning "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *US Airways, Inc. v. Sabre Holdings Corp.,* No. 11 Civ. 2725 (LGS), 2015 U.S. Dist. LEXIS 118545, at *10 (S.D. N.Y. Sep. 4, 2015); see also, CPLR §3001.

It is clear that Vinci and Defendants have adverse legal interests. The dispute between the parties is live and immediate – Vinci is being impacted and damaged each and every day by the actions of Defendants. A real issue exists between the parties: whether Kate Spade Defendants'

termination of the License Agreement was proper and valid, or whether said termination was invalid because (1) a fatal defect in the notice itself renders the termination ineffective, or (2) the Force Majeure Clause prevented the issuance of the termination thereby invalidating the same.

Kate Spade Defendants' June 14, 2023, Notice of Termination cites to and relies upon the authority of "Section 3.5(a)". However, Section 3.5(a) does not exist within the four corners of the License Agreement. "[U]nder New York law that where, as here, a party seeks what amounts to a forfeiture, a notice of breach will be scrutinized and any inadequacy — be it trivial or material — will defeat such party's claim." *TV Tokyo Corp. v. 4Kids Entm't, Inc. (In re 4Kids Entm't, Inc.)*, 463 B.R. 610, 684 (Bankr. S.D. N.Y. Dec. 29, 2011) (citing *Luxottica Group S.p.A. v. Bausch & Lomb Inc*., 160 F. Supp. 2d 545, 550-551 (S.D. N.Y. 2001)). Accordingly, reliance on this nonexistent provision as the basis for termination renders the termination invalid and ineffective.

Further, and as set forth *supra*, Vinci experienced a Force Majeure Event for which it promptly put Kate Spade Defendants on notice of. The Force Majeure Event caused Vinci to experience business interruptions and cash flow issues preventing it from issuing timely payment to Kate Spade Defendants. Timely payment was the only justification set forth by Kate Spade Defendants in their June 14, 2023, termination letter. However. under the plain language of Section 21.11 of the License Agreement, because Vinci's payment delays were the direct and proximate result of a Force Majeure Event, said payment delays cannot be used as the basis of justification for default or termination. Accordingly, Kate Spade Defendants' termination is not valid or effective, and Vinci is entitled to all of the rights and benefits under the License Agreement. Vinci has set forth sufficient facts to show a likelihood of success on this claim.

### 4.  *Defendants Tortiously Interfered with Vinci in at least Four Documented Ways*

Counts 5, 6, 7, and 8 of Vinci's Amended Complaint are all predicated on Defendant's tortious interference with Vinci in some fashion. "The elements of a claim for tortious interference

with contract claim are well established: the existence of a valid contract; the tortfeasor's knowledge of the contract and intentional interference with it; the resulting breach; and damages." *In re Livent Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 443 (S.D. N.Y. Jun. 29, 2001). The License Agreement is a contract, and Kate Spade Defendants willfully breached it by improperly terminating the contact, by issuing correspondence in violation of Section 3.2 and violations of Section 15.1, and by failing to comply with Section 12.3. Similarly, the elements of tortious interference with a business relationship are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *RFP, LLC v. SCVNGR, Inc*., 788 F. Supp. 2d 191, 195 (S.D. N.Y. May 12, 2011). Last, proof required for a claim of "tortious interference with prospective business advantage requires 'more culpable conduct on the part of the defendant' than tortious interference with contractual relations. *Wolff v. Rare Medium, Inc*., 171 F. Supp. 2d 354, 360 (S.D. N.Y. Nov. 13, 2001). Though each claim requires slightly different proof, Vinci has set forth sufficient facts and evidence necessary to prove each of the four tortious interference claims.

Defendants knew that Vinci had longstanding relationships with its various customers and suppliers. Kate Spade Defendants shared Vinci's Confidential Information with Case-Mate and further issued notices in degradation of Section 3.2 to Vinci's longstanding customers and suppliers which gravely impacted Vinci's business and has harmed its reputation and credibility.

Case-Mate was aware of Vinci's longstanding agreement with Kate Spade Defendants and Case-Mate used and exploited the information it learned during its sales talks with Vinci for its own gain. Case-Mate used that information to induce Kate Spade Defendants to terminate, or

attempt to terminate, the License Agreement with Vinci, and also used that information to damage Vinci in the trade with communications with Vinci's customers and suppliers.

Defendants' actions have harmed and undermined Vinci's relationships with its customers and suppliers, not only as concerns Vinci's existing contracts and relationships with them, but it has damaged Vinci's goodwill and reputation so as to affect any prospective contracts as well.

### C.    The Balance of Hardships Tips Decidedly in Vinci's Favor

An injunction is appropriate because the balance of the hardships tips decidedly in Vinci's favor.  The total destruction of Vinci's business that would result from Kate Spade Defendants being permitted to unlawfully terminate the License Agreement and estopping Vinci from completing its In-Process Orders, while also allowing the communication to Vinci's customer and suppliers to continue in degradation of the terms of the License Agreement, constitutes the maximum possible hardship to Vinci.  By contrast, Defendants would face little if any hardship from the granting of this Injunction as their allegation of delayed payments has a simple remedy.

"The balance of hardships is heavily in plaintiff's favor" where, as here, the requested injunction "would not impose any new legal duty on [Defendant], instead it would give necessary teeth to an existing contractual duty." *Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 236 (S.D. N.Y. Jul. 10, 2014); *see R Squared Global, Inc.*, 2011 WL 5244691, at *8 ("The balance of equities tips decidedly in favor of requiring that the parties continue fulfilling their obligations under the Agreement."); *see also AYCO Co. v. Feldman*, No. 1:10-CV-1213 (GLS/DRH), 2010 WL 4286154, at *12 (N.D. N.Y. Oct. 22, 2010) (the balance tips in Plaintiff's favor where injunction would require Defendant to act "in accordance with terms that he agreed to"). Indeed, courts have held that the balance of hardships weighs in favor of requiring Defendant "to continue performing its obligations under the Agreement" even if that means "bankruptcy" for the Defendant.  *See Rex Medical L.P. v. Angiotech Pharmaceuticals (US), Inc.*, 754 F. Supp. 2d

616 (S.D. N.Y. Dec. 1, 2010) ("The Agreement's unprofitability for [Defendant] does not mean that [Plaintiff] should suffer irreparable harm to reduce [Defendant's] from performance of its contractual obligations."); *Matter of Rockwood Pigments NA, Inc. v. Elementis Chromium LP*, 124 A.D.3d 509, 511 (Sup. Ct. N.Y. Jan. 22, 2015) (balance of equities favors relief where "losing the product will cause [plaintiff's] customers to seek other distributors, and maintaining the status quo pending arbitration…will not cause significant harm to respondent"); *U.S. Ice Cream Corp. v. Carvel Corp.*, 136 A.D.2d 626, 628 (Sup. Ct. N.Y. Jan. 19, 1988) (granting injunction preventing defendant from (i) terminating the plaintiff's license to sell products and (ii) interfering with plaintiff's rights under the license to "preserve the status quo pending trial," reasoning that where there was no "proof that Carvel will be harmed by the granting of injunctive relief…the existence of disputed factual issues [regarding Carvel's attempts to terminate plaintiff's license] should not preclude the remedy").

Here, where no harm or hardship faces Kate Spade Defendants, the propriety of requiring it to honor its contractual obligations is all the more clear.[8]  An injunction would serve to maintain the status quo while allowing Vinci to continue to sell goods under the License Agreement, just as the parties have done for the past nine years, while the lawsuit over the propriety of Kate Spade Defendants' default and termination and litigated.  Throughout the life of the License Agreement, Vinci has fully and faithfully performed without issue.  The relationship between Vinci and Kate Spade Defendants had been one of ease without conflict.  The only dispute between Kate Spade Defendants and Vinci in nine years was the payment delay caused by the Force Majeure Event. There is no harm caused to Kate Spade Defendants if the License Agreement remains in effect; Kate Spade Defendants have an easy and available remedy for their alleged harm as the same can

---

[8]Also, if the Court decides it is necessary, Vinci will of course post a bond.

be rectified by payments and/or money damages.  However, the harm to Vinci is not as clear, Vinci will continue to suffer irreparable damage to its business, including the portions that fall outside of the License Agreement, if immediate injunctive relief is not afforded.

In the least, an injunction allowing Vinci to continue with its In-Process Orders will serve to benefit all parties, as Vinci gets to maintain its status quo as to those orders which would inures to the benefit of Kate Spade Defendants given their entitlement to royalty payments.  Further, an injunction prohibiting Defendants from issuing any other statements in degradation of Section 3.2, and an order requiring the issuance of a letter identifying Vinci as a current authorized manufacturer, distributor and seller of Licensed Merchandise, both preserve the status quo as to Vinci's goodwill and reputation, and causes no harm or impact to Defendants.

**D.      Public Policy Favors The Requested Injunction**

Where, as here, the requested injunctive relief seeks to enforce a contract, the public interest is best served by granting such relief because the "usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy."  *Rex Medical*, 754 F. Supp. 2d at 626; *see Gulf Oil Limited Partnership v. Semerci*, No. CV-12-4731 (SJF)(WDW), 2013 WL 394893, at *6 (E.D. N.Y. Jan. 30, 2013) ("the public interest is best served by enforcement of the [Agreement] and by the assurance that valid contracts will be enforced."); *see also Uni-World Capital*, 73 F. Supp. 3d at 237 (injunctive relief is favored by public policy where it "would tend to encourage parties to abide by their agreements.").  In sum, "public policy holds competent contracting parties to bargains made by them freely and voluntarily, and requires the courts to enforce such agreements." *Rex Medical*, 754 F. Supp. 2d at 626.

So too, the License Agreement should be enforced, particularly given the severe irreparable harm that result if Kate Spade Defendants do not honor their obligations, as they have already proven they won't do.

### E.    The Court Should Grant Vinci a Temporary Restraining Order

An immediate temporary restraining order is necessary in order to preserve Vinci's rights. *Trackwise Sales Corp. v. Gucc*i, No. 93 Civ. 8021 (TPG), 1993 U.S. Dist. LEXIS 21356 (S.D. N.Y. Dec. 13, 1993) (granting TRO enjoining licensor from interfering with Licensee's rights).

As discussed *supra*, even temporarily losing the ability to sell the Licensed Merchandise could put Vinci out of business which supports an automatic finding of irreparable harm.  Further, non-monetary loss such as loss of customers, goodwill and/or business reputation supports the issuance of a temporary restraining order.  As such, Vinci is further entitled to a temporary restraining order enjoining Defendants from interfering with Vinci's completion of its In-Process Orders and a Letter of Authorization must issue to Vinci's customers and suppliers authorizing Vinci to continue dealing in Kate Spade branded goods.  The facts further support a finding that Kate Spade Defendants should be ordered to issue a letter to the trade and public that Vinci is still authorized to manufacture, distribute and sell Licensed Merchandise under the same terms as the License Agreement.

Accordingly, in addition to Vinci's request for a preliminary injunction, sufficient evidence exists to support a request for a Temporary Restraining Order to protect Vinci's rights pending a full hearing on the injunction.

## IV.    CONCLUSION

For the reasons set forth herein, Vinci's motion for preliminary injunction, temporary restraining order and an order to show cause must be granted.

Dated:  June 22, 2023                   Respectfully submitted,

                                                        By:  /s/ Michael Vatis
                                                                Michael Vatis
                                                                **BENESCH, FRIEDLANDER, COPLAN**
                                                                 **& ARONOFF LLP**
                                                                1155 Avenue of the Americas, 26th Floor
                                                                New York, NY 10036
                                                                Tel: 646.593.7050
                                                                mvatis@beneschlaw.com
                                                                *Attorney for Plaintiff*