UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                                          :
VINCI BRANDS LLC,                                         :
                                    Plaintiff,            :
                                                          :
                    -against-                             :        23 Civ. 5138 (LGS)
                                                          :
COACH SERVICES, INC., et al.,                             :
                                    Defendants.           :
                                                          :
-----------------------------------------------------------:     **OPINION AND ORDER**
                                                          :
KATE SPADE LLC, et al.,                                   :
                                    Plaintiffs,           :
                                                          :
                    -against-                             :        23 Civ. 5409 (LGS)
                                                          :
VINCI BRANDS LLC, et al.,                                 :
                                    Defendants.           :
                                                          :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        This action arises out of the termination of a license agreement (the "Agreement")

between Kate Spade LLC ("Kate Spade") as licensor and Vinci Brands LLC ("Vinci") as licensee

for mobile phone cases and similar products.  On June 14, 2023, Kate Spade terminated the

Agreement.  Vinci commenced this action on June 16, 2023, against Coach Services, Inc., Kate

Spade (together, "KSNY") and Tapestry, Inc. (all three together, the "Kate Spade Defendants"),

and on June 23, 2023, moved for a temporary restraining order and preliminary injunction.  Vinci

filed an Amended Complaint (the "Complaint") on June 26, 2023, adding Kate Spade's new

licensee, Case-Mate, Inc. ("Case-Mate"), as a Defendant.  The Complaint alleges improper

termination of the Agreement, as well as other breach of contract claims and tortious interference.

        On June 26, 2023, KSNY filed a related action and cross-moved for a temporary

restraining order and preliminary injunction against Vinci, alleging trademark infringement,

breach of contract, violation of unfair competition law, tortious interference and related claims under both federal and state law.  On July 10, 2023, KSNY filed an amended complaint, adding as a defendant ACS Group Acquisitions LLC ("ACS"), a secured creditor of Vinci.  KSNY does not seek injunctive relief from ACS.

A hearing was held on Vinci's and KSNY's respective cross-motions on June 27, 2023, and the Court reserved judgment.  The parties thereafter finished briefing the cross-motions.  On July 18, 2023, Kate Spade terminated the Agreement again based on additional grounds.

An evidentiary hearing was held on September 6, 2023, to address two factual issues pertinent to the cross-motions -- (1) whether the force majeure events invoked by Vinci caused Vinci's failure to pay with respect to both the June 14, 2023, and July 18, 2023, terminations of the licensing agreement by Kate Spade and (2) whether any default on Vinci's loan from Siena Lending Group, LLC ("Siena") was ever cured or waived.  Vinci called three witnesses and introduced twenty-nine exhibits.  Kate Spade called two witnesses and introduced nine exhibits.  Case-Mate also participated in the hearing, and ACS attended the hearing.

For the reasons below, KSNY's motion for a preliminary injunction is in large part granted, but denied in part.  Vinci's motion for a preliminary injunction is in large part denied, but granted in part.  The respective motions for a temporary restraining order are denied as moot.

## I.    BACKGROUND

The following factual summary is taken from the parties' submissions on these motions, including the evidence presented at the evidentiary hearing.

A.      License Agreement

Founded in 1993, Kate Spade designs, manufactures, markets and distributes lifestyle products including, for example, apparel, bags, footwear and tech accessories.  Kate Spade first registered the KATE SPADE mark in 1997 and now owns more than 65 registrations for its marks at the U.S. Patent and Trademark Office.  Vinci offers consumer tech products such as protective cases, shells and sleeves for cell phones and portable electronics, sold under owned and licensed brands.

In April 2014, Incipio Technologies, Inc. ("Incipio") and Kate Spade entered into the Agreement.  Under the Agreement, Kate Spade granted Incipio a non-exclusive license to use Kate Spade's licensed marks in connection with the manufacture, advertising, merchandising, promotion, sale and distribution of approved licensed merchandise to approved customers.  In exchange, Kate Spade was entitled to various fees, royalties and payments.  The Agreement remained in effect and was amended six times over the following eight years.  On August 6, 2021, the Agreement and all its amendments were transferred and assigned to Vinci.

In September 2022, Kate Spade and Vinci agreed on a modified timeline for Vinci's payment of required fees for fiscal year 2023.  On December 1, 2022, Kate Spade and Vinci agreed to modify the payment plan further to allow for monthly, rather than annual, payments.  On a December 13, 2022, videoconference, Vinci notified Kate Spade that the November 2022 and December 2022 payments would be delayed.  Vinci explained that the Omicron variant of COVID-19, and resulting restrictions imposed by China, had significantly impacted the production of iPhone devices at Apple's primary production facility in Zhengzhou, China.  Vinci further explained that shortages in iPhone devices had caused sales by Vinci to plummet. Following the call, Vinci sent Kate Spade an email summarizing the circumstances and events

that led to the decrease in mobile accessory sales.  Vinci and Kate Spade agreed on an additional modified payment plan on February 14, 2023.

On a March 7, 2023, videoconference, Vinci notified Kate Spade that it would not pay the balance due March 24, 2023.  On March 13, 2023, Vinci proposed to pay a $100,000 installment by March 24, 2023, and the balance in mid-April 2023.

On March 20, 2023, Kate Spade sent Vinci a notice of non-payment, documenting Vinci's failure to pay and demanding payment within three business days of all amounts due (which Kate Spade claimed at the time to be approximately $3.7 million).  On March 22, 2023, Vinci responded to the letter citing supply issues as to the iPhone 14 and, for the first time, formally invoked its rights under the force majeure clause of the Agreement.  Vinci did not cure its alleged non-payment by Kate Spade's March 23, 2023, deadline.  On March 31, 2023, Kate Spade sent Vinci a notice of default and, in a separate letter, asserted that invocation of the force majeure clause was unavailing.  In the notice of default, Kate Spade invited Vinci to engage in further discussion of payment of the outstanding fees.

On June 14, 2023, after receiving no response from Vinci, Kate Spade terminated the Agreement (the "First Termination") pursuant to Section 3.3(a) of the Agreement, which defines failure to pay owed funds as an event of default.  On the same day, Kate Spade and Case-Mate executed a non-exclusive license agreement, granting Case-Mate rights to manufacture, distribute, offer to sell and sell tech accessories, including phone cases, bearing the KATE SPADE marks.

On July 18, 2023, Kate Spade terminated the Agreement again, pursuant to a second notice of termination (the "Second Termination").  The basis for the Second Termination was (1) Vinci's default on its loan obligations to third-party creditor Siena in February 2023, purportedly

triggering an automatic termination under Section 3.3(d) of the Agreement as of the date of the default; (2) Vinci's failure to notify Kate Spade of the default to a third party as the Agreement requires under Sections 3.6(a) and 11.10 and continuing to sell Kate Spade products despite the failure to notify and (3) Vinci's failure to pay under Section 11.8.

**B.     Siena Loan and Vinci's Dealings with Case-Mate**

On August 6, 2021, Vinci, through its co-owners' company Armor Acquisition LLC, entered into a loan agreement with Siena (the "Siena Loan Agreement").  The Siena Loan Agreement was amended ten times, most recently on May 8, 2023.  On February 10, 2023, Siena issued a Notice of Event of Default and Reservation of Rights to Vinci, notifying Vinci that Siena deemed Vinci to be in default because more than 75% of Vinci's accounts payable were more than sixty days past due, contrary to Vinci's ongoing contractual representations that Vinci was able to pay its debts as they came due and had sufficient capital to carry on its business.

Case-Mate competes with Vinci in the phone accessory business.  In January 2023, Case-Mate expressed an interest in purchasing Vinci's Incase brand.  Before disclosing information as part of the due diligence process, Vinci and Case-Mate entered into a non-disclosure agreement on January 26, 2023.  Vinci thereafter disclosed its confidential and sensitive business and financial information specific to the Incase brand to Case-Mate.  Case-Mate chose not to pursue the purchase.

In March 2023, Kate Spade contacted Case-Mate to discuss a potential licensing arrangement for its brands in the mobile device protection market.  In April 2023, Case-Mate again expressed interest in purchasing Vinci's business and brands.  On April 18, 2023, Vinci and Case-Mate entered into a second confidentiality agreement.  In May 2023, after Case-Mate received Vinci's confidential and sensitive business and financial information, the parties ceased

negotiations.  On May 11, 2023, Siena noticed a public sale of Vinci's collateral under Article 9 of the Uniform Commercial Code.  On May 16, 2023, Case-Mate acquired the loan Siena had made to Vinci.  On May 24, 2023, Case-Mate noticed a public sale of Vinci's collateral that superseded Siena's notice of sale.  On June 5, 2023, Vinci paid off the Siena / Case-Mate loan in full, thus avoiding the sale of collateral.

On June 15, 2023, one day after the First Termination, Case-Mate contacted at least two of Vinci's principal suppliers and told them that Case-Mate was now the "rightful" and "exclusive" licensee authorized to design, manufacture and sell Kate Spade-branded phone cases and other mobile accessories.  Vinci alleges that Case-Mate also emailed Vinci's suppliers Vinci's confidential and sensitive business information, including a Kate Spade existing product stock keeping unit ("SKU") list and production timeline.

Vinci also alleges that Case-Mate contacted Vinci's customers with orders pending for Kate Spade-branded products, explaining that Vinci was no longer an authorized licensee.  One major customer, Verizon, canceled its order with Vinci until Vinci could explain that it was authorized to produce and distribute Kate Spade merchandise.  Other Vinci customers and suppliers have asked Vinci for an official letter from Kate Spade confirming the same.

## II.    LEGAL STANDARD

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest."  *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)); *see also AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc.*, 740 F. Supp. 2d 465, 471 (S.D.N.Y.

6

2010) ("It is well established that the standard for an entry of a temporary restraining order is the same as for a preliminary injunction.").[1]  "To warrant a preliminary injunction, [the moving party] need not show that there is a likelihood of success on the merits of all [its] claims for relief. Rather, [the moving party] must show a likelihood of success on the merits of at least one of [its] claims." *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 109 (S.D.N.Y. 2022).

"Courts refer to preliminary injunctions as prohibitory or mandatory.  Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League*, 883 F.3d at 36.  "Because mandatory injunctions disrupt the status quo," they are subject to "a heightened legal standard by showing a clear or substantial likelihood of success on the merits." *Id.* at 37.[2]  In deciding whether a preliminary injunction is mandatory or prohibitory, the Second Circuit has defined "status quo" as "the last actual, peaceable uncontested status which preceded the pending controversy." *Id.*  The last peaceable status between the parties existed when Vinci was licensee.  Because KSNY's injunctive relief would disrupt that status, KSNY is required to meet the heightened standard of showing a clear or substantial likelihood of success on the merits.  KSNY may be subject to the heightened standard for the additional reason that the injunction KSNY seeks "provides [it] substantially all the relief [it] seeks in the litigation, and . . . cannot be meaningfully undone in the event that the enjoined party prevails at trial on the merits."  *See JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667 (2d Cir. 2023).

On issues of state law, New York law governs because the Agreement includes a New

---

[1] The Second Circuit has articulated two versions of this standard.  *Compare N. Am. Soccer League*, 883 F.3d at 37 (three-factor test), *with Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (four-factor test weighing balance of hardships separately from merits issues).
[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

York choice of law provision, and the parties' submissions assume that New York law applies. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law[.]").

## III.    DISCUSSION

### A.    KSNY's Request for Injunctive Relief

KSNY moves for a preliminary injunction that in substance seeks effectuation of its terminations of the Agreement.  KSNY seeks to bar Vinci from (1) continuing to manufacture and sell mobile accessories bearing the KATE SPADE marks, or other merchandise covered by the Agreement; (2) communicating with manufacturers, distributors and other such entities that (i) the Agreement was not terminated, (ii) the Agreement remains in full effect and (iii) Vinci holds a valid license to manufacture and sell Kate Spade-branded merchandise and (3) representing itself as authorized to fulfill orders for mobile accessories bearing the KATE SPADE marks.  KSNY's opening memorandum of law in support of its application for a temporary restraining order and preliminary injunction, filed before the Second Termination, concerns only the First Termination.  KSNY supplemented to reference the Second Termination in later briefs.  Vinci responded to the Second Termination grounds in letters to the Court.  Both terminations were at issue in the evidentiary hearing.

KSNY's requested injunctive relief is granted in large part because KSNY has shown a clear or substantial likelihood of showing that the Second Termination of the Agreement was valid.  KSNY's motion for a preliminary injunction is denied (1) regarding in-process orders as explained below in discussing Vinci's requested relief and (2) seeking to bar Vinci from further breaching the Agreement as Vinci's alleged breach for failure to pay can be remedied with money damages.  Vinci's alleged breach of its post-termination obligations in Section 12 of the

8

Agreement is addressed below in the context of Vinci's similar request to enforce Section 12.

### 1.      KSNY's Trademark and Related Claims

#### a.      Likelihood of Success

At issue on KSNY's trademark related claims is whether KSNY validly terminated the Agreement.  KSNY has shown a clear or substantial likelihood of showing that the Second Termination was valid, but not the First Termination.  KSNY has thus shown a clear or substantial likelihood of success on its trademark and related claims beginning on or after July 18, 2023, the date of the Second Termination.

#### i.      First Termination

KSNY has failed to show a clear or substantial likelihood of success in showing that the First Termination was proper.  Although Vinci failed to make multiple payments to KSNY, culminating in KSNY's March 2023 notice of default, the operation of the Agreement's force majeure clause likely will be found to have prevented KSNY from lawfully terminating the Agreement pursuant to that notice with the First Termination on June 14, 2023.  The parties agreed to the force majeure clause in the Sixth Amendment to the Agreement, which was effective as of January 1, 2022, and which KSNY drafted.  The clause states:

> **21.11 Force Majeure.**  *Neither Party shall be* liable for loss or damage or be *deemed to be in default under this Agreement if such Party is prevented or delayed from timely performing any obligation or condition under this Agreement by* any act of God or the elements, natural disaster, earthquake; flood; *epidemic; pandemic; public health emergency*, accident; explosion; casualty; riot; civil disturbance; act of public enemy; embargo; travel restriction; *quarantine*; *business shutdowns*; war; any municipal, county, state, national, or international ordinance or law or any executive, administrative, judicial or similar order; *strike, lockout, or labor controversy impacting the overall industry*, *or other cause or circumstance beyond a Party's reasonable control* (each a "Force Majeure Event").  Upon occurrence of a Force Majeure Event, the nonperforming Party shall promptly *notify the other Party of a Force Majeure Event's effect on performance, and how long it is expected to last*.  The nonperforming Party shall use reasonable efforts to minimize the effect of any delay in performance and to resume its performance.

> *The occurrence of a Force Majeure Event* does not relieve either Party from liability for an obligation arising prior to the occurrence of that Force Majeure Event and *does not affect Licensee's obligation to timely make any required payment* or provide any required statements or reports.  If a Force Majeure Event occurs during the term of this Agreement, the Parties agree to meet and negotiate in good faith concerning any terms of the Agreement that either of the Parties wishes to address in light of such Force Majeure Event.

(Emphasis added).

Vinci has presented credible evidence, including at the September 6, 2023, evidentiary hearing, that a Force Majeure Event occurred under the Agreement, comprising the outbreak of the Omicron variant of COVID-19 in October and November 2022, particularly as it affected the world's biggest iPhone factory in Zhengzhou, China, and the resulting disruption of iPhone production; a quarantine; strikes at the factory and the departure of thousands of employees from the factory after complaints about unsafe working conditions.  These events created a shortage of iPhones, diminished sales of iPhone cases and, as a result, reduced revenue to Vinci.  Vinci's evidence included an expert report by Adam Levin on the impact of COVID-19 restrictions and lockdowns on iPhone sales in the United States and on the mobile accessory market, and referenced a November 2022 Apple press release and the Apple February 2, 2023, Form 10-Q. At the hearing, Levin testified consistently with the written report, describing the events and conditions in the market that led to the decreased sale of iPhone cases.  The Court credits Levin's testimony, which is corroborated by documentary evidence at the hearing from Circana, a leading consumer research company that provides sell-through data, showing greatly decreased sales to all case vendors like Vinci and Case-Mate during the period of November and December 2022. Vinci has sufficiently shown that it was the Force Majeure Event and not its overall financial condition that caused Vinci's non-payment.

KSNY's objection to Levin's testimony is overruled because the grounds for the objection

go to the weight and not the admissibility of the testimony.  The same grounds for objection were

covered in cross-examination and duly considered.  KSNY's objection to Vinci's second expert,

an accounting consultant, is overruled as moot because this Opinion does not rely on his

testimony.  KSNY called as a witness Case-Mate's chief executive officer, who testified that the

iPhone 14 supply shortages in the fourth quarter of 2022 did not impact Case-Mate's business,

and implicitly the phone case market in general, any more than supply disruptions from prior

years.  The Court does not credit this testimony because of the CEO's apparent bias as the head of

Vinci's direct competitor, which aggressively sought to take over Vinci's Kate Spade business,

and because of the lack of corroborating, non-anecdotal evidence.

  KSNY has not shown a clear or substantial likelihood of defeating Vinci's reliance on the

force majeure clause, which states: "Neither Party shall be . . . deemed to be in default under this

Agreement if such Party is prevented or delayed from timely performing any obligation or

condition under this Agreement by . . . epidemic; pandemic; public health emergency . . .

quarantine; business shutdowns . . . strike, lockout, or labor controversy impacting the overall

industry, or other cause or circumstance beyond a Party's reasonable control."  This provision

overrides Section 3.3 of the Agreement, which states that non-payment is an event of default,

which under Section 3.5 is a basis for termination.

  Contrary to KSNY's argument, the later reference to payment obligations in the force

majeure clause does not affect its no-default provision.  The clause states: "The occurrence of a

Force Majeure Event does not relieve either Party from liability for an obligation arising prior to

the occurrence of that Force Majeure Event and does not affect Licensee's obligation to timely

make any required payment . . . ."  By its terms, this language does not negate the avoidance of

default due to a Force Majeure Event, but merely establishes that Vinci's payment obligation

remains despite any Force Majeure Event.

Similarly, the notice requirement in the force majeure clause does not affect the no-default provision.  In other words, the effectiveness of the no-default provision does not depend on the sufficiency of notice that Vinci provided to KSNY -- which the parties dispute.  The notice provision states, "Upon occurrence of a Force Majeure Event, the nonperforming Party shall promptly notify the other Party of a Force Majeure Event's effect on performance, and how long it is expected to last."  KSNY in effect argues that adequate notice is a condition precedent to the no-default provision.  "Under New York law, . . . a condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises."  *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016).  Special drafting rules apply to conditions precedent.  "While specific, talismanic words are not required, the law nevertheless demands that conditions precedent be expressed in unmistakable language.  Thus, in determining whether a particular agreement makes an event a condition, courts will interpret doubtful language as embodying a promise or constructive condition rather than an express condition."  *Id.*; *accord Int'l Bus. Machines Corp. v. United Microelectronics Corp.*, 764 F. App'x 9, 12-13 (2d Cir. 2019) (summary order); *Unigard Sec. Ins. Co. v. N. River Ins. Co.*, 594 N.E.2d 571, 573 (N.Y. 1992) ("[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition.").  This principle that conditions precedent must be clearly expressed as such applies equally to a notice requirement in a force majeure clause.

The Agreement contains no language, much less "unmistakable language," to suggest any condition to the no-default provision.  *See Bank of New York Mellon Tr. Co.*, 821 F.3d at 305.

The force majeure clause does not "employ any recognized linguistic conventions of condition -- such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to,'" *see id.*, any of which might convey that the operation of the no-default provision does not occur unless and until Vinci provides proper notice of the Force Majeure Event.  "While New York courts have construed some triggering events as conditions precedent, they have done so only when the trigger is necessary to a party's ability to perform the obligation at issue," *see id.* at 307 (citing cases where notice was necessary to trigger a 30- or 60-day cure period),[3] which is not the case here.

KSNY argues that Vinci cannot invoke the force majeure clause because Vinci has not shown that its performance was rendered "impossible."  This argument is legally incorrect.  The "impossibility of performance is a common law doctrine; whereas, application of a Force Majeure Clause is governed by contract language."  *See Huth v. Am. Inst. for Foreign Study, Inc.*,

---

[3] The Court respectfully disagrees with two District Court cases that held that a party may not invoke a force majeure clause if that party has "materially breached" the related notice requirement, even when the notice requirement is not a condition precedent.  *See Toyomenka Pac. Petroleum, Inc. v. Hess Oil Virgin Islands Corp.*, 771 F. Supp. 63, 67-68 (S.D.N.Y. 1991); *see also Optima Media Grp. Ltd. v. Bloomberg L.P.*, No. 17 Civ. 1898, 2021 WL 1941878, at *12 (S.D.N.Y. May 14, 2021) (citing *Toyomenka*).  The "material breach" requirement is irrelevant here where KSNY is alleging insufficient notice (1) as a condition to the operation of the no-default provision of the force majeure clause, which would otherwise bar KSNY's termination of the Agreement, and (2) not as a condition precedent to some KSNY contractual obligation.  *See generally Unigard Sec. Ins. Co.*, 594 N.E.2d at 573 (1992) (describing the unique insurance principle "that the notice provision for a primary insurer operates as a condition precedent and that the insurer need not show prejudice to rely on the defense of late notice" as "a limited exception to two established rules of contract law: (1) that ordinarily one seeking to escape the obligation to perform under a contract must demonstrate a material breach or prejudice . . . and (2) that a contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition").  In any event, even if "no material breach" of the notice requirement were judicially imposed as condition precedent to operation of the force majeure clause, KSNY cannot show a clear or substantial likelihood that it will succeed in showing that Vinci's December 2022 notice was so deficient as to constitute a material breach of the notice requirement.

No. 3:20 Civ. 1786, 2022 WL 834419, at *5 (D. Conn. Mar. 21, 2022) (quoting *Beardslee v. Inflection Energy, LLC*, 904 F. Supp. 2d 213, 221 n.10 (N.D.N.Y. 2012), *aff'd*, 798 F.3d 90 (2d Cir. 2015)).  Vinci is not required to show impossibility, as a plain reading of Section 21.11 shows that it requires only that a party be "prevented or delayed from timely performing any obligation or condition under this Agreement."

Therefore, KSNY has not shown show a clear or substantial likelihood of success that the First Termination was proper.

### ii.      Second Termination

KSNY has shown a clear or substantial likelihood of success on its trademark and related claims after July 18, 2023, based on the likelihood that its Second Termination was valid for two reasons -- first, that Vinci failed to provide Kate Spade notice of its default on the Siena loan as required by the Agreement; and second, that Vinci failed to pay funds owed to Kate Spade after the force majeure condition had abated.

First, regarding Vinci's failure to give notice, Section 11.10 of the Agreement provides:

> **11.10.**  With respect to any indebtedness for borrow money by Licensee that is secured by a first priority security interest in any of the Licensee's assets, Licensee shall not cause or suffer to exist any event of default under such indebtedness as a result of which the lender shall have accelerated such indebtedness or exercise any remedies of lender against such Licensee assets.  *Licensee shall promptly notify Licensor in writing in the event that a lender (i) delivers written notice of default to Licensee under such indebtedness and (ii) as a result of such default, has accelerated such indebtedness* or has exercised such default remedies against any Licensee assets.

(Emphasis added).

At the hearing, KSNY offered credible evidence that Vinci never notified Kate Spade of Vinci's receipt of a February 10, 2023, notice of default of the Siena loan and that Siena had accelerated the indebtedness.  Even though the Agreement's force majeure clause likely shielded

the Siena default from being a default under the Agreement (as discussed above regarding the First Termination), Vinci's failure to give notice likely was not caused by any force majeure event. Specifically, the basis for the Siena default was that more than 75% of Vinci's accounts payable as of February 6, 2023, were more than 60 days past due (of which approximately 70% were more than 90 days past due). Vinci is likely to be able to show that the same Force Majeure Event that prevented Vinci from paying Kate Spade during the period from November 2022 to January 2023 also prevented Vinci from paying Siena during the same period.

Vinci was still required to give Kate Spade notice of the Siena default under Section 11.10 of the Agreement above because the Siena loan was secured by Vinci's assets and accelerated, as evidenced by Siena's notice of sale of the underlying collateral on May 11, 2023, and Case-Mate's notice of sale on May 24, 2023. Notably, the Ninth Amendment to the Siena Loan Agreement, dated April 4, 2023, states in Section 3(e), "No event has occurred and is continuing that constitutes a Default or an Event of Default." But that representation no longer appears in the Tenth (and last) Amendment dated May 8, 2023.

KSNY offered evidence that Vinci failed to provide Kate Spade notice of the default on the Siena loan. Kate Spade was contractually entitled to Vinci's notice of the default and acceleration, regardless of whether Vinci was able at the last minute to prevent a fire sale of the Kate Spade-branded collateral. Vinci's failure to notify constitutes a material breach of the Agreement that is not excused by the Agreement's force majeure clause. Vinci provides no reason why a force majeure event prevented Vinci from "timely performing" its notice obligation. Kate Spade was thus entitled to terminate the Agreement under Section 3.3(n) of the Agreement.

KSNY is likely to be able to show by clear or substantial evidence a second valid basis for the Second Termination -- namely Vinci's failure to pay Kate Spade funds due after the force

majeure condition had abated.  The Second Termination includes among its bases Vinci's

material breach of Section 11.8 of the Agreement, which requires Vinci to "pay punctually and

discharge when due . . . any indebtedness" except where such debt is less than $1 million or

subject to a bona fide dispute.

KSNY offered credible evidence that Vinci was able to pay KSNY some amount of owed

funds at least by the time of the Second Termination.  KSNY contends that, starting in September

2022, Vinci struggled to make timely payments and, by March 2023, Vinci owed KSNY almost

$4 million.  On March 20, 2023, KSNY sent Vinci a letter with a detailed review of Vinci's

allegedly missed payments; on March 31, 2023, KSNY provided Vinci with a formal notice of

default based on Vinci's failure to pay.  That failure to pay was the basis for the First Termination

as discussed above.  However, months later in June 2023, according to Vinci's co-owner Steve

Latkovic, Vinci was ready and able to make payments to Kate Spade after receiving funds from

ACS.  KSNY is likely to be able to show by clear or convincing evidence that Vinci's failure to

pay KSNY at least by the time of the Second Termination constitutes a material breach of the

Agreement that is not excused by the Agreement's force majeure clause, as Vinci admits its

ability to pay by that point.

Vinci argues that its failure to pay was excused by KSNY's obligation to renegotiate the

guaranteed minimum royalties ("GMR") under Schedule 8 of the Sixth Amendment to the

License Agreement.  Schedule 8 states that the "Parties hereby agree to renegotiate in good faith

the GMR for a given Contract Year if . . . [t]here is an unexpected variance (favorable or

negative) in launch years or product introduction, or there are material device shortages or recalls

outside of Licensee's control."  The evidence in the record shows that the parties did renegotiate

the schedule, that Vinci did not request to renegotiate the total amount and that Vinci repeatedly

acknowledged the GMR amounts it owed.  Vinci's argument is unpersuasive.

Accordingly, KSNY has made the requisite showing of likelihood of success on its claims premised on Vinci's allegedly wrongful use of the KATE SPADE marks post-termination only for any such use that occurred after the Second Termination on July 18, 2023.  These claims -- KSNY's federal trademark claims and related state claims alleged in KSNY's first six causes of action -- are the basis for the lion's share of KSNY's requested injunctive relief, barring Vinci from using KSNY's marks and communicating to others that Vinci is an authorized Kate Spade licensee.

**b.   Irreparable Harm**

KSNY has sustained its burden of showing irreparable harm.  Because KSNY has shown a likelihood of success on the merits of its federal trademark claim, KSNY is entitled to a presumption of irreparable harm, *see* 15 U.S.C. § 1116(a), which Vinci has not rebutted.

Vinci argues first that KSNY's ability to enter into a licensing agreement with Case-Mate rebuts the statutory presumption of irreparable harm, citing *Marisa Cristina, Inc. v. Freis*., 646 F. Supp. 252, 254 (S.D.N.Y. 1986) ("Another factor indicating the lack of irreparable injury is the fact that plaintiff has already reached a licensing agreement with another designer . . . ."). Vinci's reliance on *Marisa Cristina* is misplaced.  *Marisa Cristina* concerns irreparable harm to the former licensee, rather than the licensor, and is therefore inapposite here.  That KSNY has entered into a licensing agreement with Case-Mate has no bearing on the fact that Vinci may be continuing to use the licensed marks without authorization and continuing to misrepresent itself as a licensee of KSNY.  Second, Vinci argues that a "harm that can be remedied by a money judgment or at the end of trial is *not* an irreparable harm" and that, here, "the harm alleged is plainly monetary in nature."  The argument is misguided as it ignores, rather than rebuts, the

statutory presumption established by 15 U.S.C. § 1116(a).  As KSNY points out, the alleged harm extends beyond just money damages.  Irreparable injury "exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark" because a loss of reputation "is not calculable nor precisely compensable." *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985); *accord NES Baseball & Softball Facility, Inc. v. Ne. Angels Softball, LLC*, No. 22 Civ. 9158, 2022 WL 17370117, at *5 (S.D.N.Y. Dec. 2, 2022).

### c.      Balance of Hardship

Vinci contends that it will suffer harm to longstanding relationships with companies in the tech accessory industry, including with Verizon -- a significant and long-time customer of Vinci and its predecessors -- if the Court issues a preliminary injunction in favor of KSNY, particularly in light of the launch of Apple's new generation of iPhone.  These costs must be balanced against the harm to KSNY if an injunction does not issue. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.").

KSNY credibly faces harm to its own goodwill, reputation and ability to sell mobile and tech accessories bearing its brand without confusion among manufacturers, customers and distributors about who holds a valid license to use the KATE SPADE marks, and as to the source, sponsorship, affiliation or approval of KSNY goods.  The iPhone retail launch is similarly significant to KSNY, which plans its own launch of new designs of Kate Spade-branded tech accessories around the launch date of the next generation of mobile devices.

### d.      Public Interest

KSNY also has met its burden of demonstrating that "the public interest would not be

disserved by the grant of a preliminary injunction." *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287

(2d Cir. 2012).  The public "has a protectable interest in being free from confusion, deception and

mistake." *Goat Fashion Ltd. v. 1661, Inc.*, 2020 WL 5758917, at *16; *see also Park 'N Fly, Inc.*

*v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 193 (1985) ("[A] sound public policy requires that

trademarks should receive nationally the greatest protection that can be given them.").

2.      <b>Likelihood of Success on KSNY's Remaining Claims</b>

KSNY has shown a clear or substantial likelihood of prevailing on its claim that Vinci

breached the Agreement by failing to pay licensing fees owed to KSNY under its seventh cause

of action.  However, the related requested injunctive relief -- barring Vinci from further breaching

the Agreement -- is denied because the breach caused by non-payment or delayed payment can be

remedied with money damages; KSNY cannot show irreparable harm.  *See Metzgar v. U.A.*

*Plumbers & Steamfitters Loc. No. 22 Pension Fund*, No. 20-3791-CV, 2022 WL 610340, at *4

(2d Cir. Mar. 2, 2022) (summary order) ("To establish irreparable harm, the movant must

demonstrate an injury . . . that cannot be remedied by an award of money damages." (quoting

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995))).

<b>B.      Vinci's Request for Injunctive Relief</b>

Vinci brings its own motion for a preliminary injunction.  Vinci seeks to enjoin the

defendants in its case -- the Kate Spade Defendants[4] and Case-Mate -- from (1) communicating

that the Agreement has been terminated and that Vinci is no longer authorized to sell Kate Spade

merchandise; (2) breaching Sections 3.2, 12.3 and 15.2 of the Agreement and confidentiality

agreements and (3) tortiously interfering with the Agreement and with Vinci's contracts and

---

[4] As defined above, the Kate Spade Defendants are Coach Services, Inc., Kate Spade (together,
"KSNY") and Tapestry, Inc.

19

business relationships.  Vinci seeks also (4) to require the Kate Spade Defendants to issue a Letter of Authorization to Vinci's suppliers and customers.  The Complaint asserts corresponding claims for breach of the Agreement, improper termination of the Agreement and tortious interference.  As an initial matter, Vinci is not entitled to injunctive relief that in substance reverses KSNY's terminations of the Agreement because KSNY has shown a clear or substantial likelihood of showing that the Second Termination was valid, as discussed above.  Vinci also is not entitled to the other injunctive relief it seeks, except as to in-process orders.

### 1.  Likelihood of Success on the Tortious Interference Claims

Vinci seeks injunctive relief directed at Case-Mate's position as a new licensee based on claims of tortious interference.  Vinci apparently recognizes that the Agreement does not give Vinci an exclusive license.  Accordingly, Vinci's claims concerning Case-Mate allege tortious interference.  The Complaint in substance alleges that Case-Mate "induced" KSNY to terminate the Agreement, and that the Kate Spade Defendants pressured Vinci's suppliers and customers to transfer their business from Vinci to Case-Mate.  Vinci's motion is denied because Vinci has not shown a likelihood of success on the relevant causes of action -- tortious interference with contract and business relations, and tortious interference with prospective business advantage.

Under New York law, a claim of tortious interference with contract requires "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (New York law).

The Complaint alleges that Case-Mate induced KSNY to breach the Agreement by terminating it and communicating Vinci's confidential information to suppliers, customers and

others about the termination.  Vinci has not shown that it is likely to succeed on these claims.
The Complaint makes only conclusory allegations that Case-Mate "induced" the alleged breach.
No record evidence shows Case-Mate's "intentional procurement" of any breach.

Vinci has not shown a likelihood of success on its claims that the Kate Spade Defendants
tortiously interfered with Vinci's contracts and business relationships with suppliers and
customers, because Vinci has not asserted facts to show that any third party *breached* its contract
with Vinci or that the Kate Spade Defendants intentionally procured a breach.  *See Grocery
Leasing Corp. v. P & C Merrick Realty Co.*, 153 N.Y.S.3d 82, 85 (2d Dep't 2021).  Vinci argues
only that its customers "will very likely cancel their orders with Vinci, and its suppliers will halt
production."  However, such cancellations are not necessarily "actual breach."  *See Orange Cnty.
Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) (dismissing
tortious interference with contract claim where allegations left open possibility that third-party
"lawfully terminated the contract or that the contract was terminable at will").  Even if Vinci
could show actual breach, KSNY may be able to assert an economic interest defense to rebut a
finding that any procurement of a breach was "without justification."  *See White Plains Coat &
Apron Co. v. Cintas Corp.*, 460 F.3d 281, 286 (2d Cir. 2006) (New York law); *accord 138-77
Queens Blvd LLC v. Silver*, No. 22 Civ. 5155, 2023 WL 4564796, at *9 (E.D.N.Y. July 17, 2023).
KSNY had an economic interest in the suppliers and customers of Kate Spade-branded products,
had reason to doubt Vinci's reliability in supplying those customers and, believing the Agreement
was properly terminated on June 14, 2023, had reason to direct customers to its new licensee.

A claim for tortious interference with prospective business relations, which is "also
known as tortious interference with prospective economic advantage," requires a showing that
"(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those

business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (New York law).

Vinci has not shown a likelihood of success on the claim of tortious interference with prospective business advantage. The record evidence fails to show that the Kate Spade Defendants or Case-Mate "acted for a wrongful purpose or used dishonest, unfair, or improper means." *See id.* The "wrongful means" requirement sets a high bar, requiring a plaintiff to show, as a general rule, that "the defendant's conduct . . . amounted to a crime or an independent tort." *Id.* at 262. Here, any alleged wrongdoing by KSNY or Case-Mate falls short of that high bar.

Vinci therefore fails to show a likelihood of success on its tortious interference claims. A preliminary injunction on this basis is denied.

### 2. Likelihood of Success on Certain Breach of Contract Claims against the Kate Spade Defendants

Vinci has failed to show a likelihood of success on its claims that KSNY breached Sections 3.2 and 15.2 of the Agreement, which concern how and when the parties would announce the end of the Agreement and their treatment of confidential information. These provisions state:

> **3.2.** The parties agree that any announcement to the public or trade of the termination or expiration of this Agreement will be made only at a time, and by a joint statement mutually agreed upon by the parties.

> **15.2.** Neither party will at any time disclose or divulge to any Person, or use or suffer the use by any other Person, for any purpose other than solely as required for the manufacturing, advertising, merchandising, promoting, selling and distributing of Approved licensed Merchandise in accordance with the terms of this Agreement, directly or indirectly, for its own or the benefit of any Person, any Confidential Information of the other party or any of its affiliates obtained from or through them.

As a threshold matter, a plaintiff asserting breach of contact much show that it adequately

performed under the contract. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (to state a claim in federal court for breach of contract under New York law, a complaint needs to allege "adequate performance of the contract by the plaintiff"); *accord Exch. Listing, LLC v. Inspira Techs., Ltd.*, No. 22 Civ. 1889, 2023 WL 2403223, at *5 (S.D.N.Y. Mar. 8, 2023). As discussed above, and for the reasons stated in KSNY's two termination notices, Vinci is unlikely to be able to show that it performed its obligations under the Agreement.

As to Section 3.2, Vinci argues that KSNY issued a one-sided statement to the public or trade without Vinci's consent or input. In particular, on June 22, 2023, KSNY issued a letter to Vinci's suppliers and customers stating, "Case-Mate, Inc., is Kate Spade's only and exclusive licensee, and is the sole partner authorized to use the KSNY Trademarks." In response, KSNY contends that it sought to discuss with Vinci how to jointly message the termination, but Vinci did not, and has not, expressed any interest in such a statement or mutually approved announcement. Second, it was Vinci that filed this action on the public docket on June 16, 2023, six days prior to KSNY's letter. The initial complaint clearly discloses that Kate Spade purported to terminate the Agreement. Finally, to the extent KSNY's letter to Vinci's customers and suppliers falls within the Section 3.2, the letter was reasonably necessitated by Vinci's June 21, 2023, correspondence to various suppliers, manufacturers and customers claiming that Vinci had a valid license to produce Kate Spade products and was the only source that could produce and deliver those items.

As to Section 15.2, Vinci suggests that KSNY improperly disclosed Vinci's confidential information to Case-Mate. Vinci cites various communications issued by Case-Mate, including an email with a Kate Spade existing product SKU list and artwork and tooling designs attached. Vinci alleges that the SKU list, which sets forth Vinci's unique codes for the licensed

merchandise, and the referenced artwork and tooling designs, are confidential and sensitive business information of Vinci.  However, as KSNY points out, Section 14.6 of the Agreement provides that "all created works of authorship including, but not limited to such works comprising or included in Licensed Merchandise, advertising, packaging, and Merchandise IP, . . . created by Licensee" and "used with the Licensed Mark(s)" belong to KSNY.  The SKU list, artwork and designs appear to fall within that scope.  The remaining examples cited by Vinci fail to identify sufficient evidence of improper disclosure by KSNY.

Vinci therefore fails to show a likelihood of success on KSNY's alleged breach of Sections 3.2 and 15.2 of the Agreement.  A preliminary injunction on this basis is denied.

### 3. Likelihood of Success on the Breach of Contract Claim against Case-Mate

Vinci has failed to show a likelihood of success on its claim that Case-Mate breached its confidentiality agreement with Vinci.  Vinci contends that "Case-Mate has divulged Vinci's confidential and sensitive business and financial information in a manner detrimental to Vinci in violation of the contract" and that "Case-Mate also divulged Vinci's confidential and sensitive business and financial information for the purpose of unfairly and improperly competing against Vinci in violation of the contract."  But Vinci fails to identify with any particularity the information it references.  Mere generalities are insufficient to warrant a preliminary injunction on this basis.

### 4. Likelihood of Success on the Breach of Contract Claims Regarding In-Process Orders

In the event Vinci does not obtain injunctive relief negating the terminations, Vinci seeks an injunction allowing Vinci to complete its in-process orders upon termination in accordance with Section 12.3 of the Agreement.  KSNY's order to show cause relatedly seeks enforcement of

Vinci's post-termination obligations under Section 12 of the Agreement.  This relief is granted.

The parties dispute which in-process orders Vinci may complete.  KSNY argues that Vinci may not go forward with any in-process orders or non-cancelable written orders received on or after March 23, 2023, the date of Vinci's alleged non-payment default.  Vinci argues that it should be able to complete any in-process orders, both work in production and orders under contract, that existed as of the date of the termination of the Agreement, which will be considered July 18, 2023, for the reasons discussed above.

Sections 12.1(a), 12.1(b), 12.2 and 12.3 of the Agreement provide:

**12.1. (a)**  Upon the expiration or termination of this Agreement (whether by reason of the expiration of the term of this Agreement, by earlier termination of this Agreement pursuant to Article 3 hereof or otherwise), except to the extent specifically otherwise provided in this Article 12, all rights of Licensee hereunder will terminate and revert automatically to Licensor, and neither Licensee nor any of its receivers, representatives, trustees, agents, successors or assigns (by operation of law or otherwise) will have any right to manufacture, exploit, advertise, merchandise, promote, sell, distribute or deal in or with Licensed Merchandise . . . .

**(b)**  . . . Except as Licensor may otherwise agree, all cancelable orders for Licensed Merchandise and/or related materials shall promptly be canceled.

**12.2.**  If, upon expiration or termination of this Agreement . . . , Licensee . . . has on hand any finished inventory of Licensed Merchandise or Promotion Products (or components thereof), Licensor will have the option (herein called the "Inventory Purchase Options") to purchase all or any part of Licensee's . . . inventory (and any components thereof) of Approved Licensed Merchandise or Promotion Products which is completed and which remains on hand at such expiration or termination date and which is not subject to written orders received from customers on the date of termination or expiration of this Agreement, for an aggregate purchase price equal to the lower of Licensee's cost of such Licensed Merchandise and/or Promotion Products or market value for same. . . .

**12.3.**  Licensee may complete (but only in accordance with the terms and conditions of this Agreement) production of Approved Licensed Merchandise which is in process, or for which written orders have been received from customers, all as of the date of termination or expiration of this Agreement . . . . Notwithstanding anything to the contrary contained herein, upon completion of the production of any Licensed Merchandise in accordance with the provisions of this

Article 12, such Approved Licensed Merchandise will be deemed subject to an Inventory Purchase Option, to the extent and as set forth in Section 12.2 hereof
. . . .

The Court substantially agrees with Vinci's interpretation.  First, under Section 12.1(b), all cancelable orders must be canceled by Vinci.  Second, inventory may be sold by Vinci if subject to a written (non-cancelable) order as of July 18, 2023, per Section 12.2; the remaining inventory is subject to KSNY's purchase option.  Third, in-process merchandise may be completed by Vinci if subject to a written (non-cancelable) order as of July 18, 2023, per Section 12.3; the remaining in-process merchandise may be completed as well -- if in-process as of the date of termination -- but is subject to KSNY's purchase option.

To the extent KSNY interprets Sections 12.1-12.3 to provide Vinci a more limited right, the Court disagrees.  Contrary to KSNY's argument, the language "in accordance with the terms and conditions of this Agreement" sets forth how the parties are to meet their obligations upon termination, but does not create a condition precedent to Vinci's right to complete production for the reasons discussed above concerning the contractual construction of conditions precedent. Vinci therefore has shown a likelihood of success on its second claim in the Complaint alleging breach of contract under Section 12.3 of the Agreement.

Vinci has shown irreparable harm if it is not permitted to sell the limited inventory on hand as set forth above, because of the significant demand for iPhone cases at the time of a new iPhone launch and diminished demand thereafter, as explained at the evidentiary hearing.  Given that the 2023 iPhone launch is occurring now, Vinci has sustained its burden.

Finally, enforcement of Section 12 is in the public interest because "the public interest would not be disserved by the grant of a preliminary injunction."  *See WPIX, Inc.*, 691 F.3d at 287 (2d Cir. 2012).  "The public has an interest in ensuring the enforcement of valid contracts,"

*JLM Couture, Inc. v. Gutman*, No. 20 Civ. 10575, 2023 WL 2503432, at *17 (S.D.N.Y. Mar. 14, 2023), and the orderly conduct of business affairs.

## IV.    CONCLUSION

Having considered the parties' written submissions, the argument presented at the June 27, 2023, hearing and the evidence presented at the September 6, 2023, hearing, for the foregoing reasons, the parties' cross-motions for a preliminary injunction are **DENIED** except **GRANTED** as **FOLLOWS**:

1.  The parties shall treat the Agreement as terminated pursuant to the Second Termination, without prejudice to either party's claims arising from breach of contract or related claims based on improper termination or any other reason.

2.  For the purpose of Section 12 of the Agreement, the date of termination and of the Termination Notice shall be July 18, 2023, the date of the Second Termination.

3.  With the exception of the post-termination procedures set forth in the Agreement, including under Section 12 as set forth above, Vinci is barred from (1) continuing to manufacture and sell mobile accessories bearing the KATE SPADE marks, or other merchandise covered by the Agreement; (2) communicating with manufacturers, distributors and other such entities that (i) the Agreement was not terminated, (ii) the Agreement remains in full effect and (iii) Vinci holds a valid license to manufacture and sell Kate Spade-branded merchandise and (3) representing itself as authorized to fulfill orders for mobile accessories bearing the KATE SPADE marks.

4.  This Order is binding upon Vinci, the Kate Spade Defendants and Case-Mate and their respective agents, servants and employees, and all persons in active concert or participation with any of them (but not third parties over whom the parties to these

lawsuits have no control) who receive actual notice of this Order by personal service or otherwise.  The parties shall provide such actual notice as necessary or useful.

5. This Order shall remain in effect until the conclusion of the trial in this matter; provided, however, that this Order may be dissolved or modified upon appropriate motion and a showing of good cause to this Court.

6. KSNY shall post a bond in the amount of $100,000 as soon as reasonably practicable after entry of this Order, but in any event no later than **September 19, 2023**.

7. By **September 19, 2023**, the parties shall file a joint letter, setting forth in detail the manner in which they have complied with this Order.

8. The parties may jointly propose any modification to this Order, but only to the extent that the affected parties on both sides agree.

Each side's request for a temporary restraining order is **DENIED as moot**.

The Clerk of Court is respectfully directed to close the motion at Dkt. 17 in Case No. 23 Civ. 5138.

Dated: September 12, 2023
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

28