UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

VINCI BRANDS LLC,                                    Civil Action No. 23-cv-05138

                          Plaintiff,

              v.

COACH SERVICES, INC., KATE SPADE,
LLC, TAPESTRY, INC., and CASE-MATE, INC.,

                          Defendants.

------------------------------------------------------------x

KATE SPADE LLC AND COACH SERVICES,                  Civil Action No. 23-cv-05409
INC.,

                          Plaintiffs,               So Ordered, with the modifications below.  This
                                                    Order will docket in both Case Nos. 23 Civ. 5138
              v.                                    and 23 Civ. 5409, but the two matters are not
                                                    consolidated.  ACS shall not have access to
VINCI BRANDS LLC AND ACS GROUP                      Case-Mate's confidential information.
ACQUISITIONS LLC,

                          Defendants.               Dated: February 7, 2024
                                                           New York, New York

------------------------------------------------------------x

                                                    LORNA G. SCHOFIELD
                                                    UNITED STATES DISTRICT JUDGE

### [PROPOSED] STIPULATION AND CONFIDENTIALITY AGREEMENT AND ORDER AND STIPULATED ELECTRONICALLY STORED INFORMATION PROTOCOL[1][2]

        IT IS HEREBY STIPULATED AND AGREED, by and among the parties hereto, through

their undersigned counsel, that the following provisions of this Stipulation and Confidentiality

---

[1] The green text reflects Vinci's proposed language.  ACS agrees with Vinci's proposed language, while Case-Mate and KSNY object to the inclusion of the green text.

[2] Case-Mate does not consent to filing of a joint Order combining the cases absent a Court Order granting consolidation over Case-Mate's objection and request to sever Vinci's claims against it.  For the reasons set forth in Vinci's and ACS' motion for consolidation (Dkt. 180 and 211), Vinci and ACS believe that consolidation of both cases is appropriate under Federal Rule of Civil Procedure 42(a).

Agreement and Order (the "**Order**") and Stipulated Electronically Stored Information Protocol (the "**ESI Protocol**") shall govern disclosure and use by the parties of all documents, testimony, exhibits, interrogatory answers, responses to requests to admit and any other materials and information disclosed or provided in the above-referenced actions (individually the "**Action**" or jointly the "**Actions**").

1.      All Confidential Information (defined below) produced or disclosed in the Action shall be used solely for the prosecution or defense (including any appeal therefrom) of the Action, and shall not be used for any other purpose.

2.      When used in this Order, the term:

(a)      "**Confidential Information**" shall mean all documents and testimony, and all information contained therein, containing:

(i)      private or confidential personal or business and financial information; or

(ii)      information subject to confidentiality obligations owed to third parties; or

(iii)      confidential, non-public personal  information that is protected from disclosure by statute, regulation or otherwise.

(b)      "**Highly Confidential – Attorneys' Eyes Only Information**" shall mean extremely sensitive "Confidential Information" that the Producing Party believes in good faith is of such a sensitive or secret nature that disclosure of such information to any other Party or non-party reasonably poses the risk of competitive injury, including trade secrets or other competitively sensitive confidential research, development, financial, proprietary, or confidential business information.

(c)      "**Disclosing Party**" shall refer to any party to this Action and any non-

party disclosing or producing Confidential Information in connection with this Action.

(d)    "**Discovery Material**" shall refer to all items or information that are produced or generated in disclosures or responses to discovery in this Action, regardless of the medium or manner in which it was stored, generated, or maintained.

(e)    "**Protected Material**" shall mean any Documents and Testimony that is designated as "Confidential" or as "Highly Confidential – Attorneys' Eyes Only."

(f)    "**Receiving Party**" shall refer to any party to this Action and its employees, officers, agents, and directors who receive Confidential Information governed by this Order.

(g)    The definitions contained in the Southern District of New York's Local Civil Rule 26.3 are incorporated herein.

3.    The parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery or in the course of making initial or supplemental disclosures under Federal Rule of Civil Procedure 26(a).  A Disclosing Party's designation of Discovery Material as Confidential Information constitutes a representation that such Discovery Material has been reviewed on an individual basis by counsel and that there is a good faith basis for such designation that satisfies the criteria set forth in this Order.

4.    Unless otherwise ordered by the Court or permitted in writing by the Disclosing Party, a Receiving Party may disclose Confidential Information only to:

(a)    counsel of record in this Action, as well as counsel's employees to whom it is reasonably necessary to disclose the information in connection with this Action;

(b)    in-house counsel, as well as their immediate paralegals and staff;

(c)    officers, directors, employees ~~and lenders~~[3] of the Receiving Party to whom

---

[3] KSNY and Case-Mate object to the addition of this text.

it is reasonably necessary to disclose the information in connection with this Action;

(d)      any consultants, experts, or investigators, retained by counsel for a party in this Action, provided that such consultant, expert, or investigator: (i) is not currently or anticipated at the time of retention to become an officer, director, or employee of a Party or of a Party's competitor and (ii) agrees to be bound by the provisions of this Order by signing a copy Exhibit A;

(e)      outside photocopying, microfilming, or database service providers, trial support firms, graphic production services, litigation support services, and translators engaged by the parties during this Action to whom disclosure is reasonably necessary for this Action;

(f)      the Court, any court to which a party petitions for discovery of a non-party, any appellate court, necessary court personnel, and jurors;

(g)      court reporters and their staff, stenographers or video operators, professional jury or trial consultants, mock jurors, and professional vendors to whom disclosure is reasonably necessary for this Action subject to this Protective Order;

(h)      witnesses during their deposition and deposition preparation, provided such person: (i) had access to the very same Confidential Information before the filing of this Action; and (ii) executes the agreement attached hereto as Exhibit A (although such individuals shall not be permitted to retain any copies);

(i)      any mediator engaged by the named parties in connection with this Action;

(j)      any officers, directors, or employees shown on the face of the Discovery Material designated Confidential Information who authored, received, or are listed in the document;

(k)      any other person with prior written consent of the Disclosing Party; and

(l)      any other person if the Receiving Party is permitted to do so after seeking, and receiving, permission from the Court, with prior notice to all parties.

5.      Except with the prior consent of the producing party or by Order of the Court, "Highly Confidential – Attorneys' Eyes Only Information" shall not be furnished, shown, or disclosed to any person or entity except to:

(a)      counsel of record for the Parties to this action and their associated attorneys, paralegals and other professional and non-professional personnel (including support staff and outside copying services) who are directly assisting such counsel in the preparation of this action for trial or other proceeding herein, are under the supervision or control of such counsel, and who have been advised by such counsel of their obligations hereunder;

(b)      consultants, experts, or investigators, retained by counsel for a party in this Action, provided that such consultant, expert, or investigator: (i) is not currently or anticipated at the time of retention to become an officer, director, or employee of a Party or of a Party's competitor and (ii) agrees to be bound by the provisions of this Order by signing a copy Exhibit A;

(c)      the Court and court personnel;

(d)      an officer before whom a deposition is taken, including stenographic reporters and any necessary secretarial, clerical or other personnel of such officer;

(e)      any other person agreed to by the Producing Party.

6.      Counsel of record for the Receiving Party must retain each original executed completed agreement attached hereto as Exhibit A and must provide copies to the counsel of record for all other parties (i) when a written request is made by another party based on reasonable need, and (ii) after the termination of this action.

23702621 v1                                        5

7.     Designation of documents or other material as containing Confidential Information or "Highly Confidential – Attorneys' Eyes Only Information" as set forth in this Order may be made at or prior to the time of production of documents by stamping or otherwise affixing the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' ONLY" on each page deemed Confidential in a manner that does not interfere with the legibility of the document. When Confidential Information or Highly Confidential – Attorneys' Eyes Only Information is disclosed in a form not appropriate for such placing or affixing, such Confidential Information or Highly Confidential – Attorneys' Eyes Only Information shall be designated in writing at the time it is delivered to the Receiving Party.

8.     A Disclosing Party may designate as Confidential or Highly Confidential – Attorneys' Eyes Only any portion of a transcript from a deposition or a transcript from other pretrial or trial proceedings deemed to contain such material.  The Disclosing Party shall advise the court reporter and counsel of record at the beginning and end of the testimony containing Confidential Information ("**Confidential Testimony**") orally at the deposition.  Alternatively, the Disclosing Party can designate testimony as Confidential Testimony after the deposition has concluded by letter to the other party no later than thirty (30) calendar days after receipt from the court reporter of the final deposition transcript.  During such 30-day period, the parties shall treat the entire transcript as Confidential.  In the event the designation of Confidential Testimony is made during the deposition, the reporter shall mark "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" on the face of the transcript at the beginning and end of any portions of Confidential Testimony.  Transcripts containing Confidential Testimony shall have an obvious legend on the title page that the transcript contains Confidential Information and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Confidential.  In the event the designation of

Confidential Testimony is made after the deposition has concluded, the parties shall manually mark "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" on the face of the transcript at the beginning and end of any portions of Confidential Testimony.  The failure to timely designate deposition testimony as Confidential Testimony waives any such designation unless otherwise ordered by the Court or agreed in writing by all parties.  The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

9.      Any person or entity in possession of any Protected Material shall maintain those materials in a reasonably secure manner and shall not reveal or discuss such information in any manner, either directly or indirectly, to any person or entity other than outside counsel, directors, or employees, any expert consultants, expert investigators, and/or expert witnesses identified in Paragraphs 4 and 5, and  who have signed the agreement attached hereto as Exhibit A.

10.      Nothing in this Order shall be construed as limiting a Disclosing Party's use of its own Confidential Information.

11.      If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Order, the Receiving Party must immediately (a) notify in writing the Disclosing Party of the unauthorized disclosures; (b) use its best efforts to retrieve all unauthorized copies of the Protected Material; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and (d) request such person or persons to execute the Agreement that is attached hereto as Exhibit A.

12.      If a Receiving Party is served with a subpoena or a motion seeking a  court order issued in another litigation or an investigation to compel disclosure of any Protected Material, that Receiving Party must: (a) promptly notify in writing the Disclosing Party and provide it with

a copy of the subpoena or motion and all accompanying information; (b) promptly notify in writing the individual or entity who caused the subpoena to issue or filed the motion in the other litigation or investigation and provide it with a copy of this Order; and (c) cooperate with respect to all reasonable procedures pursued by the Disclosing Party whose Protected Material may be affected.

(a)     The Disclosing Party must notify the Receiving Party within seven (7) calendar days of receiving the subpoena or motion and all related information if it intends to seek a protective order from the Court to avoid disclosure of the Protected Material.

(b)     If the Disclosing Party seeks a protective order, the Receiving Party served with the subpoena or motion shall not produce any Protected Material before a determination by the Court from which the subpoena issued or motion is filed, unless the Disclosing Party consents to production in writing.

(c)     The Disclosing Party shall bear the burden and expense of seeking protection of its Protected Material in the Court that issued the subpoena or in which the motion is pending.

(d)     If the Disclosing Party fails to object or seek a protective order from the Court within fourteen (14) calendar days of receiving the subpoena and motion and all related information, the Receiving Party may produce the Protected Material requested.

(e)     Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

13.     Inadvertent failure to designate materials as Protected Material at the time of production may be remedied by supplemental written notice by the Disclosing Party.  The Disclosing Party must notify the Receiving Party within a reasonable time after discovering that

it inadvertently failed to designate the information as confidential or highly confidential – attorneys' eyes only.  If such notice is given, all documents, materials, or testimony so designated shall be subject to this Order as if they had been initially designated as Protected Material to the extent that such documents, materials, or testimony fall within the relevant definition of Protected Material and the Receiving Party shall notify any non- party to whom disclosure was made about the confidentiality designation.  The foregoing provision shall not apply to any documents that have already otherwise become publicly available.

14.     Except when a party intentionally waives attorney-client privilege or work product protection by disclosing such information to an adverse party as provided in Federal Rule of Evidence 502(a), the disclosure of attorney-client privileged or work product protected information does not constitute a waiver in this proceeding, or in any other federal or state proceeding.  When a Disclosing Party gives notice to a Receiving Party that certain inadvertently produced material is subject to a claim of privilege or other protection from disclosure, the obligations of the Receiving Party are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502.

15.     No party shall be obligated to challenge the propriety of a designation of Protected Material when initially received, and a failure to do so shall not preclude a subsequent challenge thereto.  If, at any time, a party objects to a designation of Protected Material under this Order, the objecting party shall notify the Disclosing Party in writing specifying with particularity the documents it contends should be differently designated and the grounds for the objection.  Within seven (7) calendar days of receipt of such notification, counsel for the Disclosing Party and the objecting party shall meet and confer in a good faith effort to resolve any disagreement regarding the Disclosing Party's designation of the Protected Material.  If, for whatever reason, the parties do not resolve their disagreement within that time period, the parties shall submit their dispute to the Court for resolution in accordance with the procedures set forth below.  The documents subject to

that application will be treated as Protected Material until the Court rules. Nothing in this Order shall be construed as preventing any party from objecting to the designation of any documents as Protected Material or preventing any party from seeking further protection for any material it produces in discovery. Disputes regarding the propriety of a designation of particular Protected Material shall be submitted to the Court for resolution as follows:

(a) Within seven (7) calendar days after the meet and confer, or by such other deadline as may be agreed in writing by the Disclosing Party, the party objecting to the claim of confidentiality shall provide counsel for the Disclosing Party with a draft of a joint letter to the Court which sets forth the objecting party's position regarding the dispute.

(b) Within seven (7) calendar days after receipt of that draft letter, or by such other deadlines as may be agreed to in writing by the objecting party, the Disclosing Party shall provide counsel for the objecting party with an insert for that letter in electronic format which sets forth the Disclosing Party's position.

(c) If the Disclosing Party fails to provide the insert within the time period prescribed in this paragraph, the designation of Protected Material designations shall be deemed lifted.

(d) The letter will then be provided to the Court so that it may rule on the challenge to the confidentiality designation.

Nothing herein shall be deemed to change the burdens of proof established by applicable law.

16. Pursuant to Judge Schofield's Individual Rules, documents may be filed under seal only as provided in Rule I.D.3. If only portions of a document contain Protected Material, the party filing the document shall submit to the Court a redacted copy of the same, in accordance with the Court's rules. Notwithstanding other provisions in this Order, a refusal by the Court to permit a Receiving Party to file Discovery Material designated Protected Material under seal or with

appropriate redactions does not render the Receiving Party in breach of this Order or obligate the Receiving Party to withdraw the Discovery Materials at issue or associated filed documents.

17.     Within sixty (60) calendar days after the final disposition of this Action, including any appeals, each Receiving Party must either return all Protected Material to the Disclosing Party or destroy such material, including all copies, abstracts, compilations, summaries, and any other form in which the Protected Material may have been reproduced or captured, at the Receiving Party's election.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Disclosing Party by the 60-day deadline that (a) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (b) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries, or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provision, counsel for the Receiving Party may retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Order.

18.     Any non-party producing Protected Material in this Action may be included in this Order by endorsing a copy of it and delivering the endorsed copy to the party that made the request for information.  The requesting party, in turn, shall file the endorsed copy with the Court and serve it on counsel for the other parties.  The parties to this Action may designate information produced by other parties or non-parties as Protected Material as consistent with the terms and provisions of this Order.  If additional persons or entities become parties to this Action, such parties shall not have access to Protected Material produced by or obtained from any Disclosing Party until the newly joined parties or their counsel confirm in writing to all other parties that they have read this

Order and agree to be bound by its terms.

19.     If a Disclosing Party produces two or more identical copies of a document of which at least one copy is designated as Protected Material and at least one copy is not so designated, once such a discrepancy is discovered, all copies of the document shall be treated with the greatest amount of protection so designated.  If a Receiving Party identifies such a discrepancy, it shall promptly notify the Disclosing Party.  Once the Disclosing Party identifies or becomes aware of the discrepancy, it shall promptly notify all other parties to the Action.

20.     This Order shall not prejudice in any way the rights of any party to introduce as evidence at trial any document, testimony, or other evidence subject to this Order that is otherwise admissible, or prejudice in any way the rights of any party to object to the authenticity or admissibility into evidence of any document, testimony, or other evidence subject to this Order. A party that intends to present or that anticipates that another party may present Protected Material at a hearing or trial shall bring that issue to the Court's and parties' attention by motion or in a pretrial memorandum without disclosing the Protected Material.  The Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial.  If that Protected Material is used in open court during any court proceeding or filed as a trial exhibit, the material shall lose its confidential status and become part of the public record, unless the Disclosing Party applies for and obtains an order from the Court specifically maintaining the confidential status of particular material. Before any court proceeding in which Protected Material is to be used, counsel will confer in good faith on such procedures that may be necessary or advisable to protect the confidentiality of any such Protected Material.

21.     Nothing in this Order or any designation of confidentiality hereunder, or any failure to make or challenge such designation, shall be used or characterized by any party as an admission by a party or a party opponent.

22.     The parties agree that a designation of information as Protected Material is not intended to be and shall not be construed as an admission that the Protected Material is relevant to a party's claims or defenses, nor subject to an applicable privilege or protection from disclosure.

23.     The treatment accorded under this Order shall survive the termination of this Action.

24.     To the extent that privileged material relating to the Action was prepared by Vinci, ACS and/or KSNY on or after June 14, 2023, or prepared by Case-Mate on or after June 23, 2023, such material is not required to be reflected in a privilege log. The parties reserve the right to seek the production of a privilege log for privileged material after these dates upon a showing of good cause.

25.     This Order shall not prevent any party from applying to the Court for further or additional protective orders, for the modification of this Order, or from agreeing with the other parties to modify this Order, subject to the Court's approval.

26.     Nothing in this Order shall be construed to prevent counsel from advising their clients with respect to this Action based in whole or in part upon Protected Material, provided counsel does not disclose such material itself except as provided in this Order.

27.     The parties acknowledge that the Court retains discretion as to whether, in Orders and Opinions, to afford confidential treatment to information that the parties have redacted, sealed or designated as confidential.

**Exhibit A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

                                                      Civil Action No. 23-cv-05138

VINCI BRANDS LLC,

                       Plaintiff,

        v.

COACH SERVICES, INC., KATE SPADE,
LLC, TAPESTRY, INC., and CASE-MATE, INC.,

                       Defendants.

-----------------------------------------------------------x

KATE SPADE LLC AND COACH SERVICES,          Civil Action No. 23-cv-05409
INC.,

                       Plaintiffs,

        v.

VINCI BRANDS LLC AND ACS GROUP
ACQUISITIONS LLC,

                       Defendants.

-----------------------------------------------------------x

       I, _____, acknowledge and declare that I have received a copy of the Protective Order ("**Order**") in *Vinci Brands LLC v. Coach Services, Inc. et al.* 1:23-cv-05138-LGS and *Kate Spade LLC, et al. v. Vinci Brands LLC, et al.* 1:23-cv-05409-LGS[4]. Having read and understood the terms of the Order, I agree to be bound by the terms of

---

[4] Case-Mate objects to consolidating the cases over its objection and its request to sever Vinci's claims against it. For the reasons set forth in Vinci's and ACS' joint letter motion for consolidation (Dkt. 180 and 211), Vinci and ACS believe that consolidation of both cases is appropriate under

the Order and consent to the jurisdiction of said Court for the purpose of any proceeding to enforce the terms of the Order.

Name of individual:_____

Present occupation/job description:

_____

_____

_____

Address:

_____

_____

_____          _____
Date                                      Signature

---

Federal Rule of Civil Procedure 42(a).

## JOINT STIPULATED ELECTRONICALLY STORED INFORMATION PROTOCOL

Plaintiff, Vinci Brands, LLC ("Vinci"), and Defendants Coach Services, Inc., Kate Spade LLC, Tapestry, Inc. (collectively, "KSNY") and Case-Mate, Inc. ("Case-Mate") in Civil Action No. 1:23-cv-5138-LGS and Plaintiffs, Kate Spade LLC and Coach Services, Inc. (collectively, "KSNY"), and Defendant, ACS Group Acquisitions LLC ("ACS"), in Civil Action No. 1:23-cv-5409-LGS, file this Joint Stipulated Electronically Stored Information ("ESI") Protocol ("ESI Protocol").[5]   Vinci, KSNY, Case-Mate, and ACS stipulate as follows:

## 1.  INDIVIDUAL RULES AND PROCEDURES FOR CIVIL CASES

The Parties agree to and acknowledge the Electronic Discovery rules at Section II(A) of the Court's Individual Rules and Procedures for Civil Cases (Rev. April 25, 2023) ("Court's Electronic Discovery Rules") with the following stipulated changes to the hours provision of Section II(A)(1)(d), applicable in total to all ESI discovery across both Civil Action No. 1:23-cv-5138-LGS and Civil Action No. 1:23-cv-5409-LGS:

- 240 for KSNY;

- 200 for Vinci;

- No change for Case-Mate or ACS.[6]

The Parties further agree that "properly validated," as used in connection with "keywords, Boolean searches, computer-assisted or other search methodologies" in (Original and Stipulated) Section II(A)(1) of the Court's Electronic Discovery Rules, means that to the extent a Party intends to use "keywords, Boolean searches, computer-assisted or other search methodologies" when searching ESI, the searching Party and requesting Party must first agree as to the approach or seek Court intervention, if needed.  As an example, to "properly validate" keywords: (1) the searching

---

[5]   Should the Court desire that the Parties record their agreements in another manner (not by this ESI Protocol), the Parties are willing to do so.

[6] Parties can seek to increase the hours pursuant to the Court's Electronic Discovery Rules.

party must first disclose its proposed keywords to the Party requesting that ESI, along with an identification of the custodian(s) and type(s) of ESI (e.g., emails) to be searched using those keywords; (2) the searching Party and requesting Party will then work in good faith to "properly validate" (i.e., reach an agreement regarding) the keywords; and (3) if they cannot reach an agreement within five (5) days, then the requesting Party may seek relief from the Court upon a showing of good cause.

## 2.  <u>PRIORITIZATION OF COMMUNICATION ESI</u>

Given the issues raised in each of Civil Action No. 1:23-cv-5138-LGS and Civil Action No. 1:23-cv-5409-LGS, the Court's Electronic Discovery Rules, the Federal Rules of Civil Procedure's proportionality requirement, and the Parties' respective understandings of what types of ESI are most likely to contain relevant information and documents, the Parties agree and acknowledge that ESI discovery should and will appropriately focus on Communication ESI.  "Communication ESI" means email, any persistent instant messaging (*e.g.*, Microsoft Teams, Slack, etc.), text messages, or other forms of electronic correspondence conducted on or through a Party-controlled account. Communication ESI also includes text messages conducted on or through a custodian's personal individual account(s) where the custodian's personal number(s)/address(es) was used for relevant business purposes.  Communication ESI does not include voice mail messages, non-email audio call information, non-email video call information, and/or electronic correspondence for a Party-controlled account stored on a custodian's personal device, PDA, and/or mobile phone where the same electronic correspondence is otherwise available from the Party-controlled account.

To the extent that a Party identifies responsive, unique non-Communication ESI in its possession, custody, or control, the foregoing agreement and acknowledgement alone is not a basis for the Party to not collect, search, review, and/or produce that ESI.

Compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection

to the production of particular ESI for any reason, including, for example, that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. All objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time. For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information protected by the attorney-client privilege, the work product doctrine, joint defense privilege, or any other applicable privilege. All Parties preserve all such privileges and protections, and all Parties reserve the right to object the basis of any such privileges and protections.  Nothing in this ESI Protocol creates a higher burden for obtaining discovery than is set forth in the Federal Rules.

The Parties agree and understand that Communication ESI shall only take priority in appropriate circumstances, and that this provision does not excuse a party from producing non-Communication ESI.

## 3.  <u>GENERAL ESI PRODUCTION FORMAT PROTOCOLS</u>

All documents kept as ESI shall be produced in a "converted image" format or native format. Both parties shall produce spreadsheets, audio and video files, or other files which cannot reasonably be converted to an image file in native format with an accompanying image placeholder.  Native file production specifications are addressed below.

All "converted image" documents shall be logically unitized (i.e., contain correct document breaks) with beginning and ending bates numbers to identify the breaks between documents. The production of converted images shall include an Opticon ("OPT") load file for each image with the image format in single-page Group IV Tagged Image File Format (".TIF") at a resolution of at least 300 dots-per-inch (dpi). Color pages shall be provided in a Joint Photographic Experts Group format (".JPG"). Each page of a document shall be consecutively numbered and endorsed ("burned in") with

a unique bates number on each image. Any attachment to a parent document shall be assigned the next consecutive number following the ending document number of the parent document.

Produced native files shall be assigned a production bates number. Any attachments to parent emails shall be extracted as individual files and sequentially numbered, so that the attachments appear directly after the parent email. The production bates number shall replace the original file name (e.g. ABC000001.xls) provided that the original file name is included in the metadata ("DAT") file. A separate field shall be included in the metadata ("DAT") file or as a separate cross reference ("DAT") file, containing the relative path of the native file. The native file name may reflect any designation of confidentiality (e.g. ABC000001_Highly Confidential.xls) or the designations can be provided as a separate metadata field. The metadata for emails shall be produced in a delimited text file format with Concordance ("DAT") default delimiters using ASCII characters 020 (e.g. Comma), 254 (e.g. Quote) and 174 (e.g. Newline). Date fields shall be provided in mm/dd/yyyy format with AM/PM and in Eastern Time Zone and shall not contain invalid or zero filled dates.

Extracted text shall be provided in a separate folder as a document-level text ("TXT") files for all documents that originate in electronic format. Any document in which text cannot be extracted will have Optical Character Recognition (OCR) performed and provided in document-level format. The name of the text file shall be the same as the document's production bates number with a .TXT extension (e.g., ABC000001.txt). A separate field shall be included in the metadata ("DAT") file containing the current relative path of the text file or as a separate cross reference ("DAT") file. The metadata ("DAT") file will contain the metadata fields identified in Exhibit A on the document level to the extent available.

The Parties shall make reasonable efforts to deduplicate ESI. Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians.

All documents shall be produced via a secure file transfer mechanism or on a digital media that corresponds to the size of the data set (i.e.flash drive, external hard drive, etc.). Other means of transmittal can be used if agreed upon in advance by the parties (i.e., secure ftp transfer or other password protected, secure means of electronic transmittal).

**4.  HARD COPY (NON-ESI) PRODUCTION FORMAT PROTOCOLS**

The parties agree to each produce electronic copies of logically unitized hard copy documents as they are kept in the ordinary course of business. The production of scanned hard copy images shall include an Opticon load file (".OPT") for each image with images in document-level PDF or single-page Group IV Tagged Image File Format (".TIF") at a resolution of at least 300 dots-per-inch (dpi). If producing in TIFF format, color pages shall be provided in a Joint Photographic Experts Group format (".JPG"); color will normally be retained for all documents in a PDF production. Each page of a document shall be consecutively numbered and endorsed ("burned in") with a unique bates number onto each image. Optical Character Recognition (OCR) text should be provided in a separate folder as document-level text (".TXT") files, with remaining details concerning production of such documents the same as described above.

**EXHIBIT A**

**Metadata Fields for Production of ESI**

Note: The chart below describes the fields to be produced with the Load / Unitization Files in generic, commonly used terms. Field names may vary from the below.  The first line of the delimited text file (DAT) must be a header row identifying the field names (preferred field names in parenthesis):

Begin Document Number (Prod Bates Beg) – Beginning bates number of a document

End Document Number (Prod Bates End) – Ending bates number of a document

Begin Attach Number (Prod Bates Beg Att) – Beginning bates number of the attachment family

End Attach Number (Prod Bates End Att) – Ending bates number of the attachment family

Custodian Name (Custodian) -Name of person from whom the file was obtained

Duplicate Custodians (Custodians-Duplicate) – Name of person(s) that were de-duplicated

Email From (From) -Name of person sending an email

Email To (To) -Name(s) of person(s) receiving email

Email CC (CC) -Names of persons copied on an email

Email BCC (BCC) -Names of persons blind copied on an email

Email Subject/Re (Subject) -Subject line of an email

Date Sent (Sent Date) -Date email was sent

Time Sent (Sent Time) -Time email was sent

Date Received (Received Date) – Date email was received

Time Received (Received Time) -Time email was received

Attachment List (Attachment File Names) - List of attached email file names

Attachment Count (Number of Attachments) - List of attached email count

File Name (File Name) – Name of the original native file

File Author (Author) – The metadata author of the original native file

Date Created (Created Date) – Date document was created

Time Created (Created Time) - Time document was created

Date Last Printed (Last Printed Date) – Date document was last printed

Time Last Printed (Last Printed Time) – Time document was last printed

Date Last Saved (Last Saved Date) – Date document was last saved

Time Last Saved (Last Saved Time) – Time document was last saved

Date Last Modified (Last Modified Date) – Date document was last modified

Time Last Modified (Last Modified Time) – Time document was last modified

File Extension (File Extension) – The file extension of the original native file

File Size (File Size) – The file size of the original native file

MD5 Hash (MD5 Hash) – Identifying hash value of an electronic record

Confidentiality Designation (Designation) – Confidentiality designation of a document

Redacted (Redacted) - Document has been redacted

Text File Path (Text Precedence) – Relative path to the text file

Native File Path (File_Path) -Relative path to the native file

Dated: New York, New York
          February 1, 2024

Respectfully submitted,

By:  _/s/ Michael A. Vatis_____
Michael A. Vatis
Paul A. Del Aguila (admitted PHV)
Susan M. White (admitted PHV)
Caroline R. Hamilton (admitted PHV)
**BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP**
1155 Avenue of the Americas, 26th Floor
New York, NY 10036
Tel: 646.593.7050
mvatis@beneschlaw.com
pdelaguila@beneschlaw.com
swhite@beneschlaw.com
chamilton@beneschlaw.com

*Attorneys for Plaintiff Vinci Brands LLC in Civil Action No.
1:23-cv-5138-LGS, and Defendant Vinci Brands LLC in Civil
Action No. 1:23-cv-5409-LGS,*

By:  _/s/_____
BRYAN CAVE LEIGHTON PAISNER LLP
Christine Cesare
Thomas J. Schell
Jane Ernst
1290 6th Ave,
New York, NY 10104
Tel: (212) 541-2000
cbcesare@bclplaw.com
tjschell@bclplaw.com
jane.ernst@bclplaw.com

Timothy Beyer (*pro hac vice*)
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Tel: 303 866 0481
tim.beyer@bclplaw.com

Nick E. Williamson (*pro hac vice*)
One Metropolitan Square,
211 N Broadway Suite 3600,
St. Louis, MO 63102
Tel: (314) 259-2000
nick.williamson@bclplaw.com

*Attorneys for Defendants Coach Services, Inc., Kate Spade*

3

LLC, and Tapestry, Inc. in Civil Action No. 1:23-cv-5138-LGS, and Plaintiffs Kate Spade LLC and Coach Services, Inc. in Civil Action No. 1:23-cv-5409-LGS,

By:  __/s/_____

   NELSON MULLINS RILEY & SCARBOROUGH LLP

   Alan F. Kaufman
   330 Madison Avenue, 27th Floor
   New York, New York 10017
   Telephone: (212) 413-9000
   Email: alan.kaufman@nelsonmullins.com

   Erika C. Birg (*pro hac vice*)
   201 17th Street NW | Suite 1700
   Atlanta, Georgia 30363
   Telephone: (404) 322-6110
   Email: erika.birg@nelsonmullins.com

   Nicole Phe (*pro hac vice*)
   One Financial Center | Suite 3500
   Boston, MA 02111
   Telephone: 617-217-4671
   Email: nicole.phe@nelsonmullins.com

*Counsel for Defendant Case-Mate, Inc. in Civil Action No. 1:23-cv-5138-LGS*

By:  __/s/ Robert A. Giacovas_____
   LAZARE POTTER GIACOVAS & MOYLE LLP
   Robert A. Giacovas
   Lainie E. Cohen
   Anna Pia D. Felix
   Christina Dellaporte
   747 Third Avenue, 16th Floor
   New York, New York 10017
   Telephone: (212) 758-9300
   Facsimile: (212) 888-0919
   rgiacovas@lpgmlaw.com
   lcohen@lpgmlaw.com
   afelix@lpgmlaw.com
   cdellaporte@lpgmlaw.com

   LAZARUS & LAZARUS, P.C.
   Harlan M. Lazarus, Esq.
   240 Madison Avenue, 8thFlr.
   New York, NY 10016

Tele: 212-889-7400
Facsimile: 212-684-0314
Hlazarus@lazarusandlazarus.com

*Attorneys for Defendant ACS Group Acquisition LLC in Civil Action No. 1:23-cv-5409-LGS*