UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                         :
VINCI BRANDS LLC,                                        :        Civil Action No. 1:23-CV-05138
                                                         :
                        Plaintiff,                       :
                                                         :
             vs.                                         :
                                                         :
COACH SERVICES, INC. KATE SPADE,                         :
LLC, TAPESTRY, INC. and CASE-MATE,                       :
INC.,                                                    :
                                                         :
                        Defendants.                      :
                                                         :
-------------------------------------------------------- X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**<u>OF ITS MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL BACKGROUND......................................................................................2

LEGAL STANDARD...........................................................................................................3

ARGUMENT .........................................................................................................................4

I.      The TAC is Timely ...................................................................................................4

II.     The TAC Adds Legitimate Allegations, Claims, and Requests for Relief ........................5

       A.      The TAC Alleges Plausible Claims of Fraud Against the Kate Spade Defendants.6

       B.      The TAC Alleges Plausible Claims of Fraud Against Case-Mate..........................9

       C.      The TAC's Fraud Claims Are Not Duplicative of Vinci's Breach of Contract Claims ..................................................................................................10

       D.      The TAC Sets Forth Plausible Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants ...................................................13

       E.      The TAC States a Plausible Claim for Civil Conspiracy Against Case-Mate.......14

       F.      Vinci's Request for Punitive Damages Is Appropriate in Light of the Newly Discovered Evidence Showing the High Degree of Moral Culpability of Defendants' Actions................................................................................................16

       G.      Vinci's Updated Allegations to its Breach of Contract and Tortious Interference Claims Enhance Those Claims with Newly Discovered Evidence ........................17

III.    The TAC Will Not Prejudice Defendants.........................................................................17

CONCLUSION.....................................................................................................................18

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*511 W. 232nd Owners v. Jennifer Realty Co.*,
   98 N.Y.2d 144 (2002) ........................................................................................................13

*Action S.A. v. Marc Rich & Co.*,
   951 F.2d 504 (2d Cir. 1991) .............................................................................................16

*Aetna Cas. & Sur. Co.*,
   404 F.3d at 591 ............................................................................................................14, 15

*Agerbrink v. Model Service LLC*,
   155 F. Supp. 3d 448 (S.D.N.Y. 2016) ................................................................................5

*Anexia v. Horizon Data Solutions Cente*r,
   74 Misc.3d 1233(A), 2022 N.Y. Slip Op. 50320(U) (Sup. Ct. N.Y. Cnty.
   2022) ..................................................................................................................................13

*Aquino by Convergent Dist. of Texas, LLC v. Alexander Cap., L.P.*,
   632 B.R. 7 (S.D.N.Y. 2021) ............................................................................................8, 9

*BJB Ltd v. iStar Jewelry LLC*,
   533 F. Supp. 3d 83 (E.D.N.Y. 2021) ..........................................................................10, 13

*Brass v. Am. Film Techs., Inc.*,
   987 F.2d 142 (2d Cir. 1993) ...........................................................................................6, 8

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
   98 F.3d 13 (2d Cir. 1996) .................................................................................................10

*First Bank of Am. v. Motor Car Funding, Inc.*,
   257 A.D.2d 287 (1st Dep't 1999) ...............................................................................10, 13

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................................................3

*Fometal S.R.L. v. Keili Trading LLC*,
   2024 WL 307976 (S.D.N.Y. Jan. 26, 2024) .....................................................................14

*Freeman v. HSBC Holdings PLC*,
   57 F.4th 66 (2d Cir. 2023) ................................................................................................14

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*,
   304 F.R.D. 170 (S.D.N.Y. 2014) ......................................................................................17

*Getty Petroleum Corp. v. Island Transp. Corp.*,
   878 F.2d 650 (2d Cir. 1989)...................................................................................16

*Greenman-Pedersen, Inc. v. Berryman & Henigar, Inc.*,
   130 A.D.3d 514 (2015) ........................................................................................11

*Int'l Mins. & Res., S.A. v. Pappas*,
   96 F. 3d 586 (2d Cir. 1996)..................................................................................16

*Jana L. v. W. 129th St. Realty Corp.*,
   22 A.D.3d 274 (1st Dep't 2005) .............................................................................6

*Kitto v. Thrash Oil*,
   1989 WL 29468 (W.D.N.Y. Mar. 4, 1989)...........................................................8, 9

*Kurzweil v. Philip Morris Companies, Inc.*,
   1997 WL 167043 (S.D.N.Y. Apr. 9, 1997)..............................................................5

*Mesiel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009)......................................................................6

*Molo Design, Ltd. v. Chanel, Inc.*,
   2024 WL 2982924 (S.D.N.Y. June 12, 2024) .........................................................5

*Patterson v. Morgan Stanley*,
   2017 WL 11569235 (S.D.N.Y. Sept. 27, 2017)......................................................3

*Pearlstein v. BlackBerry Ltd.*,
   No. 13-CV-7060 (TPG), 2017 WL 4082306 (S.D.N.Y. Sept. 13, 2017) ................5

*Richbell Info. Servs. v. Jupiter Partners, L.P.*,
   309 A.D.2d 288 (1st Dep't 2003) .........................................................................13

*S.J v. Choice Hotels Int'l, Inc.*,
   2022 WL 1422440 (E.D.N.Y. Feb. 23, 2022)........................................................3

*Shi Ming Chen v. Human Manor Ent., Inc.*,
   437 F. Supp. 3d 361 (S.D.N.Y. 2020)....................................................................4

*Sofi Classic S.A. de C.V. v. Hurowitz*,
   444 F. Supp. 2d 231 (S.D.N.Y. 2006)..................................................................10

*Stanley v. CUNY, John Jay College*,
   2022 WL 21808092 (S.D.N.Y. July 22, 2022) .......................................................3

*Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*,
   2018 WL 1027754 (S.D.N.Y. Feb. 20, 2018)......................................................13

*State Tchrs. Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)..............................................................................4

*Trahan v. Lazar*,
    457 F. Supp. 3d 323 (S.D.N.Y. 2020)..........................................................8, 9

*Whitney v. Citibank, N.A.*,
    782 F.2d 1106 (2d Cir.1986)..........................................................................16

*Wild Bunch, SA v. Vendian Ent., LLC*,
    256 F. Supp. 3d 497 (S.D.N.Y. 2017)........................................................11, 12

*World Wrestling Fed'n Ent., Inc. v. Bozell*,
    142 F. Supp. 2d 514 (S.D.N.Y. 2001)............................................................14

## Other Authorities

Federal Rule of Civil Procedure 15(a) ....................................................................3

Federal Rule of Civil Procedure 15(a)(2) .........................................................1, 3

Rule 9 .....................................................................................................................14

Rule 9(b) .............................................................................................................6, 8

Rule 12(b)(6) ......................................................................................................5, 6

Rule 15 .....................................................................................................................3

Pursuant to the Court's June 28, 2024 Order (ECF No. 408), Plaintiff Vinci Brands, LLC ("Vinci") respectfully submits this Memorandum of Law in support of its motion to amend its Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## PRELIMINARY STATEMENT

For several months in the spring of last year, a hidden scheme was in the works to replace Vinci with Case-Mate as the Kate Spade licensee. Discovery since the filing of the Second Amended Complaint on November 3, 2023 has uncovered the inner workings of this scheme as revealed in contemporaneous documents and sworn admissions from Defendants Coach Services, Inc. ("Coach Services"), Kate Spade, LLC ("Kate Spade), Tapestry, Inc. ("Tapestry"), and Case-Mate, Inc. ("Case-Mate").[1] The evidence reveals a pattern of fraud and deception designed to string Vinci along so that the "Case-Mate Takeover" could succeed in a way that was maximally beneficial to Kate Spade and Case-Mate—and financially ruinous for Vinci. Time after time, the Kate Spade Defendants and Case-Mate lied to Vinci about present facts, and hid the special knowledge it had about what was actually happening to ensure that Vinci would continue preparing for the new iPhone launch. Even as Vinci invested its resources in preparing for the launch, the Kate Spade Defendants and Case-Mate knew that all the benefits to be derived from Vinci's work and expenditures would be diverted to Case-Mate.

On the basis of what it has learned, Vinci seeks leave to file its Third Amended Complaint ("TAC") to add new claims addressing Defendants' newly discovered misconduct, as well as a request for punitive damages. Vinci seeks to add claims of fraud and breaches of the covenant of good faith and fair dealing against Defendants, and to update its existing breach of contract and tortious interference claims against Defendants to reflect evidence that has been produced by

---

[1] Coach Services, Kate Spade, Tapestry, and Case-Mate are collectively referred to as "Defendants"; Coach Services, Kate Spade, and Tapestry are collectively referred to as "Kate Spade Defendants."

Defendants since Vince filed its Second Amended Complaint.  Accompany this this motion is the Declaration of Charles H. Low ("Low Decl.") filed to which Exhibits A and B—a clean copy of the TAC and a redline of the TAC against the Second Amended Complaint, respectively, are attached.

Vinci's amendment is timely, adds legitimate claims and credible allegations and a justified request for relief, and will not prejudice Defendants.  As this Court knows, Vinci has had to file serial motions to compel Defendants to produce the information Vinci needs to prosecute its claims.  Now that Vinci has finally received some of the discovery it has been pursuing, Vinci has moved expediently to add the claims, request for relief, and allegations addressing that misconduct to the TAC to address the additional misconduct now revealed.  Accordingly, Vinci respectfully requests that the Court grant leave to file the TAC.

## PROCEDURAL BACKGROUND

Vinci filed its initial complaint against Kate Spade on June 16, 2023, and amended its complaint as of right to add Case-Mate seven days later, on June 23, 2023 (the "First Amended Complaint"). Following the Court's decision granting in part Vinci's motion for a preliminary injunction and temporary restraining order issued on September 29, 2023, Vinci amended its complaint again on November 3, 2023, asserting additional claims against Case-Mate and Kate Spade (the "Second Amended Complaint").

The parties commenced discovery in November 2023 and began producing documents in January 2024.  Fact witness depositions commenced in March 2024.  Document discovery and fact witness depositions are ongoing.  In light of the complexity of this case and the amount of discovery required, the parties jointly requested in a letter motion submitted to this Court on May 31, 2024, that the Court extend the fact discovery deadline through July 3, 2024, and the expert discovery deadline through October 1, 2024.

On June 6, 2024, the Court held a status conference and subsequently issued a written order extending the fact discovery and expert discovery deadlines to September 30, 2024, and January 31, 2025, respectively.  On June 28, 2024, the Court issued an additional Order directing Vinci to seek leave to file this TAC by July 3, 2024.

Pursuant to the Court's June 28, 2024 Order, Vinci brings this motion seeking leave to amend its Second Amended Complaint to (i) add claims of fraud against Defendants; (ii) add claims for breaches of the covenant of good faith and fair dealing against Defendants; (iii) add a claim for civil conspiracy against Case-Mate; (iv) add a request for punitive damages; and (v) add allegations to support its existing breach of contract and tortious interference claims against Defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be "freely" given when "justice so requires."  Fed. R. Civ. P. 15(a).  This is a "permissive standard" and leave to amend should be "liberally granted."  *Patterson v. Morgan Stanley*, 2017 WL 11569235, at *2 (S.D.N.Y. Sept. 27, 2017).  The nonmoving party bears the burden of demonstrating why leave should not be granted.  *Stanley v. CUNY, John Jay College*, 2022 WL 21808092, at *1 (S.D.N.Y. July 22, 2022).

In the absence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Stanley*, 2022 WL 21808092, at *1 (same).  Rule 15 thus creates a presumption in favor of granting leave to amend. *S.J v. Choice Hotels Int'l, Inc.*, 2022 WL 1422440, at *2 (E.D.N.Y. Feb. 23, 2022).

## ARGUMENT

### I.    THE TAC IS TIMELY

In certain circumstances, such as where a party flagrantly disregards the court's deadline for seeking leave to amend and provides no explanation for its actions, a court may find good cause to deny leave to amend. *See Shi Ming Chen v. Human Manor Ent., Inc.*, 437 F. Supp. 3d 361, 365 (S.D.N.Y. 2020) (denying leave to amend where plaintiffs filed motion to add defendants six months after deadline to add new parties). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

Vinci has neither delayed nor flagrantly disregarded any court deadlines. Vinci seeks leave to amend based on newly discovered facts and evidence produced by Defendants to Vinci during a drawn out and highly contested discovery process. Defendants have unnecessarily withheld documents and delayed Vinci's receipt of permissible discovery, forcing Vinci to file no less than seven motions to compel or otherwise force Defendants to comply with their discovery obligations. Vinci has won six of those motions and its most recent motion, submitted on June 4, 2024, is still pending. *See, e.g.*, ECF No. 239 ("The Court is not convinced that Case-Mate has negotiated in good faith to provide reasonable discovery responses."); ECF No. 247 (compelling Case-Mate to produce certain documents and communications responsive to Vinci's RFP Nos. 9-12, 35, and 39); ECF No. 252 (compelling Case-Mate to produce documents and communications responsive to Vinci's RFP Nos. 15-16 and 23-26); ECF No. 347 (ordering Case-Mate to "review its entire document production thus far and remove all redactions except for those protected by the attorney-client privilege or work-product doctrine.").

Vinci initially served discovery requests on November 20, 2023. Some of the new facts and allegations in the TAC are derived from documents that were produced as recently as June 4,

2024.  Vinci has thus worked expediently, spending considerable time and resources reviewing and digesting reams of recently produced documents to glean the substance behind the new allegations and claims in the TAC.  In fact, Vinci is working precisely within the timeline prescribed by the Court, as Vinci was able to meet the deadline of July 3, 2024 the Court set last week for Vinci to seek leave to amend.

Where, as here, a party has diligently reviewed newly produced discovery and quickly sought to amend its complaint based on newly discovered facts in that discovery, courts freely grant leave to amend.  *See Molo Design, Ltd. v. Chanel, Inc.*, 2024 WL 2982924, at *4 (S.D.N.Y. June 12, 2024) (finding that "Plaintiff's actions—including its request for leave to amend within two months from the time it discovered new relevant facts—were reasonable"); *Kurzweil v. Philip Morris Companies, Inc.*, 1997 WL 167043, at *10 (S.D.N.Y. Apr. 9, 1997) (granting leave to amend based on materials that came into plaintiffs' possession six months prior to plaintiffs' motion for leave to amend); *see also Pearlstein v. BlackBerry Ltd.*, No. 13-CV-7060 (TPG), 2017 WL 4082306, at *2 (S.D.N.Y. Sept. 13, 2017) (prior knowledge relating to the new elements of an amended pleading, without more, "is insufficient to demonstrate undue delay").

Any allegation of undue delay by Defendants would be nonsense.  As explained above, it is Defendants who have attempted to repeatedly and improperly frustrated Vinci's prosecution of its claims in this case through obfuscatory discovery tactics.  Accordingly, Vinci's request for leave to file the TAC is timely.

## II.    THE TAC ADDS LEGITIMATE ALLEGATIONS, CLAIMS, AND REQUESTS FOR RELIEF

Denial on the basis of futility is appropriate only when a party fails to state a claim for relief that is plausible on its face.  *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016).  "As when considering a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's

favor." *Id.* Vinci's proposed new claims have merit and describe the nature of Defendants' misconduct with the requisite particularity.

Vinci's proposed amendment includes: (i) a new claim for fraud against the Kate Spade Defendants based on their multistep plot to secretly replace Vinci with Case-Mate as the Kate Spade licensee, inducing Vinci to continue preparing for the iPhone 15 launch in Fall 2023 for the sole benefit of Case-Mate and Kate Spade; (ii) a new claim for fraud against Case-Mate Defendants based on its role in the multistep plot to secretly replace Vinci as the Kate Spade licensee, including by inducing Vinci to enter into the Second Confidentiality Agreement and securing confidential information from Vinci under false pretenses; (iii) new claims for breach of the implied covenant of good faith and fair dealing against Defendants; (iv) a new claim for civil conspiracy against Case-Mate; and (v) a request for punitive damages. (Low Decl., Ex. A). The TAC also updates Vinci's breach of contract and tortious interference claims to conform to the evidence with details concerning the Kate Spade Defendants' inaccurate and misleading accounting practices and Defendants' collusive efforts to prevent Vinci from exercising its post-termination rights under its License Agreement with Kate Spade and to otherwise inflict irreparable commercial harm.

## A.    The TAC Alleges Plausible Claims of Fraud Against the Kate Spade Defendants

Under New York law, a party claiming fraud must allege: (1) defendant's material misrepresentation, or material omission under a duty to disclose; (2) defendant's intent to induce reliance on the misrepresentation; (3) plaintiff's reasonable reliance; and (4) plaintiff's resulting damages. *Mesiel v. Grunberg*, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009). A duty to disclose can arise from a fiduciary relationship, a party's partial or ambiguous statement, or from "one party's superior knowledge of essential facts" where nondisclosure "would render a transaction inherently unfair." *Id.* (quoting *Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 277 (1st Dep't 2005));

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  A claim for fraud must meet the heightened pleading requirements of Rule 9(b).  *Id.* at 108.

The TAC adequately pleads each element of fraud with particularity as to the Kate Spade Defendants.  The TAC contains specific and detailed allegations of fraud.  It alleges that the Kate Spade Defendants hatched a plan with Case-Mate to replace Vinci as the Kate Spade licensee and actively withheld the plan from Vinci to trick Vinci into preparing for the iPhone 15 launch.  Kate Spade had a duty to disclose the scheme to Vinci based on its possession of superior knowledge that was not available to Vinci and, if known, would have saved it millions of dollars, which instead created value for Case-Mate.

Specifically, as laid out in the TAC, during the approximately two-month period between April and June 2023 in which the Kate Spade Defendants and Case-Mate finalized their new license, the Kate Spade Defendants continued to press Vinci to perform under the existing license agreement by preparing and arranging for manufacture of iPhone cases to meet the September launch.  The Kate Spade Defendants did not disclose to Vinci their superior knowledge that Vinci was about to be replaced and that Vinci's efforts would inure only to the benefit of its competitor Case-Mate, because they needed Vinci to prepare for the iPhone 15 launch.  The Kate Spade Defendants knew Vinci would not have expended pointless time, money and resources preparing for a launch that would benefit only Case-Mate and *not* Vinci.  What is more, the Kate Spade Defendants misled Vinci into supplying the Kate Spade Defendants with confidential information regarding launch preparation by stating innocuous and pretextual reasons for the requests, when in reality the Kate Spade Defendants were sending that information to Vinci's competitor Case-Mate as part of the takeover plot.

These allegations provide a plausible basis for fraud by alleging (1) that the Kate Spade Defendants made misrepresentations and material omissions to Vinci while in possession of superior knowledge about the Case-Mate Takeover plan; (2) that they intended to induce Vinci's reliance on those misstatements and omissions to trick Vinci into preparing for the iPhone 15 launch, all the value of which was then diverted to Case-Mate; (3) that Vinci in fact relied on the Kate Spade Defendants' misstatements and material omissions in continuing to prepare for the iPhone 15 launch and in sending Kate Spade its confidential information; and (4) that Vinci incurred damages from this reliance, to its detriment in expending time and resources preparing for the iPhone 15 launch, which only inured to the benefits of Kate Spade and Case-Mate.  (Low Decl., Ex. A).  This claim does not sound in contract, and the amendment is necessary to conform Vinci's complaint to the evidence already uncovered. As the Second Circuit has explained, New York law identifies such conduct as a tort:  it "require[s] disclosure" by a party with knowledge of special facts "in an array of contexts in which silence would at one time have escaped criticism.'" *Brass*, 987 F.2d at 151–52 (internal quotation marks and citations omitted); *see also id.* 151-52 ("New York has joined other jurisdictions in limiting the 'privilege to take advantage of ignorance'" when a defendant has superior knowledge unavailable to the deceived party).

Courts have found similar allegations sufficient to plead claims of fraud under Rule 9(b). *See Aquino by Convergent Dist. of Texas, LLC v. Alexander Cap., L.P.*, 632 B.R. 7, (S.D.N.Y. 2021) (finding fraud claim sufficiently pled where plaintiff "alleged numerous misrepresentations" following execution of the parties' agreement); *Trahan v. Lazar*, 457 F. Supp. 3d 323, 353-54 (S.D.N.Y. 2020) (finding fraud claim sufficiently pled based on allegations that defendants concealed their scheme to displace plaintiff on multiple occasions); *Kitto v. Thrash Oil*, 1989 WL

29468 at *5 (W.D.N.Y. Mar. 4, 1989) (finding fraud claim sufficiently pled based on "various allegations" that added up to a course of fraudulent conduct).

**B.    The TAC Alleges Plausible Claims of Fraud Against Case-Mate**

The TAC adequately pleads each element of fraud with particularity as to Case-Mate.  As the TAC sets out in detail, in the spring of 2023, Case-Mate approached Vinci about the possibility of purchasing all of Vinci's assets, and the parties then entered into a period of diligence and negotiations.  The TAC contains specific and detailed allegations that Case-Mate simultaneously entered into a secret plan with Kate Spade to replace Vinci as the Kate Spade licensee regardless of whether Case-Mate purchased Vinci.  In the process, Case-Mate concealed, through lies and omissions, its intent to replace Vinci as the Kate Spade licensee.  In turn, Vinci would provide Case-Mate with due diligence that would help Case-Mate meet the iPhone 15 launch as Kate Spade's licensee.  Case-Mate knew that if Vinci were aware of Case-Mate's behind-the-scenes efforts with Kate Spade, Vinci would not have engaged in a diligence and negotiation process in which it handed over insights and financial data that poised Case-Mate to take advantage of Vinci's confidential information regardless of whether Case-Mate acquired Vinci.

As such, the TAC plausibly alleges fraud by setting out (1) that Case-Mate made misrepresentations and material omissions to Vinci while in possession of superior knowledge about the Case-Mate Takeover plan; (2) that it intended to induce Vinci's reliance on those misstatements and omissions in engaging in the negotiation and diligence process with Case-Mate; (3) that Vinci in fact relied on those misrepresentations and omissions; and (4) that Vinci suffered damages when Case-Mate reaped all the benefits from the iPhone 15 launch instead of Vinci.  (Low Decl., Ex. A).  As with the allegations against the Kate Spade Defendants, these allegations are sufficient to plead a fraud claim against Case-Mate.  *See Aquino*, 632 B.R. at 33; *Trahan*, 457 F. Supp. 3d at 353-54; *Kitto*, 1989 WL 29468 at *5.

**C.    The TAC's Fraud Claims Are Not Duplicative of Vinci's Breach of Contract Claims**

Defendants will likely argue that Vinci's fraud claims are just repackaged breach of contract claims and should be dismissed.  Defendants would be wrong.  In the Second Circuit, a plaintiff may bring a fraud claim against its contractual counterparty where:  "(i) the plaintiff can demonstrate a legal duty separate from the duty to perform under the contract; or (ii) the plaintiff can demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) the plaintiff seeks special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).  In a case where the fraud claim is based on an omission, a duty to disclose separate from the contract arises:  (i) "where the party has made a partial or ambiguous statement"; (ii) "when the parties stand in a fiduciary or confidential relationship with each other"; or (iii) "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 244 (S.D.N.Y. 2006).

The new allegations in the TAC show that all three of the *Bridgestone* factors are satisfied with respect to the Kate Spade Defendants and Case Mate.  Only one is needed.  As to the Kate Spade Defendants, the TAC alleges that the Kate Spade Defendants made affirmative misrepresentations to Vinci about the existing plans for the iPhone 15 launch and the reasons for its serial requests for Vinci's confidential information (which in truth was being sent to Case-Mate to help Case-Mate get ready to replace Vinci).  These misstatements were present misrepresentations of fact rather than promises of future performance; thus, they are collateral to the contract and sufficient to maintain a fraud claim.  *See BJB Ltd v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 102-103 (E.D.N.Y. 2021) (holding that fraud claim could proceed alongside contract

claim because post-contractual misrepresentations of present fact were collateral to the agreement); *First Bank of Am. v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 292 (1st Dep't 1999) (holding that repeated misrepresentations concerning present facts during the course of the parties' contract made to induce plaintiff's performance constituted fraud). These misstatements are also collateral to the contract: the License Agreement does not have any provisions forbidding deception about a presently existing plan to replace Vinci with a competitor and siphoning value to a third party from costs Vinci would never have incurred if it had known the truth.

The new fraud claims are also premised on the Kate Spade Defendants' material omissions. The Kate Spade Defendants owed Vinci a duty to disclose its superior knowledge about the Case-Mate takeover separate and apart from any duty based on the License Agreement. The TAC clearly sets forth allegations demonstrating that—as the Kate Spade Defendants knew—Vinci was acting under the mistaken belief that it would maintain the Kate Spade license, at least for the imminent iPhone 15 launch. But Kate Spade knew that it planned to terminate the License Agreement with Vinci two years early, on the eve of the launch, and enter into a different agreement with Case-Mate. Thus, Kate Spade had superior knowledge to Vinci and knew that Vinci was continuing to perform under its License Agreement, acting on the basis of mistaken knowledge—information that was "peculiarly within the knowledge of one party and … was not such that could have been discovered by the other party through the exercise of ordinary intelligence." *See Greenman-Pedersen, Inc. v. Berryman & Henigar, Inc.*, 130 A.D.3d 514, 516 (2015). Kate Spade had a duty to disclose its plan on that basis. *Id.* These allegations are sufficient to sustain Vinci's fraud claim. *See Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017) (holding that fraud claim could proceed alongside breach of contract claim where defendants had a duty to

disclose because they deliberately cultivated plaintiff's reliance on a material omission that was peculiarly within their knowledge).

Indeed, the fraud claim against the Kate Spade Defendants does not depend one way or the other on whether Kate Spade breached its License Agreement with Vinci. Because the License Agreement was largely non-exclusive, the fact that Kate Spade was preparing to and did grant a license to Case-Mate did not itself constitute a breach. Instead, it is the failure to disclose to Vinci that Vinci's own performance and effort under the License Agreement would be misappropriated to the benefit of its competitor, Case-Mate, and not to Vinci that underlies the allegations of fraud here.

Finally, the damages for Vinci's fraud claim against the Kate Spade Defendants are also different from the contract damages it seeks, as Vinci seeks compensation for the time and expense related to the preparations Kate Spade induced it to undertake as part of its fraudulent scheme. Accordingly, while satisfaction of just one of the *Bridgestone* factors is enough, the TAC sets forth allegations that satisfy all three tests for determining whether a fraud claim can proceed with a breach of contract claim.

The analysis as to Case-Mate is much the same. The TAC alleges that Case-Mate also affirmatively withheld that it was colluding with the Kate Spade Defendants to replace Vinci while separately representing to Vinci that it was interested in acquiring its business. Had Vinci known that Case-Mate was plotting to take over Vinci's most valuable asset before it approached Vinci about acquiring its business, it would not have entered into the Second Confidentiality Agreement and provided Case-Mate with its most sensitive and confidential information, including reams of information related to its business with the Kate Spade Defendants. Case-Mate had a duty to

disclose the full picture to Vinci because, like Kate Spade, it had superior knowledge and knew that Vinci was acting on the basis of a mistaken belief. *See Wild Bunch*, 256 F. Supp. 3d at 506.

Case-Mate also outright lied to Vinci at times about why it needed certain pieces of information and how it was going to use that information. These misstatements were misrepresentations of present fact rather than promises of future performance and are thus collateral to any contract and sufficient to maintain a fraud claim. *See BJB Ltd*, 533 F. Supp. 3d at 102-103; *First Bank of Am*, 257 A.D.2d at 292.

Of course, each of the Defendants would have an opportunity to fully brief these issues should they seek to dismiss the TAC. For now, the relevant question is whether the TAC state plausible claims for relief, which, for the reasons set forth herein, they plainly do.

### D.    The TAC Sets Forth Plausible Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendants

Under New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). "[T]he implied covenant of good faith and fair dealing should be enforced where . . . 'a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the [contractual] intention of the parties.'" *Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, 2018 WL 1027754, at *4 (S.D.N.Y. Feb. 20, 2018) (citations omitted). When a party to a contract deceives the other and prevents the exercise of or benefit from that party's contractual rights, it breaches the implied covenant of good faith and fair dealing. *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302 (1st Dep't 2003). The TAC alleges bad-faith schemes by both the Kate Spade Defendants and Case-Mate to deprive Vinci of its benefit of the bargain based on conduct that is not expressly barred by the license (but would have been if the parties had foreseen the extraordinary nature of

the unfairness created by Defendants' scheme).  Accordingly, Vinci has plausibly alleged a breach of the implied covenant of good faith and fair dealing.  *See Anexia v. Horizon Data Solutions Cente*r, 74 Misc.3d 1233(A), 2022 N.Y. Slip Op. 50320(U) (Sup. Ct. N.Y. Cnty. 2022) (allowing breach of implied covenant claim to proceed where the counterclaimant alleged that the plaintiff had negotiated directly with a third-party recipient of both parties' services to cut the defendant out of resale arrangement with the third party).  The jury should be given the opportunity to consider not just the language of the contracts but also the profound unfairness of Defendants' actions, which betrayed the implied obligation of good faith the parties created in entering the License.

### E.    The TAC States a Plausible Claim for Civil Conspiracy Against Case-Mate

Under New York law, a civil conspiracy claim requires proof of an underlying tort, as well as: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World Wrestling Fed'n Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001).  A conspiracy may be alleged "for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others." *Aetna Cas. & Sur. Co.*, 404 F.3d at 591 (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981)).

The TAC states a claim for fraud as to Kate Spade with the requisite particularity.  *See supra* Sections III.A-C.  Therefore, the TAC contains sufficient allegations of the underlying tort.

The TAC also contains allegations sufficient to establish the existence of the conspiracy between Kate Spade and Case-Mate to further the fraud perpetuated by Kate Spade, and the overt acts taken in furtherance of that conspiracy.  *See Fometal S.R.L. v. Keili Trading LLC*, 2024 WL 307976, at *13 (S.D.N.Y. Jan. 26, 2024) (explaining that the four elements of civil conspiracy are

not subject to the heightened pleading standard of Rule 9, and a plaintiff can establish the existence of a conspiracy by pleading "specific times, facts, and circumstances of the alleged conspiracy"); *Freeman v. HSBC Holdings PLC*, 57 F.4th 66, 77 (2d Cir. 2023) (explaining that generally "the agreement in a civil conspiracy does not assume the same importance it does in a criminal action," and "proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement"). The TAC also adequately alleges that both Kate Spade and Case-Mate acted with the intent to further a common plan to (i) intentionally mislead Vinci into preparing for a forthcoming iPhone launch that Kate Spade and Case-Mate, not Vinci, would participate in; and (ii) intentionally lure Vinci into providing Case-Mate and Kate Spade information to aid in their launch preparations under false pretenses.

The TAC contains specific allegations of when Case-Mate and Kate Spade agreed that Case-Mate would take over, when and why Case-Mate and Kate Spade decided to hide this plan from Vinci, and how Case-Mate participated in surreptitiously depriving Vinci of the benefits of its hard work preparing for launch. Among the steps that Case-Mate took was to suggest that Kate Spade illicitly obtain confidential information from Vinci to assist with Case-Mate and Kate Spade's launch preparations. With respect to each overt act that Case-Mate took to siphon information from Vinci for its own benefit, the TAC explains in detail when those acts occurred and how these acts furthered the scheme.

The TAC's civil conspiracy claim is not duplicative of its other fraud claims. While a plaintiff cannot "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim," conspiracy can be used "for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others." *Aetna*, 404 F.3d at 591. In its TAC, Vinci brings fraud

claims against Case-Mate.  However, even if these individual fraud claims against Case-Mate do not survive or are defeated at trial, it should still be held accountable for its participation in the scheme against Vinci by conspiring with Kate Spade.  It was only through Case-Mate and the Kate Spade Defendants' concerted efforts to repurpose the fruits of Vinci's labor for the benefit of Case-Mate that the parties were able to effectuate the scheme.

F.     **Vinci's Request for Punitive Damages Is Appropriate in Light of the Newly Discovered Evidence Showing the High Degree of Moral Culpability of Defendants' Actions**

Punitive damages may be awarded under New York law in tort cases involving " gross, wanton, or willful fraud, or other morally culpable conduct.'" *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir. 1991) (quoting *Borkowski v. Borkowski*, 39 N.Y.2d 982 (1976)). Such damages may be awarded in cases alleging fraud, *see, e.g.*, *Action S.A.*, 951 F.2d at 506, tortious interference, *see, e.g.*, *Int'l Mins. & Res., S.A. v. Pappas*, 96 F. 3d 586, 597 (2d Cir. 1996), breach of fiduciary duty, *see, e.g.*, *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1118-1119 (2d Cir.1986), or unfair competition, *see, e.g.*, *Getty Petroleum Corp. v. Island Transp. Corp.*, 878 F.2d 650, 657 (2d Cir. 1989), among other claims.

The evidence recently uncovered during discovery shows that the conduct of the Kate Spade Defendants and Case-Mate satisfies the standard for punitive damages, such that the issue should be submitted to the jury for decision.  Defendants repeatedly, maliciously, and willfully lied to Vinci to induce it to provide confidential information that they used not only for their own purposes, but to destroy Vinci's business.  The Kate Spade Defendants also repeatedly pushed Vinci to continue its efforts and expenditures to prepare for the Fall 2023 iPhone launch, knowing that they would soon terminate Vinci's license and the fruits of Vinci's efforts would be enjoyed by Vinci's competitor, Case-Mate, while Vinci was left to die on the vine.  And all Defendants lied to Vinci's customers and suppliers in their scheme to destroy Vinci's business and allow Case-

Mate to step into its shoes, by intentionally and falsely asserting that Case-Mate was Kate Spade's "exclusive licensee" when they knew it was not, and by falsely and intentionally asserting that Vinci had no authority to produce or sell Kate Spade-branded merchandise, when they knew that it did.

A jury could reasonably find that this conduct rises to the level of moral culpability deserving of punishment through an award of punitive damages.

### G.     Vinci's Updated Allegations to its Breach of Contract and Tortious Interference Claims Enhance Those Claims with Newly Discovered Evidence

Vinci's new allegations lend additional credibility to its breach of contract and tortious interference claims.  The TAC sets forth a detailed history of the Kate Spade Defendants' consistently inaccurate and untimely invoicing practices that resulted in several breaches of the License Agreement.  The TAC also sets forth new allegations describing an explicit, monthslong effort undertaken by both the Kate Spade Defendants and Case-Mate to interfere with Vinci's post-termination rights under the License Agreement and tarnish Vinci's reputation in the industry.

### III.    THE TAC WILL NOT PREJUDICE DEFENDANTS

"In gauging prejudice," a court considers, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (internal citations and quotations omitted).  "Allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Id.* (internal citations and quotations omitted).

Vinci's proposed amendment will not unduly prejudice the Defendants because its amended claims and request for relief are based on existing discovery and Vinci does not

contemplate the need for significant additional discovery predicated by this amendment.  To the extent any additional discovery is needed, it could certainly be completed by the existing fact discovery deadline of September 30, 2024.

## CONCLUSION

For the reasons set forth above, Vinci respectfully requests the Court grant its motion to amend.

Dated: New York, New York
      July 3, 2024

Respectfully submitted,

**COOLEY LLP**

By:    */s/ Russell Capone*
       Russell Capone

Charles Low
55 Hudson Yards
New York, New York 10001
Phone: (212) 479-6000
Email: rcapone@cooley.com
chlow@cooley.com

and

Michael Vatis
**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**
1155 Avenue of the Americas, 26th Floor
New York, New York 10036
Phone: (646) 593-7050
Email: mvatis@beneschlaw.com

*Attorneys for Plaintiff Vinci Brands LLC*