**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| VINCI BRANDS LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>COACH SERVICES, INC., KATE SPADE, LLC, TAPESTRY, INC., and CASE-MATE, INC.,<br><br>     Defendants. | Civil Action No. 1:23-cv-05138-LGS-VF |

**PLAINTIFF VINCI BRANDS LLC'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT</u>**

I. **PRELIMINARY STATEMENT**

Permitting Vinci to amend its Complaint would not be futile. The Third Amended Complaint ("TAC") plainly states plausible claims for fraud and breach of the covenant of good faith and fair dealing, as well as entitlement to punitive damages. Moreover, KSNY's crocodile tears about untimeliness and prejudice are both unfounded and hypocritical. Document productions and depositions as late as June revealed new information about Defendants' scheme, which Vinci could not have known earlier. Moreover, fact discovery is still ongoing—and the deadline was recently extended *at Defendants' request and over Vinci's objection*. In these circumstances, there is no reason to deny Vinci's motion for leave to amend.

II. **FACTUAL BACKGROUND**

For the past ten years, Vinci (formerly Incipio) manufactured Kate Spade-branded cell-phone cases and other tech accessories under the License Agreement. TAC ¶ 3. Prior to the events that gave rise to this lawsuit, Vinci met all of its financial obligations, and even overpaid KSNY due to KSNY's accounting errors and failure to properly invoice Vinci. *Id.* at ¶ 4. In December 2022, Vinci notified KSNY that, due to a severe and unforeseen shortage of iPhones due to events in China, which constituted a "Force Majeure event," Vinci's sales of phone cases had dropped precipitously and it would be unable to make certain payments. *Id.* at ¶¶ 17-19.

But despite the parties' long and mutually successful partnership, KSNY refused to honor the License Agreement's Force Majeure provision and its obligation to renegotiate Vinci's guaranteed royalties in order to help Vinci weather the storm. Instead, KSNY greedily decided to cash out the relationship and replace Vinci with its competitor, Case-Mate. *Id.* at ¶ 20.

KSNY intentionally hid its plan to replace Vinci with Case-Mate to ensure that Vinci continued to prepare for the new iPhone launch in September 2023 so that when Case-Mate stepped in and took over Vinci's supplier and customer relationships, it would be able to take

1

advantage of Vinci's work and expenditures to make the launch—which Case-Mate could not possibly have done if it had started from scratch. This secret scheme allowed Case-Mate to reap all the benefits of Vinci's preparatory work, while Vinci incurred all the costs. *Id.* at ¶¶ 20-21. At the same time, KSNY requested confidential information from Vinci under false pretenses, which it passed onto Case-Mate to help it make launch. *Id.* at ¶¶ 23.

KSNY could have added Case-Mate as a second licensee, since both licenses are non-exclusive. And it could have terminated Vinci's license if it had valid cause (which it did not). But what it could not permissibly do was secretly work with Case-Mate to help it take over Vinci's customer and supplier relationships when it terminated Vinci, while pushing Vinci to continue working toward launch so that Case-Mate and KSNY would reap the fruits of Vinci's labors.

But that is precisely what KSNY did. KSNY hid from Vinci its plan to have Case-Mate take over Vinci's prep work and its relationships with suppliers and customers, so that Vinci would continue to spend money to make launch. Had it shared the plan with Vinci, Vinci would not have continued to make the expenditures it did, since it would never benefit from them.

### III.   ARGUMENT

#### A. *The Third Amended Complaint States a Claim for Fraud.*

KSNY claims that it cannot find in the TAC any "facts supporting a duty to disclose," which is necessary to Vinci's fraud theory. Opp. at 4. But the TAC alleges clearly that KSNY had superior knowledge of material information that was not available to Vinci, and that KSNY knew that Vinci was acting on the basis of mistaken information. Vinci therefore has sufficiently alleged that KSNY had a duty to disclose that information under the "special facts" doctrine, and that it violated this duty by hiding key facts from Vinci in order to induce Vinci to undertake work, spend money, and disclose confidential information—all of which it would not have done had KSNY not hidden the truth. *See, e.g., Green v. Beer*, 2009 WL 911015, at *5 (S.D.N.Y. Mar. 31, 2009).

2

Specifically, the TAC alleges that KSNY knew it would replace Vinci with its competitor Case-Mate and use Vinci's preparatory work, customer and supplier relationships, and confidential information to benefit Case-Mate. The TAC spells out, over 65 detailed paragraphs, how KSNY kept its longtime licensing partner in the dark about its scheme in order to obtain confidential information for Case-Mate and keep Vinci working toward the launch. TAC ¶¶ 119-185.

For example, the TAC alleges that "[b]y mid-April, and unbeknownst to Vinci, the Kate Spade Defendants had effectively decided that they would pursue an agreement with Case-Mate to replace Vinci as licensee. Indeed, on April 12, 2023, Kate Spade executives Warshaw and Capiola agreed to 'move on to another [licensing] partner.'" TAC ¶ 139. Well into May and June, while Kate Spade schemed with Case-Mate and finalized the terms of its license, KSNY was simultaneously pushing Vinci to prepare for the iPhone 15 launch, and still communicating with Vinci on a "business as usual" basis. *Id.* at ¶¶ 139, 141, 143, 147.

KSNY knew that Vinci was operating on the mistaken belief that it would make sales based on the work and money it was putting into preparation for the launch. But KSNY knew that if it told Vinci about the scheme, Vinci would never devote the money and effort needed to make the launch. It therefore intentionally kept Vinci in the dark. TAC ¶¶ 137-42, 146-47.

Moreover, KSNY misled Vinci into disclosing confidential information about its launch preparations by giving it false and pretextual reasons for KSNY's requests, when in reality KSNY was intending to send, and did send, that information to Case-Mate. TAC ¶¶ 152-53, 179-84.

Courts have found similar allegations sufficient to plead claims of fraud under Rule 9(b). *See Trahan v. Lazar*, 457 F. Supp. 3d 323, 353-54 (S.D.N.Y. 2020) (finding fraud claim sufficiently pled based on allegations that defendants concealed their scheme to displace plaintiff); *Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 206 (S.D.N.Y. 2003) (finding fraud claim

3

sufficiently pled based on allegations that one party to a contract withheld critical information about its own activities, which it must have known the plaintiff would consider material).

KSNY's reliance on *First Hill Partners*, *LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625 (S.D.N.Y. 2014) is unavailing. The court there found that the plaintiff had not alleged that the defendant had knowledge of any special facts, but rather only that the defendant had failed to disclose its *intention* to make a deal directly with a third party rather than through the plaintiff. *Id.* at 638. It also found that the plaintiff had failed to allege that the defendant "made *any* statements" to the plaintiff at all. *Id.* at 639.

Here, in marked contrast, Vinci has alleged that KSNY failed to disclose not merely its intentions or opinions, but *facts* concerning KSNY's scheme and activities to replace Vinci with Case-Mate. Had Vinci known these facts, it would not have spent time and money preparing for the iPhone launch and would not have provided its confidential information to KSNY.

Vinci has also alleged specific false or misleading statements that KSNY made to Vinci. For instance, the TAC alleges that Jackee de Lagarde of KSNY falsely stated that KSNY needed Vinci's artwork files for "two new home licensees," not disclosing that in fact she had "solicited the files to fulfill Case-Mate's request for the information." TAC at ¶ 183; *see also id.* at 179, 182, 184. Similarly, the TAC alleges that KSNY repeatedly urged Vinci to submit samples to KSNY for review and to arrange for manufacturing with its suppliers, not disclosing that KSNY had already determined that Vinci would not participate in the iPhone 15 launch. *See* TAC ¶ 146. KSNY's decision to replace Vinci with Case-Mate was not a mere intention; it was a fact.[1]

---

[1] *See, e.g.*, *Green*, 2009 WL 911015, at *7 ( "Whether Defendants' statements were predictions about future events, and thus opinions, or misstatements of known facts, depends on what Defendants knew at the time they made these representations."); *Trib. Printing Co. v. 263 Ninth Ave. Realty, Inc.*, 57 N.Y.2d 1038, 1041 (1982) (present facts are involved where a party "falsely represents the declarant's state of mind and the state of his mind is a fact" (cleaned up)); *Aquino*, 632 B.R. 7 at 34 (same).

4

KSNY also argues that it did not have "any 'superior knowledge' that KSNY was going to terminate its license with Vinci," because "KSNY *did* disclose to Vinci that it was at risk of termination." Opp. at 4, 6.  But this assertion is both false and a red herring. It is false because the TAC alleges that when KSNY sent Vinci a notice of non-payment and then a notice of default, Charlotte Warshaw, Kate Spade's North America Vice President of Wholesale, Travel Retail, and Global Licensing, told Brian Stech, Vinci's then-CEO, that the notice of non-payment was "not a threat to terminate" the License Agreement. TAC ¶ 128. In fact, at that time KSNY was already well on its way to terminating the Agreement and replacing Vinci with Case-Mate, but needed to keep Vinci laboring under the mistaken belief that it would be participating in the September iPhone launch so that Vinci would continue to prepare for the launch.[2]

In any event, KSNY's argument is a red herring because the fraud claim is not based on mere fact that KSNY failed to disclose that it had decided to terminate Vinci's license, or even on its decision to add Case-Mate as a licensee (since Vinci's license was non-exclusive). Rather, Vinci's fraud claim is founded on KSNY's deception in causing Vinci to spend money and work toward an iPhone launch whose benefits would flow to Case-Mate, not Vinci.  *See* TAC ¶ 472-76.

Finally, KSNY argues that Vinci's fraud claim fails because it "rests on the faulty premise that KSNY obtained *Vinci's* confidential information."  Opp. at 7. KSNY contends that "all the information Vinci alleges that KSNY sought 'under false pretenses' is *KSNY's* confidential

---

[2] KSNY also asserts that the allegations that it knew as of April 2023 that it would terminate Vinci are untrue and conclusory. Opp. at 5. But at this stage, the facts alleged must be taken as true, and all favorable inferences drawn in favor of the plaintiff. The allegations are also not conclusory, but supported by specific facts—including about KSNY's meetings and communications with Case-Mate, its sharing of Vinci's confidential information with Case-Mate, KSNY's internal communications about moving on from Vinci, and its negotiation with Case-Mate over license terms. TAC ¶¶ 113-114, 136, 379-381. Finally, Vinci's allegations that KSNY and Case-Mate worked on a term sheet on May 2, agreed on commercial terms on May 22, and executed a license agreement on June 14 do not in any way "contradict" Vinci's allegation that KSNY knew that it would terminate Vinci earlier. Opp. at 5. These allegations simply describe the necessary steps in finalizing the specific terms of Case-Mate's license agreement. They do not at all suggest that KSNY had not already made up its mind to terminate Vinci and replace it with Case-Mate.

5

information, *not Vinci's*" and "KSNY was contractually permitted to request this information from Vinci and disseminate it, including to other potential licensees (such as Case-Mate)." *Id.* But KSNY misstates both the TAC's allegations and the terms of the License Agreement.

First, Vinci has alleged that KSNY shared information that clearly was not KSNY's intellectual property, including information about Vinci's performance as Licensee, its relationships with its suppliers and vendors, its top customers, the design *selections* those customers had made (as opposed to the designs themselves), Vinci's production process, and the status of Vinci's production work and customer orders. TAC ¶¶ 144, 181-182, 310, 412. These are not "created works of authorship" or "Merchandise IP" such as designs, sketches, packaging, advertising, or artwork," that constitute KSNY's IP. ECF 15-1, ¶¶ 14.6, 14.8.

Second, in any case, *all* of the information that KSNY obtained from Vinci and passed to Case-Mate was Vinci's Confidential Information under the terms of the License Agreement, including any information that may constitute KSNY's intellectual property. The License Agreement defines as "Confidential Information":

> all information of a business, financial and/or technical nature *imparted to the other party* during the course of this Agreement *with respect to the business of the disclosing party* and its affiliates, including without limitation the terms of this agreement, *business plans*, *designs*, sketches, materials, colors, costs, pricing, *customers*, production techniques, *sources of supply* and *other documents*, non-public information and trade secrets.

ECF 15-1, ¶ 15.1 (Emphases added.) It further states that this information

> constitute[s] the trade secrets and exclusive property *of the disclosing party* and its affiliates, and that any use by the other party of any such trade secrets and property, other than for the sole purpose of manufacturing, advertising, merchandising, promoting, selling and distributing Approved Licensed Merchandise *in accordance with the terms of this Agreement*, would be wrongful and would cause irreparable injury to the disclosing party and its affiliates.

*Id.* (Emphasis added.) Finally, the License Agreement states:

> Neither party will at any time disclose or divulge to any Person, or use or suffer the use by any other Person, for any purpose other than solely as required for the manufacturing, advertising, merchandising, promoting, selling and distributing of Approved Licensed Merchandise in accordance with the terms of this Agreement, directly or indirectly, for its own benefit or the benefit of any Person, any Confidential Information of the other party or any of its affiliates obtained from or through them.

*Id.* at ¶ 15.3. Putting aside the apparent inconsistency in the License Agreement (drafted by KSNY) concerning the ownership of certain information (which might constitute both the IP of the Licensor and, simultaneously, the Confidential Information of the Licensee), the Agreement expressly prohibits KSNY from disclosing to Case-Mate the information it obtained from Vinci.

### B. The TAC States a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

KSNY's arguments that Vinci's breach of the implied covenant of good faith and fair dealing claim is futile are easily refuted. First, a party can still be liable for breach of the covenant even when its actions are permitted by the contract. Indeed, the whole point of the covenant is to protect a party from bad faith dealing even where the contract permits the action. *See, e.g., Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302, 765 N.Y.S.2d 575, 587 (2003) (breach of covenant claim lies where plaintiffs alleged that defendant "exercised a [contractual] right malevolently, for its own gain as part of a purposeful scheme designed to deprive plaintiffs of the benefits of" an agreement); *Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc.,* 25 Misc.3d 1203(A), 2009 WL 2999201 at *6 (N.Y. Sup. Ct. 2009) ("[A] party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as part of a scheme to ... deprive the other party of the fruit of its bargain."). Even if the License Agreement had permitted KSNY to terminate Vinci (though it did not, on the facts here) and to sign a license agreement with Case-Mate, KSNY nevertheless exercised those rights malevolently, to deprive Vinci of the benefits of the Agreement.

For that same reason, it is of no moment that the License Agreement "obligated" Vinci to continue to prepare for the launch. Opp. at 9. The gravamen of this claim is that KSNY concealed from Vinci that it was going to terminate the Agreement before Vinci could derive revenue from the launch, and instead allow Vinci's competitor, Case-Mate, to collect that revenue. KSNY clearly acted in bad faith and dealt unfairly with Vinci by insisting that Vinci continue preparing for the launch and turn over confidential information at the same time it was taking steps to divert the benefits of the launch to Case-Mate.³

### C. Vinci Is Entitled to Seek Punitive Damages.

KSNY argues that it would be futile for Vinci to seek punitive damages because such damages are "unavailable" under New York law. Not so. First, as KSNY concedes (Opp. at 11), Vinci is not seeking punitive damages for its breach of contract claims, but for its tort claims. *See* ECF 414 at 16. KSNY does not dispute the black-letter principle that New York law permits punitive damages in tort cases involving "gross, wanton, or willful fraud, or other morally culpable conduct.'" *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 509 (2d Cir. 1991) (quoting *Borkowski v. Borkowski*, 39 N.Y.2d 982 (1976)). The Proposed TAC alleges just such conduct. Whether the Vinci can *prove* that KSNY's conduct is sufficiently morally culpable is a question for the jury. It is not a question that should be addressed on a motion for leave to amend.

Second, New York law does *not* require an allegation of "public harm." The decision KSNY misleadingly cites (Op. at 11, 12), *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003), does *not* hold that public harm is required. In fact, the Second Circuit there found that it "seems clear that a jury may award punitive damages in an ordinary claim for intentional interference with economic relations." *Id.* at 24. But it was not clear in 2003 whether New York law required a showing that

---

³ As for KSNY's second argument, the information KSNY obtained from Vinci to pass to Case-Mate was clearly Vinci's confidential information. *See supra* at 12-13.

the defendant's conduct was "part of a pattern directed at the public generally" in cases that involve a contract, but the tort claim does not "arise from" the contract. *Id.* at 25. The court therefore certified the question to the New York Court of Appeals. However, that court declined to answer the question, since it decided that the conduct at issue was not tortious in the first place. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189, 199 (2004). KSNY, unsurprisingly, hides this from the Court.

Since *Carvel*, however, numerous courts have held that punitive damages are permitted on tort claims without any need to show a pattern of conduct directed at the public, even if the claims arise from a contractual relationship. As this Court has held, "It is not essential that the plaintiff allege a pattern of conduct directed at the public in general to assert a claim for punitive damages." *Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 813 F.Supp.2d 489, 526 (S.D.N.Y.2011)). "'The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty.'" *Id.* (quoting *Don Buchwald & Assoc., Inc. v. Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001). In *Pure Power Boot Camp*, this Court upheld a punitive damages award on a breach of fiduciary duty claim despite the fact that the case arose from an employment agreement. *Id.* To sustain a claim for punitive damages based on a tort, a plaintiff must show only "'intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another.'" *Id.* (citation omitted).[4]

---

[4] *See also, e.g., Wrap-N-Pack, Inc. v. Kaye*, 528 F. Supp. 2d 119, 126-127 (E.D.N.Y. 2007) (awarding punitive damages on breach of fiduciary duty, unfair competition, and tortious interference claims without a pattern of conduct directed at public, despite fact that case arose from acquisition and employment agreements); *Paz Sys., Inc. v. Dakota Group Corp.*, 514 F. Supp. 2d 402, 409-410 (E.D.N.Y. 2007) (same, regarding misappropriation of trade secrets and unfair competition claims); *Vista Food Exch., Inc., v. Lawson Foods LLC*, 2022 U.S. Dist. LEXIS 46108, *27-30 (S.D.N.Y. 2022) (awarding punitive damages for tortious interference with business relation based on defendant's "willful and deliberate" conduct, where defendant deceived plaintiffs when it "created a shell corporation *specifically to evade [its] contractual obligations*," then made misleading statements to plaintiff) (emphasis added), adopted by, *VISTA Food Exch., Inc. v. Lawson Foods, LLC*, 2023 U.S. Dist. LEXIS 57793 (S.D.N.Y., Mar. 31, 2023*)*; *25 Bay Terrace Assoc., L.P. v. Public Serv. Mut. Ins. Co*, 144 A.D.3d 665, 666-68 (2d Dep't 2016) (permitting request for punitive damages on breach of implied covenant claim, where insurer refused to provide coverage under insurance policy).

### D. The Third Amended Complaint Is Timely and Will Not Prejudice KSNY.

Vinci's proposed amendment is timely. Amendments to complaints are considered timely when a party seeks to amend due to the disclosure of pertinent information during discovery. *See Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010). Here, Defendants did not begin producing documents until February 2023 (two months after Vinci filed its Second Amended Complaint), and thousands of critical documents were withheld by Defendants until June. *See, e.g.*, ECF 381, 382. Indeed, Case-Mate is *still* inappropriately redacting critical documents, despite numerous orders to compel. Moreover, fact discovery is still ongoing, with documents produced just *today*, and the fact discovery deadline was recently extended, at Defendants' request and over Vinci's objection, until September 30. And Defendants are already making noises about seeking a further extension to accommodate *their* requests for further documents and depositions.

Nor will the TAC prejudice KSNY in any way. Vinci does not anticipate the need for extensive new discovery, since the TAC is based on evidence that has already been produced. Indeed, it is Defendants that are insisting on further discovery to support *their* new claims. In any event, this Court has rejected the argument that the need for additional discovery, without more, justifies denial of leave to amend. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 99 (S.D.N.Y. 2010).

### CONCLUSION

For the foregoing reasons, and the reasons set forth in its opening brief, Vinci respectfully requests that the Court grant the Motion.

| | |
|---|---|
| Dated: August 9, 2024 | Respectfully submitted,<br><br>By: _s/Michael Vatis_<br>Michael Vatis<br>James E. von der Heydt (admitted PHV)<br>Susan M. White (admitted PHV)<br>Caroline R. Hamilton (admitted PHV)<br>**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**<br>1155 Avenue of the Americas, 26th Floor New York, NY 10036<br>Tel: 646.593.7050<br>mvatis@beneschlaw.com<br>jvonderheydt@beneschlaw.com<br>swhite@beneschlaw.com<br>chamilton@beneschlaw.com<br><br>Paul Del Aguila (admitted PHV)<br>Dickinson Wright<br>55 W. Monroe St. Suite 1200<br>Chicago, IL 60603<br>Tel: 312-641-0060<br>Pdelaguila@dickinson-wright.com<br><br>Russell Capone<br>Charles Low<br>**COOLEY LLP**<br>55 Hudson Yards<br>New York, NY 10001<br>Tel.: 212-429-6800<br>rcapone@cooley.com<br>chlow@cooley.com<br><br>_Attorneys for Vinci Brands LLC_ |