**Benesch**

Michael A. Vatis
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Direct Dial:  646.328.0494
Fax:  646.755.3397
mvatis@beneschlaw.com

August 20, 2024

**Via ECF**
Hon. Valerie Figueredo
Daniel Patrick Moynihan United States Courthouse, S.D.N.Y.
500 Pearl Street, New York, NY 10007

Re:   *Vinci Brands LLC v. Coach Services, Inc., et al*, No. 1:23-cv-05138-LGS-VF

Dear Judge Figueredo:

Plaintiff Vinci Brands LLC ("Vinci") respectfully moves the Court for an Order authorizing Vinci to serve a subpoena for documents on witness Kelly Maclean ("Maclean") by certified mail and via email.  Maclean was Vinci's Vice President of Sales and was then hired by Case-Mate contemporaneously with Case-Mate's scheme to replace Vinci as the Kate Spade licensee, and evidence shows that she unlawfully disclosed Vinci's confidential information to Case-Mate. Despite Vinci's diligence in attempting to serve Maclean nine times at two different addresses, its efforts have been unsuccessful, and there are signs that Maclean is intentionally evading.  Given Vinci's diligence and Maclean's evasiveness, an order authorizing alternative service is necessary and appropriate.

## RELEVANT FACTS

Through a search of public records, Vinci discovered two possible addresses for Ms. Maclean.  Vinci first attempted to serve Maclean on April 11, 2024 at the first address, but the process server was told that there was no one by that name living there.  (Vatis Decl., Ex. E.)  The next day, Friday, April 12, 2024, Vinci attempted to serve the subpoena on Ms. Maclean at a second address, in San Diego, CA (the "San Diego Residence"). This is the address Maclean gave under oath during her deposition.  But she did not answer the door.  On April 13, 14, 15, and 16, 2024, the process server tried again, with the same result.  (Ex. F.)

Next, Vinci hired a team to stake out the San Diego Residence.  Vinci's team spent three days attempting to serve the subpoena — April 22, 23, and 25, 2024 — for roughly three hours each.  The process servers repeatedly knocked on Maclean's door, but the woman inside would not answer after checking the peephole in the door.  (Ex. G.)  In total, Vinci attempted without success to serve the subpoena on *nine* separate dates at two different addresses, using different methods and at varying times of day.  (Ex. H.)

Case-Mate's counsel, who represented Maclean personally at her deposition, has repeatedly refused to accept service of the subpoena, arguing that Maclean's inability to "remember" possessing or delivering any Vinci information to Case-Mate puts the matter to rest.

## IMPORTANCE OF THE EVIDENCE MACLEAN IS LIKELY HOLDING

The subpoena, and information requested therein, is important because discovery to date has revealed that from March through June, 2023, Case-Mate solicited Maclean for Vinci's confidential business information, both when she was still at Vinci and after she left and then joined

Case-Mate. Many texts between a Case-Mate executive, Kristin Roney, and Maclean are referenced in communications between Roney and Case-Mate's CEO, Steve Marzio, that have been produced. But Case-Mate has not produced those texts, even though Vinci has been trying to obtain them since April.

There is no doubt that Case-Mate was unscrupulous with regard to misappropriating Vinci's information. Just four days after Vinci's license was terminated and Case-Mate signed its license with Kate Spade, Marzio and Roney schemed to encourage Maclean to bring Vinci's confidential information with her to Case-Mate. Marzio texted, ███████ ███████," and Roney replied, "███████." (Ex. A.)

Later the same day, Marzio asked his VP, ███████ ███████. Roney responded, "███████." (Ex. B (emphasis added).) This reference to ███████ strongly suggests that, ███████ Maclean was planning to bring to Case-Mate material that belonged to Vinci. Unsurprisingly, Vinci now seeks the production of information related to Vinci from Maclean's devices or any other medium — including those related to text conversations in March (Ex. D.) and an online meeting involving ███████ (Ex. C).

One of Maclean's written responses was then quoted in a Roney text to Marzio. But as crucial as the text (or other medium) exchange between Roney and Maclean was, Case-Mate has not produced it — even though Roney is a Case-Mate ESI custodian and Case-Mate claims to have provided all of Roney's relevant text messages. If Case-Mate has spoliated them, Maclean is the only source for them to become evidence in this action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45(b)(1) provides: "Serving a subpoena requires delivering a copy to the named person." Fed. R. Civ. P. 45(b)(1). The rule "does not explicitly demand personal service of a subpoena." *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 1313259, at *2 (S.D.N.Y. May 11, 2009). Accordingly, courts have consistently authorized other kinds of service, especially where, as here, a witness appears to be evading personal service and the witness' attorney refuses to facilitate service. *See Knopf v. Esposito*, No. 17CV5833(DLC), 2020 WL 6589593, at *2 (S.D.N.Y. Nov. 11, 2020) (authorizing alternative service of a deposition subpoena after three attempts in person, where the witness's attorney refused to facilitate service.). The Court may authorize alternative service that is reasonably designed to ensure that a witness actually receives a subpoena. *Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *3 (S.D.N.Y. Oct. 11, 2016). Indeed, email service has been held adequate where "personal service was previously attempted and where the witness [was] aware of the service attempt." *Gov't Emps. Ins. Co. v. Kalitenko*, No. 22-CV-3804 (ARR), 2022 WL 16798219, at *1 (E.D.N.Y. Nov. 8, 2022) (citing *Knopf*, 2020 WL 6589593, at *2).

In other contexts, courts have adopted a "reasonable diligence" standard to determine whether it is appropriate to allow alternative service. *See, e.g.*, *Kyjen Co., LLC v. Individuals, Corps., Ltd. Liab. Cos., Pships, & Unincorporated Ass'ns. Identified on Schedule A to Complaint*,

No. 23 CIV. 612 (JHR), 2023 WL 2330429, at *1 (S.D.N.Y. Mar. 2, 2023). This Court recently authorized email service on two defendants based on an attestation that they "could not be contacted via an in-person visit (e.g., no one answered the door)." *Id.* at *3.

In similar cases, this Court has authorized alternative service of a subpoena after an amount of effort far less than the *nine* attempts and three stakeouts Vinci has carried out here. *E.g., See QED, LLC v. Faber Daeufer & Itrato, P.C.*, No. 20 Civ. 2767, 2020 WL 5642256, at *2 (S.D.N.Y. Sept. 22, 2020) (authorizing substituted service after three failed attempts at personal service); *Ultradent Prods., Inc. v. Hayman*, No. M8-85 RPP, 2002 WL 31119425, at *1 (S.D.N.Y. Sept. 24, 2002) (same, after two attempts); *Kalitenko*, 2022 WL 16798219, at *1 (same, after one attempt). Accordingly, Vinci requests that this Court authorize Vinci to serve a subpoena for documents on Kelly Maclean by certified mail, with a copy sent to her via email.

## **ARGUMENT**

The Maclean documents are vital to understanding the central events in this case, including Case-Mate's misappropriation of Vinci's confidential information and interference with its business relationships. As laid out above, upon learning that MacLean would be separating from Vinci, and while she was still employed by Vinci, Case-Mate's Vice President of Business Development sought her out and, for months, mined her for Vinci's confidential information relating to Vinci's distribution and sale of Kate Spade branded mobile phone accessories. Case-Mate hired MacLean for the same or similar job responsibilities she had at Vinci. Not surprisingly, MacLean was hired to work with the same customers she had worked with at Vinci (Maclean Dep. Tr. 62:12-25, 63: 1-13).

In short, although she has testified that she does not "remember" any misconduct, Maclean is highly likely to have relevant documents and communications regarding Vinci's claims against Case-Mate, including, but not limited to, claims for breach of confidentiality agreements and tortious interference. Vinci has made extraordinary and expensive efforts to serve the subpoena on Maclean personally, even going so far as to hire process servers to stakeout Ms. Maclean's current home address. Courts have ordered substituted service of subpoenas after fewer attempts. *See Ultradent Prods., Inc.*, 2002 WL 31119425, at *4.

Unless the Court allows Vinci to serve its subpoena via certified mail and email, it is unlikely that Vinci will be able to obtain the documents in Maclean's possession that are critical to adjudicating the issues in this case. At a minimum, since Case-Mate has not produced its end of the Roney/Maclean communications or has spoliated them, they must be found elsewhere. Accordingly, Vinci requests that the Court enter an order authorizing Vinci to serve the subpoena on Kelly Maclean via certified mail and via email.

Sincerely,

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

*/s/ Michael A. Vatis*
Michael A. Vatis