**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

VINCI BRANDS LLC,

Plaintiff,

**23-cv-5138 (LGS) (VF)**

-against-

<u>OPINION</u>

COACH SERVICES, INC. et al,

Defendants.
-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Plaintiff Vinci Brands LLC ("Vinci") commenced this action on June 16, 2023, against Coach Services, Inc., Kate Spade, LLC, and Tapestry, Inc. (collectively, "Kate Spade"), seeking damages and injunctive relief for breach of contract. Since commencement of this action, Vinci has amended its complaint twice, adding Case-Mate, Inc. ("Case-Mate," and together with Kate Spade, the "Defendants") as a defendant and asserting additional claims against Kate Spade. Presently before the Court is Vinci's motion for leave to file a Third Amended Complaint. <u>See</u> ECF Nos. 413-414, 444, 447, 455, 460. For the reasons stated herein, the motion for leave to amend is **GRANTED**.

<u>BACKGROUND</u>[1]

This dispute arises out of the termination of Vinci's license agreement with Kate Spade, which authorized Vinci to produce and deliver Kate Spade-branded protective technology cases and mobile accessories. <u>See</u> ECF No. 415-1 (the "Third Amended Complaint" or "TAC") ¶¶ 1,

---

[1] The Court presumes the parties' familiarity with the relevant factual and procedural background of this case, which is detailed in Opinion and Order of the Honorable Lorna G. Schofield on the parties' cross-motions for a preliminary injunction. <u>See</u> ECF No. 149. The background information recounted herein is limited to that which is relevant to the instant motion.

3. On November 3, 2023, Vinci filed its Second Amended Complaint, which is the current operative complaint. See ECF No. 198.

In the Second Amended Complaint, Vinci alleges that Kate Spade breached its obligations under the license agreement and improperly terminated the license agreement. See ECF No. 198 ¶¶ 1, 211-47. Vinci also alleges that Kate Spade aided and abetted Case-Mate's breach of fiduciary duty. Id. ¶¶ 283-86. With respect to Case-Mate, Vinci alleges that Case-Mate violated its confidentiality agreements with Vinci; violated the covenant of good faith and fair dealing in its role as Vinci's lender; engaged in unfair competition with Vinci; violated its fiduciary duty to Vinci as Vinci's lender; and tortiously interfered with Vinci's license agreement with Kate Spade. Id. ¶¶ 248-82, 287-96. Vinci also alleges that Defendants tortiously interfered with Vinci's existing contracts and prospective business relationships with its suppliers and customers. Id. ¶¶ 297-335.

Vinci now seeks to amend its complaint to add factual allegations to bolster its existing claims, to assert additional claims, and to add a request for punitive damages. Vinci seeks to add state-law claims of fraud against Kate Spade and Case-Mate (see TAC ¶¶ 464-79); breach of the covenant of good faith and fair dealing against Kate Spade (id. ¶¶ 480-87); and civil conspiracy against Case-Mate (id. ¶¶ 488-91).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 15 provides that leave to amend before trial should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard, although liberal, allows motions for leave to amend to be denied where the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of

2

amendment, etc." See Foman v. Davis, 371 U.S. 178, 182 (1962); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (stating that "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). "Mere delay," without a showing of bad faith or prejudice, is not itself sufficient to justify denial of a motion under Rule 15(a). Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000) (Sotomayor, J.); Primetime 24 Joint Venture v. DirecTV, Inc., No. 99 Civ. 3307 (RMB) (MHD), 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000). "It is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

It is well established that '[l]eave to amend need not be granted . . . where the proposed amendment would be futil[e].'" Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997)) (alterations in original). Proposed amendments are futile if they would fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015). "Accordingly, the proposed amendment must be viewed in the light most favorable to the party moving to amend . . . and leave to amend should only be denied if the moving party can prove no set of facts which would entitle [it] to relief." Presser v. Key Food Stores Coop., Inc., 218 F.R.D. 53, 56 (E.D.N.Y. 2003); see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91-92 (2d Cir. 2002) (reversing district court's denial of amendment as futile because, although defendants "vigorously dispute[d]" plaintiff's version of events, "proposed amended complaint adequately set[ ] forth specific facts, which if proven, c[ould] support a

finding of [defendant's liability]") abrogated on other grounds by Knick v. Township of Scott, Pa., 588 U.S. 180 (2019).

Under the scheduling order, Vinci's deadline to file a Third Amended Complaint was July 3, 2024. See ECF No. 408. Vinci filed the instant motion on July 3, 2024. See ECF Nos. 413-415. Because Vinci timely filed its motion for leave to amend, the motion does not implicate the good-cause standard in Rule 16 and is analyzed solely under Rule 15. See Fed. R. Civ. P. 16(b)(4); Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) ("Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied 'where the moving party failed to establish good cause.'") (quoting Parker, 204 F.3d at 340).

## DISCUSSION

Under Rule 15(a)'s liberal standard, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). None of those factors are present here.

A. Undue Prejudice

Prejudice to the opposing party has been described as the "most important reason for denying a motion to amend." Frenkel v. N.Y.C. Off-Track Betting Corp., 611 F. Supp. 2d 391, 394 (S.D.N.Y. 2009) (internal quotation marks and citations omitted). However, "prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is *undue* prejudice to the opposing party." A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal quotation marks and citations omitted) (emphasis in original). To determine whether the proposed amendment will cause undue prejudice, courts "generally

consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993)). Central to this determination is whether the new claims arise from the existing ones and whether a party had prior notice of a new claim. See Blagman v. Apple, Inc., No. 12 Civ. 5453 (ALC) (JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014). As the Second Circuit has explained, a court "will be most hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." Monahan, 214 F.3d at 284.

Kate Spade argues that it will be unduly prejudiced if leave to amend were granted because Vinci is introducing a new theory of liability in its fraud claim at a point when the parties "have already produced over 60,000 documents and taken twenty-eight depositions." See ECF No. 444, at 14. Case-Mate does not raise a prejudice argument. Kate Spade "bears the burden of demonstrating that substantial prejudice would result were the proposed amendment to be granted." Agerbrink, 155 F. Supp. 3d at 454 (internal quotation marks and citations omitted); see also Oneida Indian Nation of N.Y. v. Cnty. of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice). Kate Spade has not met that burden here.

In arguing that an amendment would be unduly prejudicial, Kate Spade focuses entirely on the cost and time of conducting additional discovery on new claims that have not been the subject of any discovery. See ECF No. 444, at 14. Even if the addition of Vinci's fraud claim necessitates additional discovery, Kate Spade's "burden of undertaking discovery, standing

5

alone, does not suffice to warrant denial of a motion to amend a pleading." A.V. by Versace, Inc., 87 F. Supp. 2d at 299 (quoting United States v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989)); Konig v. TransUnion, LLC, No. 18 Civ. 7299 (JCM), 2020 WL 550285, at *4 (S.D.N.Y. Feb. 4, 2020) (explaining that a need for new discovery does not constitute undue prejudice on its own); see also Primetime 24 Joint Venture, 2000 WL 426396, at *5 ("The caselaw indicates that the additional expenditure of time or resources or the delay produced must indeed be significant to justify denying a party's request to amend its pleadings."). Further, although Kate Spade contends that allowing the amendment will be "extremely burdensome," see ECF No. 444, at 14, it has not articulated a specific justification for that conclusory assertion. It is not apparent that permitting amendment would result in significant additional discovery because the fraud claim is premised on the same factual allegations underlying Vinci's breach-of-contract and tortious-interference claims, of which the parties have long been aware.

Moreover, allowing the proposed amendments will not result in a "significant[] delay [of] the resolution of the dispute." Monahan, 214 F.3d at 284 (2d Cir. 2000) (internal quotation marks and citation omitted). The parties are still in the midst of fact discovery, the deadline for which is not until January 31, 2025. There is sufficient time for the parties to conduct whatever additional discovery, if any, is needed related to Vinci's new claims. See Ballast v. Workforce7 Inc., No. 20 Civ. 3812 (ER), 2023 WL 3301839, at *7 (S.D.N.Y. May 8, 2023) (holding that no prejudice would result if plaintiff was granted leave to amend where "discovery remain[ed] ongoing."); see also Pereira for Estate of Capala v. Capala, No. 17 Civ. 3434 (ILG), 2018 WL 4259982, at *3 (E.D.N.Y. Sept. 6, 2018) (allowing leave to amend answer because "discovery is ongoing, no

trial date has been set, and plaintiff identifies no duplication of effort that would be required if amendment is permitted").

B.  Undue Delay

Kate Spade contends that Vinci has unduly delayed in seeking to amend its complaint and has not pointed to any "new evidence" that prompted the amendment. See ECF No. 444, at 12-13. But Kate Spade cites no authority for the proposition that Vinci must point to the existence of "new evidence" to support its request to amend the complaint. In fact, a party moving to amend the pleadings "need not prove that they uncovered new facts . . . in order for this Court to grant leave to amend." Affiliated FM Ins. Co. v. Liberty Mech. Contracts, Inc., No. 12 Civ. 5160 (KPF), 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (granting motion to amend answer where "Defendants ha[d] not set forth any facts or law that was not available at the time their Answer was filed"). In the cases on which Kate Spade relies, the movant provided *no* explanation for the delay or no explanation beyond ignorance of the law. See, e.g., Park B. Smith, Inc. v. CHF Indus. Inc., 811 F. Supp. 2d 766, 780 (S.D.N.Y. 2011) ("PBS Inc. has offered no explanation for its delay in adding Walmart as a defendant."); Sanders v. Thrall Car Mfg. Co., 582 F. Supp. 945, 952 (S.D.N.Y. 1983) ("The only explanation counsel for plaintiff offers . . . is ignorance of the statute."); Goss v. Revlon, Inc., 548 F.2d 405, 407 (2d Cir. 1976) (holding that it would not be an abuse of discretion for district court to deny leave to amend where plaintiff offers "no reason for his extended and undue delay, other than ignorance of the law"). By contrast, Vinci explains (see ECF No. 414, at 4-5) that it is seeking to amend its allegations because of "newly discovered facts" derived from documents produced by Defendants as recently as June 2024. See Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 97 (S.D.N.Y.

2010) (explaining that "even vague or 'thin' reasons are sufficient [to excuse delay] in the absence of prejudice or bad faith").

Further, Vinci did not seek to amend its complaint on the eve of trial. See Duling, 265 F.R.D. at 97 (noting that courts "have found suspect" delays where moving party waits "until the eve of trial" to seek amendment). Although "[d]elay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend," Konig, 2020 WL 550285, at *2, this is not a case of "inordinate delay" with "no satisfactory explanation," Duling, 265 F.R.D. at 97 (internal quotation marks and citations omitted).

In short, Defendants have not shown undue prejudice if leave to amend were granted. And Defendants make no argument that Vinci acted in bad faith in seeking to amend its complaint when it did. There thus is no basis to deny Vinci's motion for leave to amend based on undue delay or undue prejudice.

    C.  Futility

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss." Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Lotes Co. v. Hon Hai Precision Indus. Co., 753

F.3d 395, 403 (2d Cir. 2014) (quoting Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106,

108 (2d Cir. 2010)) (internal quotation marks omitted).

As an initial matter, Case-Mate argues that Vinci's proposed Third Amended Complaint

"cannot cure the deficiencies or shortcomings of [the] claims [in the Second Amended

Complaint] to avoid dismissal." ECF No. 447, at 21. To be sure, "repeated failure to cure

deficiencies by amendments previously allowed" is another basis for denying leave to amend.

Foman, 371 U.S. at 230. But here, "there has been no previous failure to cure deficiencies since

the Court has yet to rule on the sufficiency of the complaint." Abessinio v. Ernst & Young, LLP,

No. 06 Civ. 2777 (LTS) (FM), 2007 WL 9812740, at *1 (S.D.N.Y. 2007); see also ECF No. 419

(denying Case-Mate's motion to dismiss the Second Amended Complaint without prejudice for

renewal pending the outcome of Vinci's present motion).

1. *Count 15: Vinci's fraud claim against Case-Mate*

In the proposed Third Amended Complaint, Vinci seeks to add a state-law claim of fraud

against Case-Mate. See TAC ¶¶ 464-70. Vinci alleges that Case-Mate committed fraud by

inducing Vinci to enter into confidentiality agreements under the false guise that Case-Mate

intended to acquire Vinci, but in reality, Case-Mate sought to obtain and misappropriate Vinci's

confidential information in order to replace Vinci as the Kate Spade licensee. Id. ¶¶ 168, 171-77,

465-66. Case-Mate argues that Vinci's fraud claim is futile for two reasons: Case-Mate did not

have a duty under its confidentiality agreement with Vinci to disclose its negotiations with Kate

Spade, and the fraud claim is duplicative of Vinci's breach-of-contract claim. See ECF No. 447,

at 14-19.

Under New York law, the elements of fraud are: "(1) a misrepresentation or a material

omission of fact which was false and known to be false by defendant, (2) made for the purpose

of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the

misrepresentation or material omission, and (4) injury." Sawabeh Info. Servs. Co. v. Brody, 832

F. Supp. 2d 280, 297 (S.D.N.Y. 2011) (quoting Premium Mortg. Corp. v. Equifax, Inc., 583 F.

3d 103, 108 (2d Cir. 2009)) (internal quotation marks omitted).[2] Common law fraud claims are

subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil

Procedure, and a plaintiff alleging fraud "must state with particularity the circumstances

constituting fraud." Fed. R. Civ. P. 9(b). "Specifically, Rule 9(b) requires plaintiffs to allege 'the

specific statement or omission; (2) the aspect of the statement or omission that makes it false or

misleading; (3) when the statement was made; (4) where the statement was made; and (5) which

defendant was responsible for the statement or omission.'" Odyssey Re (London) Ltd. v. Stirling

Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (quoting Lobatto v.

Berney, No. 98 Civ. 1984 (SWK), 1999 WL 672994, at *9 (S.D.N.Y. Aug. 26, 1999)).

For an omission to constitute a false representation for purposes of a fraud claim, the

"plaintiff must allege facts giving rise to a duty to disclose." Odyssey Re (London) Ltd., 85 F.

Supp. 2d at 296. "Absent a fiduciary relationship between the parties, a duty to disclose arises

only under the 'special facts' doctrine." Jana L. v. W. 129th St. Realty Corp., 22 A.D.3d 274,

277 (1st Dep't 2005). To adequately plead application of the special facts doctrine, a plaintiff

must allege that "one party possesses superior knowledge, not readily available to the other, and

knows that the other is acting on the basis of mistaken knowledge." First Hill Partners, LLC v.

---

[2] Fraud claims based on a theory of fraudulent inducement require the same elements. See Wild Bunch, SA v. Vendian Entertainment, LLC, No. 17 Civ. 1383 (JSR), 2018 WL 1365690, at *3 n.1 (S.D.N.Y. Feb. 26, 2018) ("Generally, to establish a fraudulent inducement claim, a plaintiff must prove (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.") (internal quotation marks and citation omitted).

BlueCrest Cap. Mgmt., 52 F. Supp. 3d 625, 637 (S.D.N.Y. 2014) (quoting Aetna Cas. & Sur. Co.
v. Aniero Concrete Co., 404 F.3d 566, 582 (2d Cir. 2005)).

Vinci contends that Case-Mate had a duty to disclose its negotiations with Kate Spade
under the special facts doctrine. See ECF No. 455, at 6-7. Vinci has alleged sufficient facts to
support a plausible inference that the special facts doctrine applies. As alleged, Case-Mate alone
knew that it would replace Vinci as the Kate Spade licensee in 2023. TAC ¶¶ 151, 154, 466-67.
The discussions between Case-Mate and Kate Spade about replacing Vinci as the licensee began
in March or April 2023—before Vinci and Case-Mate entered into the second confidentiality
agreement—and continued through May, when Kate Spade confirmed to Case-Mate that it
would be the new licensee. Id. ¶¶ 136-37, 139-40, 143-44, 148-50, 154, 168. Meanwhile, Vinci
could not have known that it was being replaced because Kate Spade continued communicating
with Vinci as if it were "business as usual," with Kate Spade and Vinci "fully collaborating on
the designs and tools for the upcoming iPhone 15 launch scheduled for September 2023," and
Vinci attempting to make royalty payments to Kate Spade under the license agreement. Id.
¶¶ 137-38, 141-42, 146-47, 151-52. Moreover, Vinci alleges that the process of preparing for a
new iPhone launch takes many months and Case-Mate, who had only signed its license
agreement with Kate Spade in June 2023, had to prepare for the new iPhone launch in September
2023, just three months later. Id. ¶¶ 155-56, 158. To address this "problem," Vinci alleges that
Case-Mate, under the guise of purchasing part of Vinci's business, obtained "critical due
diligence" from Vinci, such as its product costs, customer lists, supplier information, and
inventory on hand, in order to prepare for the iPhone launch. Id. ¶¶ 159-185. Finally, Vinci
alleges that it would not have entered into the confidentiality agreements with Case-Mate had it

known that Case-Mate was negotiating a license agreement with Kate Spade and preparing for the September iPhone launch. Id. ¶¶ 466-68.

Where, as here, a plaintiff alleges that it took actions on the basis of mistaken knowledge and the defendant had superior knowledge, courts have held that the special facts doctrine was adequately pled. See e.g., Madison Apparel Grp. v. Hachette Filipacchi Presse, S.A., 52 A.D.3d 385, 385 (1st Dep't 2008) (reinstating previously dismissed cause of action and applying special facts doctrine where "[t]he complaint allege[d] that defendants had peculiar and superior knowledge of their ongoing negotiations with a third-party licensee, that plaintiff was unable to discern such . . . , and that defendants were aware that plaintiff sought to terminate the parties' agreement at least in part due to its lack of knowledge about the negotiations"); Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd., 345 F. Supp. 3d 515, 526-27 (S.D.N.Y. 2018) (holding that special facts doctrine applied where complaint alleged a "deceptive scheme" on which plaintiffs relied and acted "on the basis of mistaken knowledge"). Vinci has therefore sufficiently pled application of the special facts doctrine, and contrary to Case-Mate's argument, Vinci's fraud claim is not futile for failing to allege a duty to disclose.

Next, Case-Mate argues that Vinci's fraud claim is duplicative of its breach-of-contract claim. ECF No. 447, at 15-19. This argument fails because a fraud claim that is premised on a misrepresentation which induced the plaintiff to enter into the contract is collateral to a breach-of-contract claim. See Pentacon BV v. Vanderhaegan, -- F. Supp. 3d --, 2024 WL 1255992, at *13 (S.D.N.Y. Mar. 25, 2024) (holding that misrepresentation about value of company, which induced plaintiff to enter into contract, was "precisely the kind of 'misrepresentation of a present fact' that is collateral to . . . a contract"); see also BJB Ltd. v. iStar Jewelry LLC, 533 F. Supp. 3d 83, 103 (E.D.N.Y. 2021) (finding that both fraud and breach-of-contract claims survived motion

to dismiss where "present facts . . . were collateral to the underlying contractual obligation"). Vinci has plausibly alleged that Case-Mate made misrepresentations of present fact leading up to execution of the second confidentiality agreement with Vinci. For example, in April 2023, Case-Mate represented to Vinci that it was again interested in purchasing Vinci. TAC ¶¶ 167-68. But by that point, Case-Mate was already in talks with Kate Spade to replace Vinci as Kate Spade's licensee. Id. ¶¶ 172, 466. And nearly immediately after entering into the second confidentiality agreement with Vinci, Case-Mate allegedly used Vinci's confidential information to leverage its negotiations with Kate Spade. Id. ¶¶ 173, 175-77.

As alleged in the Third Amended Complaint, Vinci's fraud claim is premised on a theory of fraudulent inducement, whereby Case-Mate fraudulently induced Vinci to enter into the second confidentiality agreement. The claim is therefore collateral to—and not duplicative of— Vinci's breach-of-contract claim. Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F. 3d 171, 184 (2d Cir.2007) ("A claim based on fraudulent inducement of a contract is separate and distinct from a breach-of-contract claim under New York law."); Wild Bunch, SA v. Vendian Entertainment, LLC, 256 F. Supp. 3d 497, 506 (S.D.N.Y. 2017) (holding that "pre-contractual misrepresentations of present fact" were "collateral or extraneous" to the contracts). However, to the extent Vinci's fraud claim relies on the first confidentiality agreement with Case-Mate (see TAC ¶ 160), there are no facts alleged in the Third Amended Complaint to support a theory of fraudulent inducement. As such, any fraud claim based on that first confidentiality agreement would be futile. See Student Advantage Fund I LLC v. Kennedy Lewis Mgmt. LP, No. 19 Civ. 2401 (PKC), 2019 WL 6117586, at *2 (S.D.N.Y. Nov. 18, 2019) (dismissing fraud claim as duplicative of breach-of-contract claim where the "[c]omplaint [did] not identify a duty that

[was] separate from what the [contract] require[d] and [did] not allege compensatory damages that [we]re distinct" from the breach-of-contract claim).

    2.  *Count 16: Vinci's fraud claim against Kate Spade*

    In the proposed Third Amended Complaint, Vinci seeks to add a state-law claim of fraud against Kate Spade. See TAC ¶¶ 471-79. Vinci alleges that Kate Spade fraudulently induced Vinci to prepare for the fall 2023 iPhone launch despite knowing that it would not continue with Vinci as its licensee and obtained confidential information from Vinci under false pretenses, so that it could provide that information to Case-Mate. Id. ¶ 472. Kate Spade argues that Vinci has failed to state a fraud claim. As to the theory premised on Kate Spade's failure to disclose its intent to terminate the license agreement, Kate Spade contends that Vinci has not alleged that Kate Spade had a duty to disclose, either because it was a fiduciary or had superior knowledge. See ECF No. 444, at 4-6. And as to the theory that Kate Spade fraudulently obtained confidential information from Vinci, Kate Spade argues that the claim fails because the confidential information Vinci points to belonged to Kate Spade. See ECF No. 444, at 7.

    Contrary to Kate Spade's argument, Vinci has alleged sufficient facts to plausibly state a claim for fraud based on the special facts doctrine. Vinci plausibly alleges that Kate Spade knew "that it would not continue with Vinci as a licensee" and that "Kate Spade . . . knew that Vinci was unaware of Kate Spade's intent to move on from Vinci." TAC ¶¶ 472, 475. For example, Vinci alleges that by early April, Kate Spade and Case-Mate were engaged in formal discussions about replacing Vinci as Kate Spade's licensee (id. ¶ 137); that on April 12, 2023, Charlotte Warshaw, the North America Vice President of Wholesale, Travel Retail, and Global Licensing for Kate Spade, and Jim Capiola, the Chief Financial Officer for Kate Spade, had agreed to "move on to another [licensing] partner" (id. ¶ 139); and that on April 13, Jackee de Lagarde,

Kate Spade's Vice President of Global Licensing, "sent Case-Mate an email with the key information Case-Mate needed to start preparing to take over for Vinci" (id. ¶ 141). Vinci further plausibly alleges that it had no way of knowing about Case-Mate's impending licensing agreement with Kate Spade, because "Kate Spade continued to push Vinci to be prepared for the iPhone 15 launch" through May and early June, even after a term sheet was sent to Case-Mate. Id. ¶¶ 141, 143, 146, 151 473, 475.  Finally, Vinci alleges that it acted on the basis of its mistaken knowledge: "Vinci was preparing for the launch and relying on Kate Spade's requests, recommendations and representations" and "had Vinci known the information it provided to Kate Spade would be given to Case-Mate to enable it to benefit from Vinci's preparations, Vinci would not have provided the information." Id. ¶¶ 141-42, 146, 151, 475-76; see also id. ¶¶ 21 ("Kate Spade . . . encourage[ed] Vinci to complete all of the design, tooling, and manufacturing work . . . [and] Vinci was willing to and did perform all of the necessary groundwork for the launch"); 22 (Vinci "expended significant financial resources producing iPhone cases for a launch it would never reap benefit from"); 258 ("Vinci . . . la[id] all of the groundwork to prepare, produce, and market the relevant iPhone cases to customers for the launch.").

Kate Spade argues that it did not have any superior knowledge vis-à-vis Vinci of the impending termination of the license agreement because Kate Spade sent Vinci notices of non-payment. See ECF No. 444, at 6. But the Third Amended Complaint alleges that the notice of non-payment from Kate Spade was accompanied by assurances that the notice was not "a threat to terminate" the license agreement. See TAC ¶ 128. Vinci has plausibly alleged that it was

acting under the mistaken assumption that, despite the notices of non-payment and default, the

license agreement was not in threat of termination.

In sum, because Vinci has plausibly alleged a fraud claim against Kate Spade, the

amendment is not futile.

3. *Count 17: Vinci's claim against Kate Spade for breach of the covenant of good faith and fair dealing*

In Count 17 of the proposed Third Amended Complaint, Vinci claims that Kate Spade

breached the implied covenant of good faith and fair dealing by depriving Vinci of its bargained-

for rights under the license agreement. TAC ¶¶ 480-87. Kate Spade argues that Vinci's claim is

futile for two reasons. First, Kate Spade contends that the conduct purportedly underlying this

claim was permitted by the parties' agreement. ECF No. 444, at 8. And second, Kate Spade

argues that the claim is duplicative of Vinci's breach-of-contract claims. Id.

Under New York law, the covenant of good faith and fair dealing is implied in every

contract and "encompasses any promises that a reasonable promisee would understand to be

included." Spinelli v. Nat'l Football League, 903 F.3d 185, 205 (2d Cir. 2018). "The implied

covenant of good faith and fair dealing is a pledge that neither party to the contract shall do

anything which will have the effect of destroying or injuring the right of the other party to

receive the fruit of the contract, even if the terms of the contract do not explicitly prohibit such

conduct." East Ramapo Central Sch. Dist. v. N.Y. Schs. Ins. Reciprocal, 199 A.D.3d 881, 884

(2d Dep't 2021) (internal quotation marks and citation omitted). Stated otherwise, a party

breaches the implied covenant of good faith and fair dealing when it exercises a right under a

contract "malevolently, for its own gain as part of a purposeful scheme designed to deprive" the

other party "of the benefits" of the agreement. Richbell Info. Servs. v. Jupiter Partners, L.P., 309

A.D.2d 288, 302 (1st Dep't 2003).

Vinci sufficiently alleges that Kate Spade deprived Vinci of the benefits of the License Agreement when Kate Spade terminated the Agreement and interfered with Vinci's continued right to sell Kate Spade branded products. TAC ¶ 138. Under the License Agreement, Vinci had post-termination rights to complete production of merchandise that was in process or had been ordered in writing from customers as of the termination date, and to sell merchandise to customers that had placed orders as of the termination date. Id. ¶ 237. Kate Spade, however, interfered with those rights, depriving Vinci of the License Agreement's benefits, when, for example, Kate Spade, in concert with Case-Mate, "pressure[ed] Vinci's suppliers to stop their production and [Vinci's] customers to cancel their orders" and instead place orders through Case-Mate. Id. ¶¶ 262-75. Vinci alleges several specific instances where Kate Spade communicated with Vinci's suppliers and customers to prevent Vinci from benefitting from its ability under the License Agreement to sell merchandise pursuant to existing orders or to complete production of in-process merchandise, even post-termination. See, e.g., id. ¶¶ 266 (alleging that Kate Spade executives emailed Vinci's customers as recently as January 24, 2024); 269 (alleging that one of Vinci's customers cancelled an order after Kate Spade and Case-Mate "interfere[ed]"); 271 (alleging that an order from a different Vinci customer was cancelled "as a result of the interfering actions by Defendants"). Even if Kate Spade had the contractual right to terminate the License Agreement, Vinci plausibly alleges that Kate Spade acted in bad faith by "colluding" with "Case-Mate to have Case-Mate replace Vinci as the Kate Spade licensee for tech accessories" and preventing Vinci from completing in-process production and selling merchandise under existing orders, as it claims it was permitted to do post-termination. Id. ¶ 20.

These allegations plausibly allege a claim for breach of the implied covenant of good faith and fair dealing, even though, as Kate Spade argues, Kate Spade was "exercis[ing ] rights

afforded to [Kate Spade] under their contract." ECF No. 444, at 8; see Richbell Info. Servs., 309 A.D.2d at (1st Dep't 2003) (finding breach of covenant of good faith claim viable where defendant exercised a right afforded under the contract malevolently); Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 41 A.D.3d 269, 270 (1st Dep't 2007) (affirming denial of summary judgment on claim for breach of the implied covenant of good faith and fair dealing where plaintiffs raised a triable issue of fact as to whether defendant exercised a contractual right "in bad faith"); Duration Mun. Fund, L.P. v. J.P. Morgan Sec. Inc., 899 N.Y.S.2d 59, 2009 WL 2999201, at *5 (N.Y. Sup. Ct. 2009), aff'd, 908 N.Y.S.2d 684 (N.Y. 2010) ("New York courts have repeatedly affirmed that a party may be in breach of an implied duty of good faith and fair dealing, even if it is not in breach of its express contractual obligations, when it exercises a contractual right as part of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain.").

Turning to Kate Spade's argument that the claim is duplicative, it is premature at this juncture to deem Vinci's claim duplicative of its breach-of-contract claims. New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach-of-contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Where, however, the meaning of a contract's terms are in dispute, a claim for breach of the covenant of good faith and fair dealing can be pled in the alternative alongside a breach-of-contract claim predicated on the same facts. See Spinelli, 903 F.3d at 206 ("[W]here, as here, there is a dispute over the meaning of the contract's express terms, there is no reason to bar a plaintiff from pursuing both types of claims in the alternative."). To the extent Kate Spade argues that the conduct it engaged in was permitted under the license agreement (either because it was authorized to terminate the license

or the information it disclosed to Case-Mate was not Vinci's confidential information), the parties dispute the meaning of the relevant provisions in the agreement. Accordingly, because Vinci disputes that Kate Spade validly terminated the agreement, it is premature to conclude that Vinci's claim alleging a breach of the covenant of good faith and fair dealing is duplicative of its breach-of-contract claims.

### 4. Count 18: Vinci's civil conspiracy claim against Case-Mate

In Count 18 of the proposed Third Amended Complaint, Vinci asserts a civil conspiracy claim against Case-Mate. TAC ¶¶ 488-91. Case-Mate argues that Vinci's civil conspiracy claim fails because the complaint does not plausibly plead the existence of an agreement between Case-Mate and Kate Spade. See ECF No. 447, at 19-20.

Under New York law, civil conspiracy is a derivative claim, requiring a plaintiff to allege an underlying tort. Sepenuk v. Marshall, No. 98 Civ. 1569 (RCC), 2000 WL 1808977, at *6 (S.D.N.Y. Dec. 8, 2000) ("If an underlying, actionable tort is established, . . . plaintiff may plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme.") "To establish a claim of civil conspiracy, the plaintiffs must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., No. 15 Civ. 4244 (JGK), 2017 WL 933103, at *4 (S.D.N.Y. Mar. 8, 2017) (internal quotation marks and citation omitted). "Rule 9(b) only applies to fraud or mistake, not to conspiracy," and "the more liberal requirements of Rule 8(a)" apply to a conspiracy claim. Hecht v. Com. Clearing House, Inc., 897 F.2d 21, 26 n.4 (2d Cir. 1994). "While predicate acts of fraud must be alleged with particularity . . . , conspiracy may be pled

under a less stringent standard of particularity." Mirman v. Berk & Michaels, P.C., No. 91 Civ. 8606 (JFK), 1994 WL 410881, at *8 (S.D.N.Y. Aug. 3, 1994).

First, Vinci has plausibly alleged an underlying tort of fraud committed by Kate Spade and Case-Mate. See TAC at ¶¶ 464-79. Second, and contrary to Case-Mate's argument, Vinci has adequately alleged an agreement between Kate Spade and Case-Mate. As discussed, numerous allegations in the complaint collectively support the plausible inference that Case-Mate and Kate Spade colluded to replace Vinci as the licensee. See supra Section C.1 and C.2. Vinci has therefore adequately pled that "Case-Mate conspired with the Kate Spade Defendants to secretly replace Vinci" and that "Case-Mate . . . agreed to hide this plan from Vinci," TAC ¶¶ 489-90. See Raine v. Lorimar Prods., Inc., 71 B.R. 450, 452, 455 (S.D.N.Y. 1987) (holding plaintiff sufficiently alleged an agreement where plaintiff offered "circumstantial evidence," such as evidence "that many of [co-conspirator's] former employees have now become important executives at [other co-conspirator entity]").

Further, Vinci alleges several overt acts. For example, Case-Mate obtained launch-related information directly from Vinci under false pretenses; Case-Mate requested that Kate Spade obtain confidential information from Vinci in order to facilitate Case-Mate replacing Vinci as the Kate Spade licensee; and Case-Mate misappropriated Vinci's confidential information to prepare for the iPhone 15 launch. See, e.g., TAC ¶¶ 172, 178, 180-84, 490. Case-Mate also affirmatively contacted Vinci's customers and suppliers to divert business from Vinci to Case-Mate. Id. ¶¶ 238-59. Vinci also plausibly alleges that Case-Mate intended to participate in the conspiracy, given the allegations that Case-Mate never disclosed its negotiations with Kate Spade to Vinci and sought confidential information from Vinci regarding its Kate Spade license. See, e.g., id. ¶¶ 137, 176-178, 186, 213.

Finally, Vinci alleges that it was harmed as a result of Case-Mate's conduct "because it was denied the opportunity to participate in the iPhone 15 launch and its most valuable assets fell into the hands of its competitor, Case-Mate." Id. ¶ 491; see also id. ¶¶ 262-75 (alleging that Defendants acted in concert to thwart Vinci's attempts to sell Kate Spade branded accessories). Vinci has thus facially pled a claim of civil conspiracy against Case-Mate and consequently the claim is not futile.

5. *Vinci's request for punitive damages*

In addition to introducing new claims, Vinci also seeks to add a request for punitive damages. TAC at Prayer for Relief ¶ M. Kate Spade argues that punitive damages are not available to Vinci because Vinci fails to plausibly allege that Kate Spade's conduct was so "egregious" as to "evinc[e] a high degree of moral turpitude" or that Kate Spade's conduct was "part of a pattern directed at the public generally," both of which, Kate Spade contends, are requisite elements for an award of punitive damages in breach-of-contract cases. ECF No. 444, at 11 (citing Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003), certified question answered, 3 N.Y.3d 182 (2004); Rocanova v. Equit. Life Assur. Soc. of U.S., 83 N.Y.2d 603, 613 (1994)).

In New York, punitive damages are available in tort cases involving "gross, wanton, or willful fraud, or other morally culpable conduct," regardless of whether or not the conduct is directed against the public generally. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 509 (2d Cir. 1991) (internal quotation marks and citation omitted). In tort cases where the "tortious conduct at issue 'has its genesis in the contractual relationship,'" however, New York courts apply a three-part test for imposing punitive damages. Huang v. iTV Media, Inc., 79 F. Supp. 3d 458, 462-64 (E.D.N.Y. 2015) (quoting Leviton v. Mfg. Co., 942 F. Supp. 2d 244, 270 (E.D.N.Y. 2013)). In Rocanova, the New York Court of Appeals held that three elements must be met for a

party to obtain punitive damages for a tort that has its genesis in the contractual relationship between the parties: the defendant's conduct (1) "is actionable as an independent tort"; (2) "[was] sufficiently egregious"; and (3) "was part of a pattern of similar conduct directed at the public generally." Rocanova, 83 N.Y.2d at 613; see also N.Y. Univ. v. Continental Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995) (applying test from Rocanova to "lawsuit [that] ha[d] its genesis in the contractual relationship between the parties"); Huang, 79 F. Supp. 3d at 462. "Courts in this Circuit have largely interpreted [Rocanova and N.Y. Univ.] to stand for the proposition that punitive damages may not be recovered for tort claims 'arising out of a contractual relationship' unless the plaintiff can satisfy the so-called public-aim requirement." Starr Indemntiy & Liab. Co. v. American Claims Mgmt., No. 14 Civ. 0463 (JMF), 2015 WL 2130537, at *1 (S.D.N.Y. May 6, 2015).

Vinci's fraud claims have their genesis in Vinci's contractual relationships with Kate Spade and Case-Mate. TAC ¶¶ 464-79 (Counts 15 and 16). Vinci's fraud claims against both Kate Spade and Case-Mate rely on allegations that the Defendants leveraged their positions vis-á-vis their respective contractual relationships with Vinci to extract information from Vinci in order to effectuate the replacement of Case-Mate as Kate Spade's licensee. See TAC ¶¶ 155-85. Likewise, Vinci's claim for breach of fiduciary duty against Case-Mate also has its genesis in a contractual relationship because Case-Mate only became a fiduciary of Vinci when it assumed the Siena Loan Agreement. Id. ¶ 403; see Kaplin v. Buendia, No. 15 Civ. 649 (PAC), 2021 WL 1947771, at *1 (S.D.N.Y. May 14, 2021) (holding that proof of public harm was required for plaintiff to recover punitive damages where "breach of fiduciary duty claim ha[d] its genesis in the parties' contractual relationship"). Similarly, Vinci's claim against Case-Mate for tortious interference in Count 5 has its genesis in Vinci's contractual relationship with Case-Mate

because, as alleged, Case-Mate's contracts with Vinci, including the Siena loan agreement and the second confidentiality agreement, enabled Case-Mate to interfere with Vinci's license agreement with Kate Spade. TAC ¶¶ 168, 195, 375-85. In support of the tortious interference claim in Count 5, Vinci alleges that Case-Mate inhibited Vinci's ability to pay Kate Spade when Case-Mate was Vinci's lender, and that Case-Mate used Vinci's confidential information in order to negotiate a license agreement with Kate Spade and ultimately replace Vinci as the Case-Mate licensee. Id. ¶¶ 171-75, 378, 382, 383. Accordingly, for Vinci to be entitled to seek punitive damages for these tort claims, it must allege a pattern of conduct by Defendants aimed at the public. As Kate Spade correctly argues, none of the allegations in the proposed Third Amended Complaint concern conduct by Kate Spade or Case-Mate directed at the public or that support an inference of public harm. Instead, all of Vinci's allegations focus on conduct directed at Vinci that allegedly harmed only Vinci. TAC ¶¶ 136-225, 235-83. Vinci is thus not entitled to seek punitive damages as it concerns the tort claims in Counts 5, 8, 15, and 16, because those tort claims have their genesis in the contractual relationships between the parties and there are no allegations of conduct "directed at the public generally." Rocanova, 83 N.Y.2d at 944.

However, Vinci's tortious interference with contract claims in Counts 11 and 12 do not have their genesis in Vinci's contractual relationships with Defendants. TAC ¶¶ 424-43. Those claims allege that Defendants interfered with Vinci's contractual relationships with its suppliers and distributors. Id. ¶¶ 425-30. Consequently, those claims do not require allegations of public harm and only require allegations of "gross, wanton, or willful fraud, or other morally culpable conduct" to plausibly allege an entitlement to an award of punitive damages. Action S.A., 951 F.2d at 509.

As it relates to Counts 11 and 12, Vinci has plausibly alleged a gross, wanton, or willful fraud. As discussed, Vinci alleges that Defendants intentionally sought confidential information from Vinci under false pretenses (TAC ¶¶ 155-85); misled Vinci into believing it would be the licensee for the iPhone 15 launch (see, e.g., id. ¶ 473); and engaged in a campaign to force Vinci's suppliers and customers to end their business relationship with Vinci (id. ¶¶ 235-83). These allegations, if credited by a jury, plausibly support an award of punitive damages for Vinci's claims for tortious interference with contract in Counts 11 and 12. See Int'l Minerals & Res., S.A. v. Bomar Res., Inc., 5 F. App'x 5, 9 (2d Cir. 2001) ("In the context of an action under New York law for tortious interference with contract, an injured party can recover punitive damages when the tortious act complained of involved a wanton or reckless disregard of the plaintiff's rights.") (internal quotation marks and citations omitted); EVEMeta, LLC v. Siemens Convergence Creators Corp., 176 A.D.3d 612, 613 (1st Dep't 2019) (explaining that punitive damages would be available if "plaintiff's claim for tortious interference with contract survives").

<u>**CONCLUSION**</u>

For the reasons stated herein, Vinci's motion for leave to file a Third Amended Complaint is **GRANTED**. Vinci should file its proposed Third Amended Complaint with revisions as necessary to comport with the discussion herein. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 413.

**SO ORDERED.**

DATED:    New York, New York
          October 2, 2024

_____
    VALERIE FIGUEREDO
    United States Magistrate Judge