**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Vinci Brands LLC | |
|        Plaintiff and Counterclaim Defendant, | |
|    v. | |
| Coach Services Inc., Kate Spade, LLC, Tapestry, Inc., and Case-Mate, Inc., | **23-CV-5138 (LGS) (VF)** |
|        Defendants, | |
|    and | **ORDER** |
| Case-Mate, Inc., | |
|        Counterclaimant, | |
|    v. | |
| Vinci Brands LLC, Candlewood Partners, LLC, CWD Armor Management, LLC, Onward Brands, LLC, and ACS Group Acquisitions, LLC, | |
|        Counterclaim Defendants. | |

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Plaintiff Vinci Brands LLC ("Vinci") commenced this action on June 16, 2023, against Coach Services, Inc., Kate Spade, LLC, and Tapestry, Inc. (collectively, "Kate Spade") and later adding Case-Mate, Inc. ("Case-Mate, and together with Kate Spade, the "Defendants"), seeking damages and injunctive relief for breach of contract. Presently before the Court is Vinci's motion for sanctions against Case-Mate. <u>See</u> ECF Nos. 498-501, 550, 570. For the reasons stated herein, the motion for sanctions is **DENIED**.

1

## BACKGROUND[1]

On November 20, 2023, Vinci served its first set of discovery requests on Case-Mate, seeking Case-Mate's internal communications, its communications with its co-defendant in the instant action, Kate Spade, and Case-Mate's communications with various third parties concerning issues relevant to this litigation. ECF No. 500 at ¶ 3.

On February 16, 2024, Case-Mate made its first production to Vinci, which consisted of 53 documents. ECF No. 297 at 2. On February 22, 2024, Vinci filed a motion to compel Case-Mate to respond to the remainder of Vinci's first set of discovery requests. ECF No. 238. On February 23, 2024, the Court ordered Case-Mate to meet and confer with Vinci and file a letter "stating what discovery it has agreed to provide, what of the discovery . . . it refuses to provide and the basis for the refusal." ECF No. 239 at 1.[2] The Court warned Case-Mate that failure "to act in good faith in the discovery process will result in sanctions." Id. The same day, Case-Mate made another production to Vinci. ECF No. 297 at 2.

As directed, on February 28, 2024, Case-Mate filed a letter following its meet and confer with Vinci, indicating that Case-Mate had agreed to produce documents responsive to some, but not all, of Vinci's requests, and raising three objections to the then-still outstanding discovery requests. ECF No. 244 at 1. Specifically, Case-Mate objected to: (1) Vinci's requests for Case-Mate's financial information from January 1, 2021, to the present; (2) Vinci's requests for Case-Mate's sales information; and (3) Vinci's requests for documents related to Case-Mate's loan from Siena Lending Group, LLC and the fees associated with the loan's payoff. Id. at 1-3. In

---

[1] The Court presumes the parties' familiarity with the relevant factual and procedural background of this case. The background information recounted herein is limited to that which is relevant to the instant motion.

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

response, on February 29, 2024, the Court limited the scope of Vinci's requests by, for example, directing Case-Mate to provide its financial information from August 2022 to July 2023, and its sales data related solely to sales of Kate Spade-branded products "from June 2023 to present." ECF No. 247 at 1. On March 4, 2024, the Court granted Vinci's motion to compel (see ECF No. 238) and ordered Case-Mate to produce relevant documents and communications, as previously delineated by the Court. ECF 252.

On March 6, 2024, Vinci again raised with the Court deficiencies in Case-Mate's productions. ECF No. 260. Vinci alleged that Case-Mate had not produced sufficient documents, having produced only 438 documents as of March 4, 2024, despite nearing the agreed-upon time-expenditure cap for reviewing electronically-stored information ("ESI"). Id. at 1-3. Vinci thus sought an order directing Case-Mate to expend additional hours revising ESI as necessary to provide fulsome responses to Vinci's discovery requests. Id. The same day Vinci filed its letter, the Court directed Vinci and Case-Mate to meet and confer. ECF No. 262. On March 7, 2024, after a meet and confer, the parties submitted agreed-upon proposed deadlines for subsequent document productions. ECF No. 263. On March 8, 2024, the Court directed the parties to "conduct searches and review documents beyond the initially agreed ESI search time caps so that the relevant discovery requests already ordered by the Court are addressed." ECF No. 266 at 1.

On March 11, 2024, the parties filed joint letters, raising additional discovery disputes. ECF Nos. 269-70. Vinci and Case-Mate filed a supplemental letter outlining their respective positions that same day. ECF No. 272. Following the parties' submissions, on March 12, 2024, the Court ordered Case-Mate to produce "all correspondence (including text messages) between Case-Mate and [Kate Spade] for the period from March 1, 2023, to December 31, 2023"; "all internal correspondence (including text messages) relating to Vinci, [Kate Spade, and third

parties] from January 1, 2023, to December 31, 2023"; "all correspondence with [the relevant lending services] from January 1, 2023, to December 31, 2023"; "documents and communications relating to Case-Mate and [Kate Spade]'s negotiations of the Case-Mate license agreement from March 1, 2023"; and "communications with suppliers, vendors and customers for the period from April 1, 2023, through July 31, 2023." ECF No. 273 at 7. The Court also ordered Case-Mate to "search, review and produce all document hits from Vinci's revised search terms as described in [the letter at ECF No. 272]." Id. at 5.

On March 13, 2024, the Court set March 22, 2024, as the deadline for Case-Mate to produce the subject documents, but the Court directed Case-Mate to "make substantial interim productions by March 15, 2024 and March 20, 2024." ECF No. 279. On March 15, 2024, the Court entered another order clarifying date ranges applicable to the Court's March 12 order. ECF No. 287.

On March 25, 2024, Vinci submitted a letter to the Court alleging that, while Case-Mate made a production on March 22, 2024, Case-Mate failed to make the interim production "on March 20, 2024" as the Court had ordered. ECF No. 296 at 2. In response, Case-Mate argued that Vinci was misrepresenting the chronology of Case-Mate's productions. ECF No. 297. Case-Mate stated that, while it did not make a production *on* March 20, 2024, it produced over 800 documents on March 15, 2024, and over 250 documents on March 18, 2024, in compliance with the Court's directive that Case-Mate make two substantial productions *by* March 20, 2024. Id. In its March 22, 2024 production, Case-Mate produced 7,000 documents to Vinci. Id. The Court did not address the dispute regarding Case-Mate's interim productions. ECF No. 300.

On April 19, 2024, Vinci and Case-Mate submitted a joint letter to the Court concerning Vinci's motion to compel Case-Mate to produce unredacted text messages. ECF No. 327. On

April 22, 2024, the Court instructed Case-Mate to submit certain text messages for *in camera* review. ECF No. 330. On April 30, 2024, after reviewing the text messages *in camera*, the Court ordered Case-Mate to "review its entire document production thus far and remove all redactions except for those protected by the attorney-client privilege or work-product doctrine." ECF No. 347 at 1-2. On May 14, 2024, Case-Mate re-produced its production of text messages, replacing 51 previously produced documents. ECF No. 500 at ¶ 5. In total, from February through March 2024, Case-Mate produced 20,812 pages of documents, including heavily redacted text messages. Id. at ¶ 4.

On July 12, 2024, the parties filed a joint letter with the Court, in which Vinci asked the Court to direct Case-Mate to file a supplemental privilege log, to provide adequate information for Vinci to assess Case-Mate's continued claims of privilege over certain text messages. ECF No. 425. On July 16, 2024, after addressing the issue at a discovery conference, the Court ordered Case-Mate to supplement its privilege log by providing the information required under Rule 26(b)(5) and Local Rule 26.2(a), so that Vinci could assess Case-Mate's claims of privilege. ECF No. 427. The Court also directed Vinci to provide a supplemental privilege log for parity and because the parties had previously agreed to mutually exchange supplemental privilege logs. Id.; ECF No. 580 at 36-37. On August 2, 2024, Case-Mate provided the supplemental privilege log. ECF No. 500 at ¶ 13; ECF No. 501-14.

On September 6, 2024, Vinci filed the instant motion, seeking sanctions under Rule 37(a)(5) and Rule 37(b)(2)(A) or, in the alternative, under the Court's inherent authority. ECF Nos. 498-501, 570. Vinci requests an order directing Case-Mate to reimburse Vinci for its fees incurred in, "among other things," preparing its original motion to compel (ECF No. 238); preparing its motion to compel the removal of improper redactions (ECF No. 327); reviewing

and comparing Case-Mate's initial production and its reproduction of text message communications; preparing its July 12, 2024 submission addressing Case-Mate's deficient May 14, 2024 privilege log (ECF No. 425); and preparing the instant motion. ECF No. 499 at 14; ECF No. 501 at 17. On October 3, 2024, Case-Mate filed its opposition to Vinci's motion for sanctions.[3] ECF No. 550. On October 16, 2024, Vinci filed a reply brief in further support of its motion for sanctions. ECF No. 570.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct." World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012). "Imposing sanctions pursuant to Rule 37 is within the discretion of the district court." Id. at 159 (internal quotation marks and citations omitted). In exercising such discretion, the Court must consider a number of non-exclusive factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Id. (internal quotation marks, citations, and alterations omitted). Sanctions under Rule 37 also "should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general." Abouelmakarem v.

---

[3] Case-Mate's opposition was originally due on October 1, 2024. ECF No. 511. On September 30, 2024, Case-Mate filed a letter requesting a two-day extension of time to file the opposition due to "disruptions created by Hurricane Helene and related family medical needs for [Case-Mate]'s lead counsel." ECF No. 534. On October 1, 2024, Case-Mate timely filed its opposition, as its extension request was still pending before the Court. ECF No. 543. Later on October 1, 2024, the Court granted Case-Mate's request for a two-day extension. ECF No. 544. On October 3, 2024, Case-Mate filed an amended opposition in light of the extension. ECF No. 550. The Court considers only the amended opposition for purposes of this motion.

MDNMA Inc., No. 21-CV-10625 (LJL), 2023 WL 3559392, at *6 (S.D.N.Y. May 18, 2023)

(internal quotation marks and citations omitted).

Under Rule 37(a)(5), "if a motion to compel is granted: 'the court *must*, after giving an

opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or

attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in

making the motion.'" Wager v. G4S Secure Integration, LLC, No. 19-CV-03547 (MKV) (KNF),

2021 WL 293076, at *3 (S.D.N.Y. Jan. 28, 2021) (emphasis in original) (quoting Fed. R. Civ. P.

37(a)(5)(A)). "To recover expenses under Rule 37(a)(5)(A), 'the only requirements are that a

party has made a motion for an order compelling disclosure or discovery and that the motion is

granted.'" Id. (quoting John Wiley & Sons, Inc. v. Book Dog Books, LLC, No. 13-CV-816

(WHP) (GWG), 2014 WL 12902178, at *1 (S.D.N.Y. June 5, 2014)). An award of costs and fees

under Rule 37(a)(5) is improper, however, if "(i) the movant filed the motion before attempting

in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's

[objections were] substantially justified; or (iii) other circumstances make an award of expenses

unjust." Fed. R. Civ. P. 37(a)(5)(i)-(iii); see also Gonzalez v. Hanover Ventures Marketplace

LLC, No. 21-CV-1347 (ER), 2022 WL 21851464, at *1 (S.D.N.Y. Aug. 9, 2022) (explaining

that under Rule 37(a), the court must award the movant's reasonable expenses incurred in

making a motion to compel unless "the conduct was substantially justified, or the award would

be unjust"). The burden of persuasion is therefore on the non-moving party "to avoid assessment

of expenses and fees rather than . . . on the winning party to obtain such an award." Pegoraro v.

Marrero, No. 10-CV-51 (AJN) (KNF), 2012 WL 5964395, at *4 (S.D.N.Y. Nov. 28, 2012)

(internal quotation marks and citations omitted).

Under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, a court may "impose on

a party who has failed to obey a discovery order a 'just' sanction." Chevron Corp. v. Donziger,
833 F.3d 74, 147 (2d Cir. 2016). Sanctions under Rule 37(b) are only appropriate where a party
violated a court order. See Shanghai Weiyi Int'l Trade Co., Ltd. v. Focus 2000 Corp., 15-CV-
3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017) (explaining that "[a]
predicate court order directing compliance with discovery requests, and non-compliance with
that order, are required" to permit sanctions under Rule 37(b)); Salahuddin v. Harris, 782 F.2d
1127, 1133 (2d Cir. 1986) ("Rule 37(b) sanctions require the violation of an explicit court
order.").

     Under Rule 37(b)(2)(C), a court must shift costs and fees if a party fails to comply with a
court order "unless the failure was substantially justified or other circumstances make an award
of expenses unjust." In re Kwok, 2025 WL 783645, at *3 (2d Cir. Mar. 12, 2025) (summary
order) (internal quotation marks and citations omitted). "An order enforceable under Rule 37(b)
need not . . . have been issued under a particular rule, so long as its effect was to require a party
'to provide or permit discovery.'" Trs. of Mosaic & Terrazzo Welfare, Pension, Annuity, &
Vacation Funds v. Elite Terrazzo Flooring, Inc., No. 18-CV-1471 (CBA) (CLP), 2020 WL
1172635, at *5 (E.D.N.Y. Feb. 20, 2020) (quoting Fed. R. Civ. P. 37(b)(2)(A)), adopted by, 2020
WL 1166616 (E.D.N.Y. Mar. 11, 2020); see also Daval Steel Prods. v. M/V Fakredine, 951 F.2d
1357, 1363 (2d Cir. 1991) ("The language of Rule 37(b)(2) requires a prior order, but does not
by its terms specifically require an order issued pursuant to Rule 37(a).") (citations omitted).
"Sanctions may be granted against a party under Rule 37(b)(2) if there is noncompliance with an
order, notwithstanding a lack of wil[l]fulness or bad faith, although such factors are relevant to
the sanction to be imposed for the failure." Abouelmakarem, 2023 WL 3559392, at *6 (internal
quotation marks and citations omitted).

**DISCUSSION**

Vinci seeks sanctions under Rule 37 or, in the alternative, under the Court's inherent authority, for Case-Mate's conduct necessitating Vinci to file multiple motions to compel and Case-Mate's conduct allegedly violating several Court orders. See ECF No. 499 at 1, 7, 9; ECF No. 570 at 7 n.2, 7-12. As explained below, however, Case-Mate's conduct does not warrant the imposition of sanctions.

A.  Vinci's request under Rule 37(a)

Vinci seeks attorney's fees and costs incurred in preparing its initial motion to compel (ECF No. 238), which asked for an order compelling Case-Mate to produce documents and information, and its July 12, 2024 submission, which raised issues with Case-Mate's privilege log. ECF No. 501 at 17. Rule 37(a)(5) entitles a party who "successfully moves under Rule 37(a)(3) to compel disclosure or discovery" to recover "reasonable expenses and attorneys' fees." Uddin v. O'Brien Rest. Hldg. Co., LLC, No. 16-CV-2098 (RJS), 2017 WL 11674895, at *3 (S.D.N.Y. Aug. 23, 2017). But as explained below, neither submission relied on by Vinci is a motion to compel and thus Vinci is not entitled to recoup attorney's fees and costs associated with those submissions.

Starting with Vinci's request to recoup costs and fees related to its July 12 submission, Vinci never filed a motion to compel in that submission as it concerns Case-Mate's privilege log. Instead, on July 12, 2024, Vinci submitted a joint letter with Case-Mate, in advance of a discovery conference before the undersigned on July 16, 2024. See ECF No. 425. Four days after Vinci and Case-Mate submitted their joint letter, and without further briefing from any party, the Court directed both Case-Mate and Vinci to produce supplemental privilege logs. ECF No. 427 at 2. To be sure, in the July 12 joint submission, Vinci asked the Court to order Case-Mate to

9

produce a Rule 26 compliant privilege log. See ECF No. 425 at 2. But that request in the joint

letter does not amount to a motion to compel. "[A] prerequisite to seeking relief under Rule

37(a)(5)(A) is that a party first file a motion to compel," and "a joint letter presenting a discovery

dispute does not suffice as a motion to compel." New Chapter, Inc. v. Advanced Nutrition by

Zahler Corp., No. 22-CV-3734 (HG), 2024 WL 981055, at *5 n.5 (E.D.N.Y. Mar. 7, 2024); see

also Uddin, 2017 WL 11674895, at *3 (stating that "Rule 37(a)(5)'s fee provision is not clearly

applicable here, since what Plaintiffs characterize as their motion to compel . . . is in fact a two-

and-a-half page portion of a joint letter submitted by the parties"). Because Vinci never formally

"move[d] under Rule 37(a)[ ] to compel disclosure," Uddin, 2017 WL 11674895, at *3, Vinci is

not entitled to recoup costs and fees under Rule 37(a)(5), related to the July 12, 2024 submission.

See e.g., id. (denying fee request under Rule 37(a)(5) where movant attempted to construe a

"two-and-a-half page portion of a joint letter submitted by the parties" as a motion to compel);

Arroyo v. Milton Acad., 2011 WL 13217008, at *2 (D. Vt. June 3, 2011) (explaining that Rule

37(a)(5) permits parties to recover fees incurred only in making the motion to compel, "not those

incurred in the drafting of related filings").

  But even if the July 12 joint letter were construed as a successful motion to compel,

Case-Mate's objections to supplementing its privilege log were substantially justified, and thus

an award of fees would be improper. See Fed. R. Civ. P. 37(a)(5)(A)(ii). On April 30, 2024, the

Court ordered Case-Mate to produce all text messages except for those protected by attorney-

client privilege or the work-product doctrine. ECF No. 347. On May 14, 2024, Case-Mate

produced the text messages along with a metadata-only privilege log.[4] ECF No. 425 at 2-3. Vinci

---

[4] Pursuant to the parties' initial agreement, the parties exchanged metadata-only privilege logs on April 24, 2024. ECF No. 543 at 15. Case-Mate represents that its metadata privilege log identified all documents withheld by Case-Mate due to privilege and/or work-product protection and provided the following information for each document: "Privilege ID; Privilege ID Group;

subsequently sought a more substantive privilege log and Case-Mate objected to Vinci's request

for a supplemental privilege log because the parties had previously agreed to provide metadata-

only privilege logs. Id.

Vinci does not dispute that the parties agreed to exchange metadata-only privilege logs,

or that Case-Mate produced a log compliant with that agreement. ECF No. 501 at 15. Further,

Case-Mate's two metadata privilege logs complied with Rule 26's requirements because they

identified the individuals involved in the communication, the author of the communication, and

the basis for Case-Mate's privilege assertion. See Jessore Mgmt. SA v. Brit Syndicate 2987, No.

20-CV-5849 (AT) (KNF), 2021 WL 4037849, at *10 (S.D.N.Y. Sept. 3, 2021) (explaining that a

"privilege log should: identify each document and the individuals who were parties to the

communications, providing sufficient detail to permit a judgment as to whether the document is

at least potentially protected from disclosure"). And although the Court ultimately ordered Vinci

and Case-Mate to produce supplemental privilege logs (ECF No. 427), it did so without reaching

the merits of the dispute or assigning fault based on the parties' representation at the July 16,

2024 conference that they had already agreed to exchange supplemental privilege logs with

additional information for communications that did not include an attorney (ECF No. 580 at 36-

37).[5] In short, Case-Mate was substantially justified in objecting to Vinci's request for a

_____

Bates Number (if any); All Custodians; Date; File Name; Email Subject; Email From; Email To; Email CC; Email BCC; and Privilege Assertion." Id. Case-Mate's metadata-only privilege log did not contain entries for documents that were produced with redactions; it only contained entries for documents Case-Mate withheld entirely. Id. at 16. On May 14, 2024, after producing 51 replacement documents with amended redactions, Case-Mate provided a supplemental privilege log, which provided the following information for documents with redactions: "Bates; Beginning Date/Time; End Date/Time; Participants; and Reason: Attorney-Client or Work Product." Id. at 17.

[5] Vinci also takes issue with Case-Mate's supplemental privilege log, arguing that the supplemental privilege log also is insufficient. ECF No. 499 at 16. As discussed infra at Section B.4, Case-Mate's supplemental privilege log complies with the Court's order and conforms with Rule 26's requirements.

supplemental privilege log in light of the parties' previous agreement to provide metadata-only logs. See Gonzalez, 2022 WL 21851464, at *1 ("Because [d]efendants' objections were reasonable, albeit ultimately incorrect, it would be unjust for the [c]ourt to award fees and costs in this matter.").

Turning to Vinci's request for fees and costs related to its letter at ECF No. 238, which Vinci refers to as its "original motion to compel" (ECF No. 499 at 14), the letter is not captioned as a motion to compel; it is a "pre-motion discovery conference . . . to address the deficiencies in [Case-Mate's] responses to Vinci' s written discovery." ECF No. 238 at 1. That letter raises several discovery disputes in a single three-page letter, including a request that the Court compel Case-Mate to produce various categories of documents. ECF No. 238. But as already discussed, a letter raising a discovery dispute is not a motion to compel for purposes of awarding sanctions under Rule 37. See Uddin, 2017 WL 11674895, at *3 (explaining that a letter raising various discovery disputes did not "clearly" constitute a motion to compel for purposes of sanctions under Rule 37(a)); see also Arroyo, 2011 WL 13217008, at *2 (noting that fees incurred in drafting filings related to a motion to compel are not recoverable under Rule 37(a)(5)). Further, Vinci's request in ECF No. 238 for an order compelling Case-Mate to "produce . . . categories of information and documents," was granted before Case-Mate had the opportunity to respond (see ECF No. 239), and without further briefing from Vinci. Thus, even if Vinci's submission at ECF No. 238 were deemed a motion to compel, an award of fees would be unjust for the separate reason that Case-Mate was not afforded an opportunity to respond to Vinci's letter before the Court granted Vinci's request.

Additionally, and as it concerns both Vinci's letter at ECF No. 238 and Vinci's July 12,

2024 submission, courts have declined to award fees even when a party brought a successful motion to compel where, as here, discovery was protracted and required frequent court intervention. See JoySuds, LLC v. N.V. Labs, Inc., No. 22-CV-3781 (DEH) (OTW), 2024 WL 1929171, at *2 (S.D.N.Y. May 1, 2024) (reasoning that an award of attorney's fees under Rule 37(a)(5) would be unjust where "[t]he parties have engaged in a prolonged discovery process"); Gonzalez, 2022 WL 21851464, at *1 (holding that "[b]ecause [d]efendants' objections were reasonable, albeit ultimately incorrect, it would be unjust for the [c]ourt to award fees and costs" under Rule 37(a)); see also Song v. Dreamtouch, Inc., No. 01-CV-386 (AGS), 2001 WL 487413, at *3 n.3 (S.D.N.Y. May 8, 2001) (declining to award costs under Rule 37 because award would be unjust); Russell v. Scott, 2022 WL 3084339, at *10 (D. Vt. Aug. 3, 2022) ("It is unfortunate that judicial intervention was required for discovery to proceed in this case, but neither party bears sole responsibility for the dispute."); Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc., 2010 WL 811550, at *3 (W.D.N.Y. Feb. 26, 2010) (noting that "both sides have been subject to separate court orders compelling the production of documents, and in each instance the [c]ourt declined to award attorney['s] fees in connection with the underlying motion to compel").

Here, throughout discovery, both Vinci and Case-Mate have been compelled to make productions. See, e.g., ECF No. 347 (ordering both Vinci and Case-Mate to produce unredacted documents); ECF No. 357 (directing Vinci and Case-Mate to produce text messages); ECF No. 427 (setting a deadline for Vinci to produce "raw data necessary to support Vinci's lost profits and/or damages calculation" and directing Case-Mate and Vinci to produce supplemental privilege logs). Further, although Vinci faults Case-Mate for its redactions to text message communications, Vinci initially did not provide full strings of text messages, including irrelevant

13

text messages, and was ultimately ordered by the Court to do so after Case-Mate sought

reconsideration.[6] See ECF No. 357. Given that both sides have sought court intervention to

obtain discovery from an adversary, in a discovery process that necessitated multiple conferences

before this Court, an award of attorney's fees and costs against Case-Mate would be unjust for

that reason as well.

    B.   <u>Vinci's request under Rule 37(b)(2)</u>

        Turning to Vinci's request under Rule 37(b)(2), Vinci seeks sanctions under Rule 37(b)

based on Case-Mate's conduct in redacting non-privileged text messages, withholding text

messages Case-Mate claimed were irrelevant, and "objecting, in writing, to the production of

these text messages." ECF No. 501 at 13. More specifically, Vinci alleges that Case-Mate

violated the following court orders: ECF Nos. 247, 273, 279, 287, 347, and 427. ECF No. 570 at

7-12. As discussed below, sanctions are improper for various reasons. First, Vinci did not raise

an argument concerning the order at ECF No. 247 (or even cite the order) until its reply brief,

and thus any argument concerning that order is waived. But even if not waived, an award of fees

for any violation of the order at ECF No. 247 would be unjust. Second, as it relates to the orders

at ECF Nos. 273, 279, 287, and 347, any violation by Case-Mate was not willful and thus an

award of fees would be unjust. Finally, as it concerns the order at ECF No. 427, Case-Mate did

not violate any directive from the Court contained in those orders.

        Here, the conduct of all parties in the litigation has to varying degrees contributed to

protracted discovery in this action. Vinci's conduct throughout discovery has not been above

reproach, and its conduct, too, has required Court intervention. See, e.g., ECF No. 247 (limiting

---

     [6] This further undermines Vinci's arguments concerning Case-Mate's extensive
redactions to produced text messages, because Vinci provided its text messages in a format that
allowed it to avoid redactions for non-responsiveness altogether.

in part Vinci's discovery requests); ECF No. 252 (same); ECF No. 347 (ordering both parties to make productions); ECF No. 357 (directing Vinci and Case-Mate to produce text messages). And even where Vinci has established that Case-Mate's conduct amounted to a technical violation of an order, Vinci has not established that Case-Mate acted in bad faith. As outlined below, the conduct Vinci complains of include inadvertent errors, ultimately incorrect privilege calls, and justified objections to Vinci's discovery requests. Where, as here, both parties have contributed to prolonging discovery, an award of costs to Vinci would be unjust in light of the nature of these violations by Case-Mate. See Samad Bros. v. Bokara Rug Co., No. 09-CV-5843 (JFK), 2011 WL 4357188, at *7-8 (S.D.N.Y. Sept. 19, 2011) (denying sanctions because both parties' conduct contributed to prolonging discovery); JoySuds, LLC, 2024 WL 1929171, at *2 (determining that an award of costs and fees under Rule 37 would be unjust where both parties' conduct extended discovery).

     1.  *ECF No. 247*

ECF No. 247 is a memo endorsement issued on February 29, 2024, addressing Vinci's request for an order compelling Case-Mate to produce documents "that refer, relate to, or concern any and all sales, purchase orders and the like, by Case-Mate for phone accessories and/or cases." ECF No. 247 at 1. In the memo endorsement, the Court directed Case-Mate to "produce the requested information . . . but only for the period from August 2022 to July 2023." Id. The Court did not set a deadline for the production. Id. Vinci points to two examples of text messages (ECF Nos. 501-1, 501-2) that were not produced until after the depositions of Case-Mate's executives as evidence that Case-Mate failed to comply with the directive to produce documents related to "sales, purchase orders and the like, by Case-Mate for phone accessories and/or cases." ECF No. 570 at 9-10. According to Case-Mate, these two text messages are

"excerpts from a 146-page WhatsApp exchange between [two Case-Mate employees] spanning from January 4, 2023 through July 15, 2023." ECF No. 550 at 21-22. The entire WhatsApp exchange was first produced on March 22, 2024. Id. at 22. But when Case-Mate first produced the messages, it redacted messages that "did not appear relevant." Id. Case-Mate represents that the redactions to the messages to which Vinci now points were "inadvertent[ ]," and Case-Mate cured the inadvertent redactions when Case-Mate was later directed to review its entire production of text messages and redact only privileged information. Id.; see also ECF No. 347.

To start, Vinci did not mention, cite, or even allege a violation of ECF No. 247 in its opening brief. See ECF No. 501. Instead, Vinci raised this argument for the first time in its reply brief. See ECF No. 570 at 9-10. It is well settled that arguments raised for the first time in a reply are waived. In re Motors Liquidation Co., No. 20-CV-3093 (JMF), 2021 WL 1085362, at *5 n.6 (S.D.N.Y. Mar. 22, 2021) (explaining that "'arguments not made in an . . . opening brief are waived even if the [party] . . . raised them in a reply brief'") (quoting JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005)); Farmer v. United States, Nos. 15-CV-6287 (AJN), 12-CR-758 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived."). As such, Vinci's argument that sanctions are warranted because of Case-Mate's alleged violation of the order at ECF No. 247 is waived.

Even if Vinci had timely raised the argument that Case-Mate violated the order at ECF No. 247, the alleged violation would not be grounds for sanctions. First, the Court order that directed Case-Mate to review its production and remove redactions absent an assertion of privilege was not filed until April 30, 2024 (see ECF No. 347), and Case-Mate promptly complied with that order on May 14, 2024 (see ECF No. 550 at 12). Second, Vinci points to the

16

inadvertent withholding of only two text messages out of a production of thousands of text messages (see ECF No. 500 at ¶ 4), and those two text messages themselves were part of a 146-page WhatsApp exchange that spanned seven months. ECF No. 550 at 21-22. The withholding was "inadvertent," and Case-Mate subsequently produced those two text messages when it realized that they were inappropriately withheld. Id. at 22; see U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc., No. 11-CV-3543 (WHP), 2014 WL 2116147, at *4 (S.D.N.Y. May 14, 2014) ("Given the scale of document production in contemporary litigation, errors— even those involving multiple documents—are inevitable."); Carter-Wallace, Inc. v. Hartz Mountain Indus., Inc., 553 F. Supp. 45, 52 (S.D.N.Y. 1982) (explaining that inadvertent errors in a voluminous document production are inevitable).

Finally, to the extent the inadvertent withholding of two text messages can constitute a violation of the order at ECF No. 247, it would be unjust given the circumstances to award sanctions for that conduct. See Perez v. Escobar Constr., Inc., No. 20-CV-8010 (LTS) (GWG), 2022 WL 19560924, at *2 (S.D.N.Y. Sept. 19, 2022) (denying sanctions under Rule 37(b)(2)(A) where defendant made an "unintentional omission" in violation of a court order that "was later corrected").

2. *ECF Nos. 273, 279, and 287*

The Court issued three separate memo endorsements on March 12, 2024 (ECF No. 273), March 13, 2024 (ECF No. 279), and March 15, 2024 (ECF No. 287). The memo endorsements directed Case-Mate to produce "all internal correspondence (including text messages) relating to Vinci, Incase, Siena or KSNY" and "all correspondence (including text messages) between Case-Mate and KSNY." ECF No. 273 at 7. The memo endorsements also limited the scope of the communications Case-Mate was directed to produce by restricting the date range Case-Mate could use to identify responsive communications. See ECF No. 287 at 1. The Court directed Case-Mate to make its production by March 22, 2024, with interim productions by March 15, 2024, and March 20, 2024. ECF No. 279.

Case-Mate maintains that it complied with the court orders at ECF Nos. 273, 279, and 287 by making interim productions and "producing its custodians' text messages as complete strings in their original form" with redactions for privilege and non-responsiveness. ECF No. 550 at 10. Case-Mate represents that it used the following search terms to identify documents to produce to Vinci in compliance with ECF Nos. 273, 279, and 287: "Vinci," "KSNY," "Incase," and "Siena." ECF No. 550 at 9.

As it concerns the Court's directive concerning interim productions, Case-Mate in fact made productions on both March 15 and March 18, before producing an additional 7,009 documents on March 22, 2024, and 863 documents on March 23, 2024.[7] ECF No. 297 at 1. Vinci nonetheless points to, at most, ten text messages produced after the March 22, 2024 deadline to support the conclusion that Case-Mate violated ECF Nos. 273, 279, and 287 by (1) redacting

---

[7] Vinci faults Case-Mate for producing all of these documents "just weeks" before the depositions of certain Case-Mate executives (ECF No. 501 at 8), but Vinci ignores that the Court set the deadline of March 22, 2024, for Case-Mate's production and Case-Mate complied with that deadline. See ECF No. 279.

relevant text messages, and (2) failing to use the following search terms: "KS," "Charlotte," and "Candlewood." ECF No. 570 at 8.

Vinci points to three separate text message conversations that Case-Mate initially redacted for non-responsiveness that are relevant to the instant action. See ECF Nos. 501-1, 501-3, 501-5. Case-Mate represents that the redactions were the result of "inadvertent[ ] redact[ions]" to some relevant text messages. ECF No. 550 at 22. Further, Case-Mate explains that it "immediately cured this error" upon discovering the inadvertent redactions. Id. Vinci has not established that Case-Mate's redactions were made in bad faith. On the current record, it is inappropriate to impose sanctions for Case-Mate's inadvertent redactions to a handful of responsive text messages.

Vinci points to several additional text messages that Case-Mate initially redacted or withheld as non-responsive but that include the search terms "KS," "Charlotte," or "Candlewood." See, e.g., ECF Nos. 501-7, 501-10, 501-12. The orders at ECF Nos. 273, 279, and 287 do not direct Case-Mate to use specific search terms aside from the directive to use "Vinci's revised search terms." ECF No. 273. The Court did not define "Vinci's revised search terms" in its memo endorsement, and the underlying letter from Vinci raising the deficiency in Case-Mate's production does not explain what terms constitute "Vinci's revised search terms." See ECF Nos. 272, 273. Vinci, in its briefing for the instant motion, concedes that the Court never specified which search terms to utilize. ECF No. 570 at 8. And neither party has pointed to a court order requiring the use of specific search terms. In any case, it is not uncommon in a case such as this, involving a voluminous amount of ESI discovery, for there to be documents inadvertently withheld and later produced. Carter-Wallace, Inc., 553 F. Supp. 45 at 52 (explaining that, where "thousands of documents have been exchanged," "some documents will

inevitably be found and turned over later than appropriate," but that such inadvertent tardiness is not grounds for sanctions).

Case-Mate made several substantial productions of responsive documents in compliance with the orders at ECF Nos. 273, 279, and 287. ECF No. 297 at 2. But given that some responsive documents were inadvertently produced after March 22, 2024, Case-Mate did not, strictly speaking, fully comply with the orders at ECF Nos. 273, 279, and 287. However, where, as here, voluminous productions are exchanged, subsequent disclosure of inadvertently withheld documents is inevitable and not a basis for sanctions. See Carter-Wallace, Inc., 553 F. Supp. at 52 (denying request for sanctions); Perez, 2022 WL 19560924, at *2 (reasoning that it would be unjust to sanction defendant under Rule 37(b)(2)(A) for the "unintentional omission that was later corrected").

3.  *ECF No. 347*

On April 30, 2024, the Court directed Case-Mate to "review its entire document production thus far and remove all redactions except for those protected by the attorney-client privilege or work-product doctrine." ECF No. 347 at 1-2. Vinci contends that Case-Mate violated this order by continuing to assert attorney-client privilege over two messages in a 148-page text-message thread that involved Case-Mate's executive team (see ECF No. 501-12). ECF No. 570 at 10-11; ECF. No. 550 at 23. Case-Mate maintains that the redacted messages are protected by the attorney-client privilege, and Vinci only received the unredacted messages because Case-Mate failed to claw back an inadvertently disclosed unredacted version of the two text messages. ECF No. 550 at 23.

The at-issue text messages are from June 1, 2023, and reflect a discussion among Case-Mate's executives about a conversation with Case-Mate's counsel regarding a call with counsel

for other parties to this action, who were transactional counterparties to Case-Mate at the time

the messages were sent. ECF No. 501-12. Vinci contends that such an exchange is not privileged

because Case-Mate's lawyer was serving only as "a conduit for information" in the factual

exchange. ECF No. 570 at 10-11 (internal quotation marks and citations omitted). Vinci is

correct that where, as here, a lawyer is relating factual details from a non-privileged call with a

transactional counterparty, no privilege applies. See In re Grand Jury Subpoenas dated Mar. 9,

2001, 179 F. Supp. 2d 270, 291 (S.D.N.Y. 2001) ("Conversations between lawyers where one

lawyer is merely relaying factual information, such as a conversation with a third party, to

another lawyer are not privileged.").

Nevertheless, Case-Mate complied with the Court's order and rereviewed its entire

production, subsequently producing 51 documents with amended redactions. ECF No. 500 at ¶ 5;

ECF No. 543 at 17. Case-Mate's incorrect privilege call on two text message communications,

given the voluminous discovery in this case, does not justify the imposition of sanctions. See

Gonzalez, 2022 WL 21851464, at *1 (holding that, despite objections that were "ultimately

incorrect, it would be unjust for the [c]ourt to award fees and costs" under Rule 37).

4. *ECF No. 427*

Finally, on July 16, 2024, the Court directed Case-Mate to "produce a supplemental

privilege log." ECF No. 427 at 2. Vinci argues that Case-Mate's supplemental privilege log

failed to comply with the order at ECF No. 427, because Case-Mate's descriptions of redacted

and withheld documents were not Rule 26 compliant. ECF No. 570 at 11-12. Under Local Rule

26.2, a privilege log must contain information regarding: "the type of document"; "the general

subject matter of the document"; "the date of the document"; the author, addressees, and

recipients of the document; and "where not apparent, the relationship of the author, addressees,

and recipients to each other." Local Civ. R. 26.2(a)(2)(A); <u>Wultz v. Bank of China Ltd.</u>, 979 F.

Supp. 2d 479, 496 (S.D.N.Y. 2013) (outlining the requirements of Rule 26.2).

On August 2, 2024, Case-Mate supplemented its privilege log to include information

about the participants in each withheld communication and a description of the communication.

ECF No. 501-14. Having reviewed Case-Mate's supplemental privilege log, the supplemental

privilege log did not violate the Court's order at ECF No. 427 and nor does it fail to meet the

requirements of Local Rule 26.2. Although Vinci faults Case-Mate for not providing an adequate

description of the substance of the communications (<u>see</u> ECF No. 570 at 12), the description

provided in the privilege log is sufficient. Given the other information provided in the log, Vinci

had enough information to permit it to raise a challenge to any particular claim of privilege. <u>See</u>

<u>E.E.O.C. v. Rekrem, Inc.</u>, No. 00-CV-7239 (CBM), 2002 WL 27776, at *1 n.3 (S.D.N.Y. Jan.

10, 2002) ("The purpose of a privilege log is to provide a description of the allegedly privileged

materials sufficient to enable the demanding party to challenge the claim of privilege.").

C.  <u>Vinci's request for fees in preparing the instant motion</u>

Vinci also requests that Case-Mate pay its costs and fees incurred in preparing the instant

motion. ECF No. 499 at 14. Rule 37(b)(2)(C) provides that a court granting a motion for

sanctions under Rule 37(b) "must order the disobedient party . . . to pay the reasonable expenses,

including attorney's fees." Fed. R. Civ. P. 37(b)(2)(C); <u>see also</u> <u>Karsch v. Blink Health Ltd.</u>, No.

17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *12 (S.D.N.Y. June 20, 2019). Because Vinci

has not prevailed with regards to the instant motion, it is not entitled to recoup its fees. <u>See, e.g.</u>,

<u>Seoul Viosys Co. v. P3 Int'l Corp.</u>, No. 16-CV-6276 (AJN), 2017 WL 6942744, at *6 (S.D.N.Y.

Sept. 22, 2017) ("As the [d]efendant is not the 'prevailing party' on this motion, it is not entitled

to attorney's fees."); <u>Andres v. Town of Wheatfield</u>, 2025 WL 676742, at *8 (W.D.N.Y. Mar. 3,

2025) ("Because the court did not grant [defendant's] motion for sanctions under Rule 37(b), the court finds [defendant] is not entitled to attorney's fees.").

D. <u>Vinci's request for sanctions under the Court's inherent authority</u>

As an alternative to sanctions under Rule 37, Vinci contends that sanctions are appropriate under the Court's inherent authority. ECF No. 570 at 7 n.2. Courts have the inherent authority "to fashion an appropriate sanction for conduct which abuses the judicial process." <u>Goodyear Tire & Rubber Co. v. Haeger</u>, 581 U.S. 101, 107 (2017) (internal quotation marks and citations omitted). A court's "inherent power generally extends only to a court's management of its own affairs," such as "impos[ing] decorum," "maintain[ing] order," "disciplin[ing] attorneys," and "punish[ing] for contempt." <u>Elsevier Inc. v. Grossmann</u>, No. 12-CV-5121 (KPF), 2017 WL 3393848, at *3 (S.D.N.Y. Aug. 7, 2017) (internal quotation marks and citations omitted). Further, "[c]ourts may impose sanctions pursuant to their inherent authority only upon a particularized showing of bad faith, which requires clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Kennedy v. City of New York</u>, No. 12-CV-4166 (KPF), 2016 WL 3460417, at *2 (S.D.N.Y. June 20, 2016)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 44 (1991); <u>Xiao Xing Ni v. Gonzales</u>, 494 F.3d 260, 270 (2d Cir. 2007) (same). "In the discovery context," the Court's discretion to impose sanctions under its inherent powers "should be exercised with even more restraint than usual." <u>Yukos Cap. S.A.R.L. v. Feldman</u>, 977 F.3d 216, 235 (2d Cir. 2020).

For all of the reasons discussed herein, sanctions under the Court's inherent authority are inappropriate.

## <u>CONCLUSION</u>

Vinci's motion for sanctions is **DENIED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 498.

**SO ORDERED.**

DATED:      New York, New York
                   August 25, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge