UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                              :
VINCI BRANDS LLC,                             :
                                              :
                              Plaintiff,      :      23 Civ. 5138 (LGS)
             -against-                        :
                                              :      OPINION & ORDER
COACH SERVICES, INC., et al.,                 :
                                              :
                              Defendants.     :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

    Plaintiff Vinci Brands LLC ("Vinci") brings this action against Coach Services, Inc.

("Coach"), Kate Spade, LLC ("Kate Spade"), Tapestry, Inc. (together with Coach and Kate

Spade, "KSNY") and Case-Mate, Inc. ("Case-Mate"). On October 10, 2024, Vinci filed its Third

Amended Complaint (the "TAC"), the operative complaint. Case-Mate answered the TAC and

KSNY moved to dismiss. For the following reasons, the motion is granted in part and denied in

part.

## I.    BACKGROUND

    Familiarity with the underlying facts is assumed. *See Vinci Brands LLC v. Coach Servs.,*

*Inc.*, No. 23 Civ. 5138, 2023 WL 5950690, at *1 (S.D.N.Y. Sept. 13, 2023) (granting in part and

denying in part the cross-motions for a preliminary injunction), *reconsideration denied*, 2024

WL 3675938 (S.D.N.Y. Aug. 5, 2024). The following facts are taken from the TAC and

documents it incorporates by reference. *See Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

    This action arises out of Kate Spade's termination of a license agreement (the "License

Agreement") under which Vinci produced and sold Kate Spade-branded mobile phone cases and

similar products and paid Kate Spade fees and royalties. Vinci and its predecessors had been

Kate Spade's non-exclusive licensee for almost a decade. The License Agreement, initially

covering 2014 to 2016, was renewed twice, with the most recent term ending in June 2025.

The License Agreement provides Vinci with several contractual rights relevant here.

First, a confidentiality clause prohibits each party from disclosing the other party's confidential

information. Second, any announcement of the agreement's termination is to be made only by a

joint statement with mutual consent. Third, upon the agreement's termination, Vinci is permitted

to complete production and sale of in-process merchandise and merchandise subject to written

orders.

In the fall of 2022, the outbreak of a variant of COVID-19 disrupted iPhone production,

impacting Vinci's ability to sell iPhone cases and pay Kate Spade. On December 1, 2022, Kate

Spade sent Vinci a letter claiming that Vinci owed over $7 million. On March 20, 2023, Kate

Spade notified Vinci of non-payment, deeming Vinci's delay in payment an event of default

under the License Agreement. Three days later, Kate Spade told Vinci "that the notice of non-

payment was 'not a threat to terminate' the License Agreement."

Unbeknownst to Vinci, its competitor, Case-Mate, contacted KSNY in January 2023

regarding a potential licensing relationship. By April 2023, KSNY began more formal

discussions with Case-Mate about Case-Mate's replacing Vinci as Kate Spade's licensee. Case-

Mate agreed to KSNY's terms in May 2023, and executed a license agreement on June 14, 2023.

During this time, KSNY continued to instruct Vinci to prepare for the upcoming iPhone

15 launch that would occur in September 2023, as the development process for iPhone cases

would take many months. Through early June 2023, KSNY acted "as though it was 'business as

usual,'" asking Vinci to send samples for review and arrange for production of approved designs.

KSNY also asked Vinci for detailed information related to Vinci's launch preparation, which KSNY shared with Case-Mate.

Also during this time, Vinci experienced financial troubles and Case-Mate briefly became Vinci's creditor. On May 11, 2023, Vinci's senior creditor, Siena Lending Group ("Siena"), issued a notice to foreclose on Vinci's collateral. The foreclosure sale never occurred because, on or about May 16, 2023, Case-Mate bought the Siena loan as part of an attempt to take over Vinci's license and business. After Vinci declined Case-Mate's offer to purchase Vinci outright, on or about May 23, 2023, Case-Mate stated its intent to foreclose on Vinci's collateral. To avoid foreclosure, Vinci obtained third-party funding from ACS Group Acquisitions LLC ("ACS"). Case-Mate initially agreed to sell the loan to ACS on June 1, 2023, but reneged the next day. On June 5, 2023, ACS paid off the loan in full on behalf of Vinci.

On June 14, 2023, Kate Spade terminated the License Agreement with Vinci. By June 16, 2023, KSNY provided Case-Mate a letter (the "Letter of Authorization") stating that Case-Mate was Kate Spade's "Authorized Licensee," which Case-Mate transmitted to Vinci's suppliers and customers. The Letter of Authorization prohibited any "disposition of KSNY Brand inventory other than that expressly authorized in writing by Kate Spade LLC in a separate writing." The letter was designed to lead customers and suppliers to believe that they were precluded from continuing their business with Vinci.

Vinci's suppliers stopped production, and Vinci's customers cancelled their orders. As a result, Vinci could not exercise its post-termination rights under the License Agreement to complete the production and sale of in-process merchandise and merchandise subject to written orders. On June 16, 2023, Vinci filed the current action.

## II.     STANDARD

### A.     Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Under Rule 12(b)(6), courts "accept as true all well-pleaded factual allegations, draw all reasonable inferences in the plaintiff's favor, and assess the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024), *petition for cert. filed on other grounds*, No. 24-229 (Aug. 27, 2024). A court does not consider "conclusory allegations or legal conclusions couched as factual allegations."[1] *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

### B.     Choice of Law

For issues of state law, New York law governs because the License Agreement includes a New York choice of law provision, and the parties' submissions assume that New York law applies. *See Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

III.    DISCUSSION

KSNY seeks to dismiss six of the eight causes of action against KSNY: breach of contract of specific sections of the License Agreement (First through Third Claims); aiding and abetting Case-Mate's breach of its fiduciary duty (Ninth Claim); tortious interference with contract (Eleventh Claim) and breach of the covenant of good faith and fair dealing (Seventeenth Claim). KSNY seeks to dismiss one cause of action for fraud against Kate Spade alone (Sixteenth Claim). KSNY also moves to dismiss all claims accrued before June 5, 2023. For the following reasons, the motion is granted in part and denied in part.

A.    **Real Party in Interest**

KSNY moves to dismiss any claims that accrued after June 5, 2023, on the ground that Vinci is not the real party in interest. The motion is denied. Rule 17 requires that an action "be prosecuted in the name of the real party in interest." Fed. R. Civ. Proc. 17(a)(1). This rule ensures that "a federal action [is] brought by the person who is entitled to enforce the asserted right . . . ." *Bugliotti v. Republic of Argentina*, 67 F.4th 102, 107 (2d Cir. 2023). While "Rule 17 itself does not specify the proper procedures . . . to make a challenge[,] . . . courts have allowed Rule 17(a) challenges to be made pursuant to Rule 12(b)(6) . . . ." *QS Holdco Inc. v. Bank of Am. Corp.*, No. 18 Civ. 824, 2019 WL 3716443, at *3 (S.D.N.Y. Aug. 6, 2019).

KSNY argues that Vinci's claims against KSNY are among the "Acquired Assets" Vinci transferred to Onward Brands LLC under an Asset Purchase Agreement dated June 5, 2023. This argument is incorrect. The Asset Purchase Agreement defines "Acquired Assets" to include "all of [Vinci's] rights under warranties, indemnities and all similar rights against third parties *to the extent assignable*" (emphasis added). Vinci's rights under the License Agreement are not assignable without Kate Spade's prior consent, which Kate Spade did not give. Vinci thus did

not transfer its claims arising out of the License Agreement or Vinci's contractual relationship with Kate Spade.  Vinci remains the real party in interest to assert those claims.

> **B.      Breach of the Covenant of Good Faith and Fair Dealing (Seventeenth Claim for Relief)**

The TAC sufficiently pleads a breach of the implied covenant of good faith and fair dealing under the License Agreement based on two theories -- (1) that KSNY communicated with Vinci's suppliers and customers in a way that defeated Vinci's post-termination rights; and (2) that KSNY induced Vinci to prepare for the fall 2023 iPhone launch despite knowing that it would not continue with Vinci for the launch.  The TAC's third theory, that KSNY obtained confidential information from Vinci on false pretenses in order to provide it to Case-Mate, is not actionable as a breach of the implied covenant of good faith because it is actionable as a breach of an express contractual provision.

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance," which "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Cordero v. Transamerica Annuity Servs. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023). "No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship."  *Id.*  Courts "will infer that contracts include any promises which a reasonable person in the position of the promisee would be justified in understanding were included at the time the contract was made."  *Id.*

Section 12.3 of the License Agreement permits Vinci, post-termination, to complete production of merchandise "which is in process, or for which written orders have been received from customers" as of the date of termination.  The TAC in substance pleads that KSNY frustrated this provision by communicating with Vinci's suppliers that Vinci was no longer

authorized to produce KSNY merchandise, and that, as a result, Vinci's suppliers stopped their production.

The TAC similarly alleges in substance that, by communicating with Vinci's customers, KSNY interfered with Vinci's contractual right -- under section 12.2 coupled with section 12.4 --  to sell to customers merchandise that was subject to a written order from a customer, and that, as a result, Vinci's customers cancelled existing orders and did not place additional orders. The TAC alleges that, by the time of termination, Vinci "had already received written orders . . . from most of its largest customers and had begun the work to fulfill their iPhone 15 case orders." The TAC alleges that Defendants prevented Vinci from exercising its post-termination rights to fulfill these orders by communicating to Vinci's customers that Case-Mate was Kate Spade's exclusive licensee and that Vinci had been terminated.

Contrary to KSNY's assertion, this interference need not "render Vinci's ability to complete production *impossible*."  Rather, an interference that "substantially reduc[es] the likelihood that" the non-breaching party could receive its benefits under the contract, as here, sustains a claim for breach of the implied covenant of good faith.  *ABN AMRO Bank, N.V. v. MBIA Inc.*, 952 N.E.2d 463, 475 (N.Y. 2011) (holding that plaintiffs sufficiently alleged that the defendant insurer breached the covenant of good faith by substantially reducing the likelihood that the plaintiffs would receive their insurance coverage).

The TAC alleges as a separate basis for breach of the implied covenant of good faith that, after KSNY decided it would replace Vinci with Case-Mate as its licensee before the fall 2023 iPhone launch, KSNY continued to ask Vinci to prepare for that launch.  That conduct supports an inference that KSNY destroyed Vinci's right to receive the fruits of the License Agreement -- i.e., the right to profit from its work producing and selling Kate Spade branded products.

KSNY argues that its conduct did not breach the implied covenant because the License Agreement expressly required Vinci to prepare for product launches. This argument is unpersuasive because the duty of good faith and fair dealing encompasses "promises which a reasonable person in the position of the promisee would be justified in understanding were included at the time the contract was made." *Cordero*, 211 N.E.3d at 670. The TAC sufficiently alleges that Vinci "expended significant financial and operational resources" to prepare for the launch in reliance on assurances from KSNY. Construed most favorably to Vinci, the TAC alleges that Kate Spade breached the following promise, which a reasonable licensee "would be justified in understanding" at the time the License Agreement was made -- that if Kate Spade requested and encouraged Vinci to obtain inventory and orders to prepare for a product launch, Vinci could then participate in and profit from the launch for which Vinci had expended significant resources. *Id.*

The third theory, alleging a breach of the covenant of good faith concerning confidential information, is not actionable as a breach of the implied covenant because the alleged violation is not "separate from the conduct constituting the alleged breach of contract," namely the breach of section 15.2, which is actionable as discussed below. *AEA Middle Mkt. Debt Funding LLC v. Marblegate Asset Mgmt., LLC*, 185 N.Y.S.3d 73, 90 (1st Dep't 2023); *see also Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (affirming a dismissal of a claim for breach of the implied covenant of good faith and fair dealing under New York law because the underlying facts and the remedy sought were identical to those of the breach of a contract claim).

### C.       Breach of Contract (First, Second and Third Claims for Relief)

The TAC sufficiently pleads that KSNY breached specified provisions in the License

Agreement.  Under New York law, breach of contract requires that "(1) a contract exists;

(2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual

obligations; and (4) defendant's breach resulted in damages."  *34-06 73, LLC v. Seneca Ins. Co.*,

198 N.E.3d 1282, 1287 (N.Y. 2022).  "[A]greements are construed in accord with the parties'

intent," the best evidence of which is "what they say in their writing."  *Donohue v. Cuomo*, 184

N.E.3d 860, 866 (N.Y. 2022).  "[A] written agreement that is complete, clear and unambiguous

on its face must be enforced according to the plain meaning of its terms."  *Id.* at 867.  Courts are

"especially reluctant" to look beyond the four corners of an agreement where it "was negotiated

between sophisticated, counseled business people negotiating at arm's length."  *Id.* at 866.  Here,

KSNY challenges only the third element -- whether KSNY breached its obligations under the

referenced provisions of the License Agreement.

### 1.       Section 3.2 (First Claim for Relief)

The TAC sufficiently pleads that KSNY breached section 3.2 of the License Agreement,

which states, "The parties agree that any announcement to the public or trade of the termination

or expiration of this Agreement will be made only at a time, and by a joint statement mutually

agreed upon by the parties."

The TAC alleges facts showing that Kate Spade unilaterally announced Vinci's

termination.  For example, the TAC alleges that on June 22, 2023, KSNY sent a letter to Vinci's

customers stating that "as of today and going forward Case-Mate, Inc., is Kate Spade's only and

exclusive licensee . . . ."  The TAC describes a KSNY communication with a specific Vinci

customer stating explicitly that Vinci's license had been terminated and that Case-Mate was Kate

Spade's exclusive licensee. The TAC also alleges that, in mid-June 2023, KSNY provided Case-Mate a Letter of Authorization, which Case-Mate transmitted to Vinci's suppliers and customers, confirming Case-Mate's licensee status and prohibiting any "disposition of KSNY Brand inventory other than that expressly authorized in writing by Kate Spade LLC in a separate writing." The letter thus communicated that Vinci, which had not received a letter of authorization from Kate Spade, was no longer authorized to conduct business as Kate Spade's licensee. Construed in favor of Vinci, the TAC alleges that KSNY breached its duty under section 3.2 of the License Agreement.

KSNY argues that notifying only certain members of the phone accessory trade of the termination was not a wide enough disclosure to constitute an announcement that would breach section 3.2. This argument is unpersuasive. The provision unambiguously imposes an obligation to seek mutual agreement when "*any* announcement to the public or trade of the termination . . . will be made" (emphasis added). Communications stating or implying that Case-Mate was Kate Spade's exclusive licensee, or that Vinci had been terminated are an "announcement to the public or trade," and Vinci thus states a claim for breach of section 3.2.

### 2.    Sections 12.2 and 12.3 (Second Claim for Relief)

The Second Claim for Relief is dismissed. While the TAC alleges facts supporting a breach of the implied covenant of good faith and fair dealing, including through KSNY's interference with Vinci's contractual rights under sections 12.2 and 12.3 of the License Agreement, *see supra* Section III.B, the allegations do not support an independent claim for breach of sections 12.2 and 12.3 themselves.

"When performance of a duty under a contract is due[,] any non-performance is a breach." Restatement (Second) of Contracts § 235(2) (A.L.I. 1981); *accord Franconia Assocs.*

*v. United States*, 536 U.S. 129, 143 (2002).  In other words, a breach of contract involves a

failure to perform a duty owed under the contract.

Because sections 12.2 and 12.3 provided Vinci with certain rights, to the extent that

KSNY interfered with those rights, those interferences support a claim for breach of the implied

covenant of good faith and fair dealing.  However, the TAC does not allege that KSNY failed to

perform its obligations under sections 12.2 and 12.3, only that it interfered with Vinci exercising

its own rights as discussed above.  The Second Claim for Relief is dismissed.

### 3.     Section 15.2 (Third Claim for Relief)

The TAC sufficiently pleads a claim for breach of section 15.2 of the License Agreement.

The provision prohibits either party from disclosing the other party's "Confidential Information"

except as required for the production and sale of merchandise in accordance with the terms of the

License Agreement.  Section 15.1 defines Confidential Information as "all information of a

business, financial and/or technical nature," "including without limitation . . . business plans,

designs, sketches, . . . customers, production techniques, sources of supply and other

documents."  Section 15.1 further states, "Each party acknowledges that . . . the 'Confidential

Information' . . . constitute[s] the trade secrets and exclusive property of the disclosing

party . . . ."

The TAC alleges that KSNY disclosed to Case-Mate information including (1) the design

selections and "forecasts" -- i.e., the number of each design to be ordered -- by Vinci's top three

customers; (2) Vinci's designs for the packaging of phone cases; and (3) Vinci's current

inventory list as of June 14, 2023.  At least some of that information is plausibly confidential

under section 15.2 as relating to "business plans, designs . . . [and] customers."

KSNY argues that these disclosures did not breach section 15.2 because the designs were "created works of authorship," which were the property of KSNY pursuant to section 14.6. It is unnecessary to resolve this question at this stage of the proceedings because the TAC alleges that KSNY also disclosed Vinci's inventory list and customer forecasts, which are not "created works of authorship" and are covered by section 15.2.

**D.      Aiding and Abetting Case-Mate's Breach of Its Fiduciary Duty (Ninth Claim for Relief)**

The TAC does not sufficiently plead that KSNY aided and abetted Case-Mate's breach of fiduciary duty. To plead such a claim, a plaintiff must allege "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Epiphany Cmty. Nursery Sch. v. Levey*, 94 N.Y.S.3d 1, 8 (1st Dep't 2019). The defendant must have known of the fiduciary duty, and the complaint must plead with particularity "actual knowledge of the breach of the [fiduciary] duty" -- not merely "constructive knowledge." *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 689 (1st Dep't 2015); *accord Stevens v. Skolnik*, 204 N.Y.S.3d 39, 41 (1st Dep't 2024); *see also Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 49 (2d Cir. 2005) (New York law).

The TAC alleges that Case-Mate "violat[ed] its fiduciary duty to Vinci when it briefly [for three weeks] served as Vinci's lender" and that the fiduciary duty arose not from the lender relationship, but "through [Case-Mate's] actions in assuming direct and excessive control over and responsibility for Vinci's business while serving as Vinci's lender." *See generally Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735, 741 (N.Y. 2012) ("[T]here is generally no fiduciary obligation in a contractual arm's length relationship between a debtor and a note-

holding creditor."). The TAC alleges that Case-Mate breached its fiduciary duty by interfering with Vinci's ability to pay its employees and vendors, and by starving Vinci of cash.

The claim fails because the TAC does not plead that KSNY knew of Case-Mate's alleged fiduciary duty to Vinci, nor that KSNY knowingly participated in Case-Mate's alleged breach of this duty. Construed most favorably to Vinci, the TAC alleges only that KSNY and Case-Mate were acting in tandem. *See Schroeder*, 17 N.Y.S. 3d at 689 (dismissing an aiding and abetting breach of fiduciary duty claim because the complaint did not allege that the defendant knew that there was a fiduciary relationship); *Epiphany Cmty. Nursery Sch.*, 94 N.Y.S.3d at 8 (dismissing an aiding and abetting breach of fiduciary duty claim against a group of defendants because the plaintiff did not allege facts to support a conclusory claim that the defendants aided and abetted a breach of fiduciary duty). The Ninth Claim for Relief is dismissed.

### E.    Tortious Interference with Contract (Eleventh Claim for Relief)

The TAC sufficiently pleads that KSNY tortiously interfered with Vinci's contracts with its customers and its suppliers. To state such a claim, a plaintiff must plead that the "plaintiff had a valid contract with [third parties]; defendants had knowledge of that contract and its relevant terms; defendants intentionally and improperly induced a breach of that contract; and plaintiff sustained damages caused by that conduct." *Sutton 58 Assocs. v. Pilevsky*, 164 N.E.3d 984, 995 (N.Y. 2020). "A tortious interference with contract claim should be dismissed where the plaintiff fails to sufficiently allege that the contract would not have been breached but for the defendant's conduct." *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, 198 N.Y.S.3d 521, 524 (1st Dep't 2023), *leave to appeal granted*, 252 N.E.3d 534 (N.Y. 2025); *accord Plymouth Cap., LLC v. Montage Fin. Grp., Inc.*, 219 N.Y.S.3d 372, 376 (2d Dep't 2024).

The TAC alleges that several customers cancelled their contracts with Vinci due to KSNY's interference.  For example, the TAC alleges that Verizon Services Ireland ("Verizon"), agreed on May 31, 2023, to buy certain quantities of Kate Spade-branded merchandise from Vinci in the upcoming months.  On June 23, 2023, KSNY sent a letter to Verizon's distributor, stating that Vinci's license had been terminated.  Verizon's distributor informed Vinci the same day that the order was cancelled.  Similarly, the TAC alleges that KSNY provided Case-Mate a Letter of Authorization confirming Case-Mate's licensee status to Vinci's suppliers and prohibiting any "disposition of KSNY Brand inventory other than that expressly authorized in writing by Kate Spade LLC in a separate writing."

KSNY does not dispute interference with suppliers.  KSNY does argue that the TAC does not allege an actual breach of any material contractual terms by customers.  This argument is incorrect because the TAC sufficiently alleges that the customers entered into binding contracts with Vinci for purchase of Kate Spade-branded merchandise and that they cancelled these orders after receiving communications from KSNY.  *See, e.g.*, Dkt. No. 568 ¶¶ 269-73 (summarizing examples of canceled orders by customers including Koan Company Limited, Cesium Telecom, Inc., Atlantia Holdings, Verizon and Appcessory PTE LTD).  The TAC also alleges that KSNY's Letter of Authorization helped Case-Mate in pressuring suppliers to "break their contracts and/or existing relationships with Vinci and move them to Case-Mate."  Construed favorably to Vinci, the TAC alleges that customers and suppliers were contractually obligated to buy or sell to Vinci, and they breached their contracts due to interference by Kate Spade.

The cases on which KSNY relies are distinguishable.  *See Jack L. Inselman & Co., Inc. v. FNB Fin. Co.*, 364 N.E.2d 1119, 1120 (N.Y. 1977) (affirming finding of no actual breach on summary judgment); *Leadsinger, Inc. v. Cole*, No. 5 Civ. 5606, 2006 WL 2320544, at *12

(S.D.N.Y. Aug. 10, 2006) (dismissing claim under New York law because the complaint did not allege valid contracts); *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005) (dismissing claim under New York law because the contracts at issue were terminable at will and hence could not be breached by termination).  The instant case is unlike *Kirch v. Liberty Media Corp.*, in which the court dismissed the tortious interference claim because plaintiffs "d[id] not allege that any breach of contract occurred" and instead argued only that they were "deprived of the fruits of an enforceable contract . . . whether or not that loss t[ook] the form of a formal breach of contract."  No. 4 Civ. 667, 2004 WL 2181383, at *8 (S.D.N.Y. Sept. 27, 2004) (New York law), *aff'd in relevant part, rev'd in part*, 449 F.3d 388 (2d Cir. 2006).  Here, the TAC affirmatively pleads that customers and suppliers breached their contracts by cancelling.

KSNY, for the first time in its reply, also argues that the TAC does not allege that KSNY caused the breach.  Arguments raised for the first time in a reply brief are deemed waived and need not be considered.  *See Aquila Alpha LLC v. Ehrenberg (In re Orion HealthCorp, Inc.)*, 95 F.4th 98, 103 n.2 (2d Cir. 2024); *Stevens & Co. v. Espat*, No. 24 Civ. 5223, 2025 WL 950989, at *4 n.5 (S.D.N.Y. Mar. 28, 2025).  Regardless, this argument is belied by the allegations in the TAC.  As discussed above, the TAC alleges that Verizon and other Vinci customers cancelled their orders and suppliers cancelled their production after KSNY communicated in substance that Vinci was no longer Kate Spade's licensee.  These allegations plausibly support the inference that, but for KSNY's communications, the purchase and production agreements would not have been breached.

### F.    Fraud (Sixteenth Claim for Relief)

The TAC pleads that Kate Spade defrauded Vinci in two ways: first, that Kate Spade obtained confidential information from Vinci under the false pretense that Kate Spade would use

the information to collaborate with Vinci on the iPhone 15 launch, when instead Kate Spade wanted the information for Case-Mate to conduct the launch; and second, that Kate Spade fraudulently induced Vinci to prepare for the iPhone 15 launch despite knowing it would not continue with Vinci as licensee.

Fraud under New York law consists of five elements:

(1) a misrepresentation or a material omission of fact, (2) which is either untrue and known to be untrue or recklessly made, (3) made for the purpose of inducing the other party to rely upon it, (4) justifiable reliance of the other party on the misrepresentation or material omission, and (5) injury.

*Globe v. Mielnicki*, --- N.E.3d ---, No. 17, 2025 WL 864512, at *3 (N.Y. Mar. 20, 2025). Allegations of fraud must "state with particularity the circumstances constituting the fraud . . . ." Fed. R. Civ. P. 9(b). But intent and knowledge may be alleged generally. *Id*.

### 1.    Confidential Information Under False Pretenses

The TAC does not sufficiently plead the first theory, that Kate Spade made affirmative misstatements to Vinci in order to obtain confidential information. The TAC alleges that "Kate Spade obtained confidential information from Vinci in May and June 2023 under the pretense that Kate Spade would use this information to collaborate with Vinci on the iPhone 15 launch," that Vinci "sent [the] information in response to Kate Spade's requests thinking they were collaborating toward launch" and that Vinci was harmed when Kate Spade gave the information to Vinci's competitor, Case-Mate. While these allegations plead all of the elements of a fraud claim, the allegations standing alone are too general to satisfy the requirement of Rule 9(b) that fraud be pleaded with specificity. Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting [the] fraud . . . .); *see, e.g.*, *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023) (holding that a proposed amended complaint failed to meet Rule 9(b)'s pleading standard because it failed to identify the "speakers" and

16

"when or where" they presented plaintiffs with inaccurate information), *cert. denied sub nom.*

*Abelar v. Intl. Bus. Machines Corp.*, 144 S. Ct. 827 (2024); *Krys v. Pigott*, 749 F.3d 117, 129,

133 (2d Cir. 2014) (dismissing complaint based on conclusory allegations of fraud).

The TAC pleads specific facts that align with these allegations, but the two examples,

while sufficiently detailed, fail to plead the elements of reliance and injury.  The TAC alleges

that in late May 2023, KSNY lied to Vinci in an effort to obtain files of Vinci's designs, but

Vinci did not send the files.  The TAC similarly alleges that on June 5, 2023, Kate Spade "lied to

Vinci, claiming that [it] wanted . . . vectorized artwork to share with other licensees in the home,

watches, stationery and gift spaces," but the TAC does not allege that Vinci sent the artwork or

otherwise relied on the misstatement.  Without Vinci's sending the requested items, the TAC

pleads neither reliance on the misstatements nor a plausible inference of resulting injury.

### 2.  Fraudulent Omission

In contrast to the first theory, the TAC sufficiently pleads the second theory of fraud, that

Kate Spade fraudulently induced Vinci to prepare for the fall 2023 iPhone launch despite

knowing Kate Spade would not continue with Vinci as licensee.  The substance of the claim is a

fraudulent omission, that Kate Spade did not disclose to Vinci that, as of April 2023, Kate Spade

knew "that it would terminate its relationship with Vinci and enlist Case-Mate to replace Vinci

as its licensee and to fulfill the fall 2023 iPhone launch."  The TAC is replete with allegations

that Kate Spade concealed its plan beween April 2023, when Kate Spade determined to replace

Vinci, and June 14, 2023, when Kate Spade sent Vinci a notice of termination.

When a claim is based on "fraudulent omission," the complaint must allege "that the

defendant had a duty to disclose material information and that it failed to do so."  *Mandarin*

*Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011).  The TAC relies on the

so-called "special facts" doctrine as the basis for Kate Spade's duty -- that facts relating to

Vinci's impending termination and the fall iPhone 15 launch "were peculiarly within Kate

Spade's knowledge, could not have been discovered by Vinci, and would plainly have impacted

Vinci's decisions" to continue preparing for the launch.  "[T]he special facts doctrine [applies]

where one party possesses superior knowledge, not readily available to the other, and knows that

the other is acting on the basis of mistaken knowledge . . . ."  *Aetna Cas. & Sur. Co. v. Aniero

Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (New York law).  The doctrine "requires

satisfaction of a two-prong test: that the material fact was information peculiarly within the

knowledge of one party and that the information was not such that [it] could have been

discovered by the other party through the exercise of ordinary intelligence."  *LMM Cap.

Partners, LLC v. Mill Point Cap., LLC*, 207 N.Y.S.3d 38, 43 (1st Dep't 2024).  New York courts

have stated that ordinary intelligence includes, "at the very least, a duty to inquire."  *Jana L. v.

W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 135 (1st Dep't 2005).

Usually, the duties of parties in an existing contractual relationship are limited to those

stated in the contract.  *See, e.g.*, *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190

(N.Y. 1987) (holding that because it was undisputed that "the relationship between the parties

was defined by a written contract, fully detailing all applicable terms and conditions," the

plaintiff was limited to recovery of damages on the contract and could not seek recovery based

on an alleged quasi contract); *see also* Restatement (Second) of Contracts § 209(3) (A.L.I. 1981)

("Where the parties reduce an agreement to a writing which in view of its completeness and

specificity reasonably appears to be a complete agreement, it is taken to be an integrated

agreement unless it is established by other evidence that the writing did not constitute a final

expression.").  Importantly, "[t]he special facts doctrine . . . applies only in business dealings

between parties to a *prospective* transaction."  *Merkin v. Berman*, 1 N.Y.S.3d 21, 23 (1st Dep't 2014) (emphasis added); *accord Chartwell RX, LLC v. Inmar, Inc.*, 620 F. Supp. 3d 59, 72 (S.D.N.Y. 2022) (New York law).  The doctrine applies to prevent one party from taking unfair advantage of another "when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair."  *Greenman-Pedersen, Inc. v. Berryman & Henigar, Inc.*, 14 N.Y.S.3d 20, 21 (1st Dep't 2015) (concluding under the special facts doctrine that the defendant had a duty to disclose certain adverse information during the due diligence period prior to the execution of the parties' contract).  The doctrine requires that the undisclosed information be an "essential fact" that would render the transaction inherently unfair without disclosure.  *See Supply Co. v. Hardy Way, LLC*, 202 N.Y.S.3d 332, 333-34 (1st Dep't 2024) (holding that the special facts doctrine did not apply where the "plaintiff did not show that this was an essential fact, or that defendants' superior knowledge of this fact rendered the license agreement inherently unfair").

Construing the TAC in favor of Vinci, the TAC sufficiently pleads facts specific to this case supporting the applicability of the special facts doctrine.  The TAC pleads facts showing that Kate Spade and Vinci were engaged in business dealings about a prospective transaction -- namely, continuing their relationship at least through the fall 2023 iPhone launch.  That outcome was uncertain, despite the parties' existing contractual relationship, given the TAC's allegations that, in March 2023, Kate Spade issued Vinci a Notice of Default and then "insisted that Vinci acknowledge [and pay the outstanding amounts] as a condition of [KSNY's] willingness even 'to consider any continuing partnership.'"

The TAC alleges that Kate Spade knew by April 2023 that it would replace Vinci with Case-Mate, a plan uniquely within Kate Spade and Case-Mate's knowledge.  The TAC pleads

that Vinci could not have discovered the plan through ordinary diligence because the License

Agreement ran through June 2025, and to the extent that Vinci's delinquent payment and the

Notice of Default would have alerted Vinci to the risk of termination, KSNY reassured Vinci that

it was "business as usual."  The TAC also alleges that any attempt on Vinci's side to clarify its

licensee status would likely have been futile because KSNY intended to keep Vinci in the dark to

"push Vinci to be prepared for the [fall 2023] iPhone 15 launch" through early June 2023.

Finally, the TAC alleges that -- with KSNY's knowledge -- Vinci relied on the omission and

incurred significant costs in preparation for the Fall 2023 launch.

Kate Spade argues that the special facts doctrine does not apply because (1) Kate Spade

did not know it would grant a license to Case-Mate until later, (2) the decision to grant a license

to Case-Mate did not necessarily mean termination of Vinci because Vinci was a non-exclusive

licensee and (3) Vinci was already at risk of termination due to its delinquent payments.  None of

these arguments provides a reason to dismiss the fraud claim.  On a motion to dismiss, courts

must "accept as true all well-pleaded factual allegations [and] draw all reasonable inferences in

the plaintiff's favor."  *See Tripathy*, 103 F.4th at 113.  The TAC alleges that Kate Spade was

considering replacing Vinci with Case-Mate as early as February 2023.  It further alleges that on

April 12, 2023, officers of KSNY "agreed to move on to another licensing partner" and to "time

this move effectively, 'while also getting our money'" (alteration omitted).  Construed in favor

of Vinci, the TAC sufficiently pleads that KSNY knew it would terminate Vinci as of April

2023.

Kate Spade argues that the TAC itself alleges that Kate Spade did disclose to Vinci that it

was at risk of termination.  However, construing the allegations in favor of Vinci, Vinci

reasonably relied on Kate Spade's reassurances -- that KSNY sent messages stating the notice of

20

non-payment was not a threat to terminate the License Agreement (in March 2023) and acted as though it was business as usual (in May 2023). Although a fact finder might determine that Vinci's knowledge of the risk of termination bears on the "peculiar knowledge" or "superior knowledge" required for the special facts doctrine, all inferences must be drawn in favor of Vinci at this stage. *Cf. Silver Point Cap. Fund, L.P. v. Riviera Res., Inc.*, 155 N.Y.S.3d 155, 156 (1st Dep't 2021) ("The 'peculiar knowledge' doctrine does not apply; plaintiffs are sophisticated parties that were aware that they were not provided with full information but nonetheless agreed to go forward with a transaction without either demanding access to the omitted information or assurances in the form of representations and warranties.").

## IV.    CONCLUSION

For the foregoing reasons, KSNY's motion to dismiss is **GRANTED in part and DENIED in part**. The following claims in the TAC are **DISMISSED**:

(1) Breach of contract for the breach of sections 12.2 and 12.3 of the License Agreement regarding Vinci's post-termination rights (Second Claim);

(2) Aiding and abetting Case-Mate's breach of fiduciary duty (Ninth Claim);

(3) Breach of the implied covenant of good faith and fair dealing based on the theory that KSNY obtained confidential information from Vinci on false pretenses (part of Seventeenth Claim) and

(4) Fraud based on the theory that KSNY obtained confidential information from Vinci on false pretenses (part of Sixteenth Claim).

For clarity, the surviving claims against KSNY are:

(1) Breach of the implied covenant of good faith and fair dealing based on the theories that KSNY communicated with Vinci's suppliers and customers in a way that

defeated Vinci's post-termination rights and that KSNY induced Vinci to prepare for the fall 2023 iPhone launch knowing that it would not continue with Vinci for the launch (part of Seventeenth Claim);

(2) Breach of contract for the breach of sections 3.2 regarding announcements (First Claim) and 15.2 regarding disclosure of confidential information (Third Claim) of the License Agreement;

(3) Declaratory judgment that KSNY invalidly and improperly terminated the License Agreement (Fourth Claim), which was not included in KSNY's motion;

(4) Tortious interference with Vinci's contracts (Eleventh Claim);

(5) Tortious interference with Vinci's prospective business advantage (Thirteenth Claim), which was not included in KSNY's motion and

(6) Fraud based on the theory that Kate Spade induced Vinci to prepare for the fall 2023 iPhone launch through fraudulent omission (part of Sixteenth Claim).

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 630.

Dated: September 29, 2025
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE