USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/23/2026

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

VINCI BRANDS LLC,

Plaintiff,

-against-

COACH SERVICES, INC., KATE SPADE, LLC, TAPESTRY, INC. and CASE-MATE, INC.,

Defendants.

---------------------------------------------------------------X

KATE SPADE, LLC and COACH SERVICES, INC.,

Plaintiffs,

-against-

VINCI BRANDS LLC, ACS GROUP ACQUISITIONS LLC, ONWARD BRANDS, LLC, CHARLES TEBELE, and SONNY "SAM" HADDAD,

Defendants.

---------------------------------------------------------------X

No. 23-CV-5138 (LGS) (VF)

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge:**

Presently before this Court are three motions: Third-Party Defendant ACS's motion to compel JP Morgan Chase Bank, N.A. and J.P. Morgan Securities, LLC (collectively, "Chase") to comply with a subpoena, ECF No. 963; Third-Party Plaintiff Case-Mate's motion to quash the subpoena, or, in the alternative, for a protective order, ECF No. 991; and non-party Chase's motion to compel payment of reasonable attorney's fees by ACS, ECF No. 993. For the reasons stated herein, ACS's motion to compel Chase to comply with the subpoena is **GRANTED**, Case-

Mate's motion to quash the subpoena, or, in the alternative, for a protective order is **DENIED**, and Chase's motion to compel payment of reasonable attorney's fees from ACS is **DENIED.**

## BACKGROUND[1]

On May 31, 2024, counsel for ACS sent via e-mail notice of a subpoena (the "Original Subpoena"), to be served on JP Morgan Chase & Co. pursuant to Federal Rule of Civil Procedure 45, to counsel for Chase, Case-Mate's lender, and counsel for Case-Mate. ECF No. 964 at 2. The Original Subpoena referred to the action, Kate Spade LLC v. Vinci Brands LLC, No. 23-CV-5409 (the "5409 Action"), but defined "Litigation" as referring to the 5409 Action and Vinci Brands LLC v. Coach Servs. Inc., No. 23-CV-5138 (the "5138 Action") (together, the "Related Actions"). Id. at 6. On August 9, 2024, ACS served Chase with the Original Subpoena. 5409 Action, ECF No. 453-3 at 2.

On August 14, 2024, and August 15, 2024, counsel for Case-Mate requested an update from ACS regarding outstanding non-party subpoenas in the Related Actions, including the Original Subpoena. ECF No. 964 at 3. On August 19, 2024, Chase claims it informed ACS that JP Morgan Chase & Co. was the wrong entity and that Chase would not release information until ACS served the proper entities, JP Morgan Chase Bank, N.A. and J.P. Morgan Securities LLC. ECF No. 993-6 at 6; ECF No. 964 at 4. ACS claims it did not receive this communication. ECF No. 964 at 14; ECF No. 965 at 4. Because ACS was not aware that it had served the subpoena on the wrong entities, it did not serve the Original Subpoena on JP Morgan Chase Bank, N.A. or J.P. Morgan Securities LLC, and those entities did not respond to the Original Subpoena. ECF No. 964 at 3-4; ECF No. 993-6 at 6-7.

---

[1] The Court assumes the parties' familiarity with the underlying facts of the Related Actions. Citations to documents filed in Case No. 23-CV-5409 are preceded by "5409 Action."

On January 3, 2025, ACS filed a motion to compel compliance with the Original Subpoena (the "First Motion to Compel"), which Case-Mate and Chase opposed. See 5409 Action, ECF Nos. 453, 457, 509. On February 5, 2025, the Court ordered ACS to file a letter, confirming that it had served notice of the First Motion to Compel and a copy of the Court's order on Chase. The Court also set a deadline for Chase to respond to the First Motion to Compel, and directed Case-Mate to submit a letter explaining its privilege, privacy, or propriety interest in the documents sought from Chase. ECF No. 740. On February 7, 2025, ACS served JP Morgan Chase & Co.—the wrong Chase entity—with the First Motion to Compel and a copy of the Original Subpoena. 5409 Action, ECF No. 490-1 at 2.

On February 11, 2025, two weeks after the close of fact discovery on January 31, 2025, see ECF No. 511, Chase informed ACS that it was reviewing the Original Subpoena. ECF No. 964-3 at 12-13. ACS and Chase met and conferred, and Chase explained that ACS had served the Original Subpoena on the wrong Chase entity, JP Morgan Chase & Co., and that it needed to serve JPMorgan Chase Bank, N.A. and J.P. Morgan Securities LLC. ECF No. 964 at 4-5; ECF No. 964-3 at 6-7. On February 12, 2025, Chase sent an e-mail to ACS identifying the proper Chase entities and stated Chase's intention "to comply with all legal requirements of a proper subpoena and with any Court order." ECF No. 964-3 at 4-7. Chase also told ACS that it was beginning to collect responsive records related to the Original Subpoena and requested "any search terms [ACS] require[s] in [its] new subpoena." Id. at 6-7 ("In our continued good faith, I have asked our team to begin to collect responsive records related to [the Original] subpoena in hopes that if any records are easily identified, we may be able to provide them to you on a rolling basis.").

ACS served the new subpoena (the "Chase Subpoena") on the proper Chase entities on February 13, 2025. Id. at 5; ECF No. 964-6 at 2. The Chase Subpoena referred to both the 5138 Action and the 5409 Action and defined "Litigation" as referring to the Related Actions. ECF No. 964-6 at 2, 6. Between February 2025 and August 2025, ACS and Chase negotiated a narrower scope of document requests and agreed to search terms for collection of potentially responsive records. ECF No. 964 at 5-9; see generally ECF No. 964-5. On March 21, 2025, the Court denied the First Motion to Compel because the Original Subpoena was served on the wrong Chase entity, but permitted ACS to refile its motion, if necessary, after serving the appropriate Chase entity. 5409 Action, ECF No. 516 at 3.

Following negotiations with ACS, Chase agreed to produce responsive documents, collected and reviewed those documents, and was poised to produce those documents. ECF No. 964-5 at 2-7. On October 16, 2025, counsel for Chase informed ACS that Chase was in the process of conducting a final review and "anticipate[d] completing the production in short order." Id. at 2. The same day, ACS filed a letter with the Court requesting that the Court compel Chase's compliance with the Chase Subpoena. ECF No. 938 at 2. On October 23, 2025, Case-Mate filed a letter motion to quash the Chase Subpoena and for a protective order. 5409 Action, ECF No. 586 at 1-3. On October 24, 2025, Chase filed a letter stating that it would wait for the Court's direction before producing any documents responsive to the Chase Subpoena. 5409 Action, ECF No. 587 at 1-2.

ACS filed the instant motion to compel Chase's compliance with the Chase Subpoena on November 14, 2025. ECF No. 963. On December 9, 2025, Case-Mate filed its opposition to ACS's motion to compel and cross-moved to quash the Chase Subpoena, or, in the alternative, for a protective order. ECF No. 991. That same day, Chase filed a cross-motion to compel

payment of reasonable attorney's fees by ACS pursuant to Federal Rule of Civil Procedure 45(d)(1). ECF No. 993. ACS filed its replies to Case-Mate and Chase on December 23, 2025. ECF No. 1002; ECF No. 1003.

## LEGAL STANDARDS

### A. Standing to Challenge a Non-Party Subpoena

"[A] non-subpoenaed party has standing" to challenge a third-party subpoena "if it has a privilege, privacy[,] or proprietary interest in the [information] sought." Universitas Educ., LLC v. Nova Grp., Inc., No. 11-CV-1590 (HBP), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (citing Catskill Dev., LLC v. Park Place Ent. Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002); Solow v. Conseco, Inc., No. 06-CV-5988 (BSJ) (THK), 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008)). However, only "[t]he recipient of a subpoena may move to quash a subpoena that poses an undue burden . . . and [only the recipient] may challenge the subpoena on grounds that it fails to meet 'Rule 26(b)(1)'s overriding relevance requirement.'" Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co., Ltd., 650 F. Supp. 3d 199, 203 (S.D.N.Y. 2023) (quoting Hughes v. Twenty-First Century Fox, Inc., 327 F.R.D. 55, 57 (S.D.N.Y. 2018)). Non-recipients accordingly "lack[ ] standing to challenge subpoenas issued to non-parties on grounds of relevancy or undue burden." Universitas Educ., 2013 WL 57892, at *5; Gilead Scis., Inc. v. Khaim, 755 F. Supp. 3d 285, 293 (E.D.N.Y. 2024) ("[I]n general, only the recipient of a subpoena may move to quash on the grounds of relevancy and undue burden.").

### B. Motions to Compel and Quash

1. *Motion to Compel*

Federal Rule of Civil Procedure 45 "permits a party to command a non-party to produce documents." Cohen v. Grp. Health Inc., No. 22-MC-200 (PAE) (KHP), 2022 WL 4534552, at *2 (S.D.N.Y. Sep. 28, 2022) (citing Fed. R. Civ. P. 45(a)). Subpoenas issued to non-parties under Rule 45 are subject to the relevance requirement of Federal Rule of Civil Procedure 26(b)(1). Malibu Media, LLC v. Doe, No. 15-CV-31457 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sep. 29, 2016) (citing In re Refco Sec. Litig., 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011)). Rule 26(b)(1) permits a party to "obtain discovery on any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear, on any issue that is or may be the case." DoorDash, Inc. v. City of New York, 754 F. Supp. 3d 556, 564 (S.D.N.Y. 2024) (internal quotation marks and citation omitted). To meet this standard, the issuing party must "articulate a concrete 'linkage between the discovery sought and the claims asserted in the case.'" Edmonson v. RCI Hosp. Holdings, Inc., No. 16-CV-2242 (VEC), 2018 WL 4112816, at *1 (S.D.N.Y. Aug. 29, 2018) (quoting Liberty Mut. Ins. Co. v. Kohler Co., No. 08-CV-867 (SJF) (AKT), 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010)). Motions to compel are "entrusted to the sound discretion of the district court." In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (citation omitted).

2. *Motion to Quash*

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no

exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A). "[T]he burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citation omitted). Like motions to compel, motions to quash are left to the discretion of the district court. In re Fitch, 330 F.3d at 108 (citation omitted).

Similarly, under Federal Rule 26(c)(1), "a party or any person from whom discovery is sought may move for a protective order" and "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expensive." DoorDash, 754 F. Supp. 3d at 565 (citing Fed R. Civ. P. 26(c)(1)). The party seeking the protective order "must . . . show good cause for restricting dissemination on the ground that it would be harmed by its disclosure." Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc., No. 15-CV-8681 (GBD) (BCM), 2016 WL 1364942, at *3 (S.D.N.Y. Mar. 28, 2016) (citing 8A Charles Alan Wright, Arthur Miller, and Richard L. Marcus, Federal Practice and Procedure § 2043 (3d ed. 2010)).

**C. Reasonable Attorney's Fees Under Rule 45(d)(1)**

"Under Rule 45(d)(1), when a party issues a subpoena without taking 'reasonable steps to avoid imposing undue burden or expense' on a third party, the issuing court 'must . . . impose an appropriate sanction—which may include lost earnings and reasonable attorneys' fees'—on the party or attorney responsible for the failure to do so." Breaking Media, Inc. v. Jowers, No. 21-MC-194 (KPF), 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (quoting Fed. R. Civ. P. 45(d)(1)). Courts undertake a two-step inquiry to determine whether attorney's fees are warranted under Rule 45(d)(1): (1) "whether the challenged subpoena imposed an undue burden or expense on the person(s) subject thereto;" and (2) "if so, what, if any, reasonable steps the

subpoenaing party and its counsel took to avoid imposing such a burden." Id. (quoting Saint-Jean v. Emigrant Mort. Co., No. 11-CV-2122 (SJ), 2015 WL 13735434, at *3 (E.D.N.Y. Oct. 7, 2015)).

## DISCUSSION

### A. Case-Mate's Standing to Challenge the Chase Subpoena

Case-Mate asserts that it has standing to challenge the Chase Subpoena based on its privacy interest in the bank records ACS seeks from Chase. ECF No. 991 at 6-7. Information concerning a party's financial records "may give rise to a privacy interest" sufficient to confer standing. KGK Jewelry LLC v. ESDNetwork, No. 11-CV-9236 (LTS) (RLE), 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014). "In this Circuit, courts are generally in agreement that financial records (including banking records) fall within the scope of information to which a party enjoys a personal right or privilege." Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc., No. 12-CV-6383 (JFB) (AKT), 2017 WL 1133349, at *8 (E.D.N.Y. Mar. 24, 2017) (collecting cases). Thus, parties whose financial records "are subpoenaed have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution." Arias-Zeballos v. Tan, No. 06-CV-1268 (GEL) (KNF), 2007 WL 210112, at *1 (S.D.N.Y. Jan. 25, 2007) (collecting cases).

Chase was Case-Mate's lender in connection with Case-Mate's purchase of the Siena Loan and its potential acquisition of Vinci and/or Vinci's assets. 5409 Action, ECF No. 457 at 1-2. Multiple requests in the Chase Subpoena (Requests Nos. 1, 2, 3, 5, 9, 10, 11, and 12) seek documents and records concerning Case-Mate's financial planning and acquisition strategy, including: (1) Case-Mate's potential acquisition of Vinci or its assets; (2) Project Shield (Case-Mate's potential acquisition of InCase, a Vinci asset) or Project Shield II (Case-Mate's potential acquisition of Vinci); (3) any sale of Vinci-related assets by Case-Mate; (4) Case-Mate's

financial plans for Vinci or its assets; (5) Case-Mate's purchase of the Siena Loan Agreement; and (6) Chase's communications with Case-Mate's counsel about Project Shield I, Case-Mate, and Project Shield II. ECF No. 964-6 at 7-9.

"The inquiry courts apply" to determine standing to contest a non-party subpoena "is whether the information [sought] is private, confidential, privileged, or highly sensitive, and not the form the records take." Solow, 2008 WL 190340, at *4. Courts in this District generally conclude that financial records of the type sought by ACS raise a privacy interest sufficient to confer standing. See id. at *2 (finding a privacy interest in "information relating to the terms of all financing, refinancing, loans and debt obligations" held by a financial institution); Merida Cap. Partners III LP v. Fernane, No. 25-CV-1235 (JAV), 2025 WL 1541072, at *5 (S.D.N.Y. May 30, 2025) (finding a privacy interest in "communications between [ ] financial institutions and Defendants"); Morelli v. Alters, No. 19-CV-10707 (GHW), 2020 WL 6508858, at *5 (S.D.N.Y. Nov. 5, 2020) (finding a privacy interest in documents and communications "regarding any loan transactions, funding, collateral, [or] prior loans" held by a financial institution); Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., 2014 WL 5420225, at *5-6 (finding a privacy interest in records concerning a potential IPO). ACS "clearly seek[s] discrete categories" of Case-Mate's financial information from Chase relating to the terms of various potential transactions. Sky Med. Supply, 2017 WL 1133349, at *8; see Solow, 2008 WL 190340, at *2-4; Morelli, 2020 WL 6508858, at *5; Refco, 2014 WL 5420225, at *5-6. This information is not publicly available, and Case-Mate "has a privacy interest in maintaining the confidentiality" of its financial information. Solow, 2008 WL 190340, at *4; Equinox Gallery Ltd. v. Dorfman, No. 17-CV-230 (GBD) (DF), 2018 WL 637764, at *2 n.1 (S.D.N.Y. Jan. 22, 2018) ("[G]iven that the asset discovery that Defendants are opposing relates to the existence and

alleged dissipation of Defendants' assets, this Court accepts that, based on their privacy interest in their own financial information, Defendants have standing to move to quash the subpoena at issue").

ACS argues that Case-Mate has not made a sufficient showing to confer standing because it has not identified specific information that will be produced by Chase. ECF No. 1002 at 6. It is true that "in order for a party to have standing to challenge a subpoena served on a non-party, there must be more than 'a conclusory assertion that the subpoenas seek documents that are private, confidential, or commercially sensitive.'" Refco, 2014 WL 5420225, at *4 (quoting Universitas Educ., 2013 WL 57892, at *5). However, Case-Mate has made more than a conclusory assertion here. See ECF No. 991 at 6-8 ("ACS seeks Case-Mate's . . . analysis and assessment of the potential acquisition of Vinci or its assets including financial examination and considerations, and strategies related to Case-Mate's growth and success provided to and/or discussed with its lender. These documents include confidential financial information that Case-Mate uses in its business operations and transactions that are not publicly available."); see id. at 6 ("[T]he subpoena demands communications and documents about Case-Mate's attempted acquisition of Vinci's assets [and] Case-Mate's activities as Vinci's lender (after purchasing the Siena Loan).").

ACS also argues that the information it seeks "does not implicate any privacy or proprietary concerns" because Case-Mate's potential acquisition of Vinci or its assets was contemplated in June 2023 and any related records are "outdated." ECF No. 1002 at 6. However, for the purposes of standing, Case-Mate's privacy interest does not hinge on the age of the information sought or its staleness. See Refco, 2014 WL 5420225, at *8 (finding a privacy interest in financial information spanning a 13-year period); Morelli, 2020 WL 6508858, at *6

(finding a privacy interest in financial information spanning a 10-year period); Sky Med. Supply, 2017 WL 1133349, at *6 (same). Even if the information ACS seeks from Chase regarding Case-Mate is "outdated," it is nonetheless financial information that Case-Mate maintains a privacy interest in.

Consequently, because Requests No. 1, 2, 3, 5, 9, 10, 11, and 12 in the Chase Subpoena "could reasonably require" Chase "to produce . . . [Case-Mate's] financial records," Case-Mate's privacy interest in those records confers it standing to object to the Chase Subpoena. Zitner Handling, Inc. v. Gen. Elec. Co., No. 04-V-500 (GLS) (DRH), 2006 WL 3359317, at *3 (S.D.N.Y. Nov. 16, 2006); Union Square Ltd. v. Mr. Bar-B-Q Prods. LLC, No. 21-CV-11032 (VSB), 2023 WL 4187725, at *2 (S.D.N.Y. June 26, 2023) ("Although the subpoena is directed at a third-party, because it seeks financial information about Respondent, Respondent has standing.").[2]

Independent of its asserted privacy interests, Case-Mate also challenges the Chase Subpoena's relevance and proportionality. ECF No. 991 at 11-18. Case-Mate argues that the Chase Subpoena does not seek information relevant to any of ACS's claims or defenses and is unduly burdensome in scope. Id. at 11-12. As a non-party, however, Case-Mate lacks standing to challenge the Chase Subpoena on these grounds. Universitas Educ., 2013 WL 57892, at *5 ("A

---

[2] Because the Chase Subpoena seeks materials that "qualify as financial information with respect to which [Case-Mate] has standing, it is unnecessary for the Court to make an independent determination with respect to each distinct" request. MG Freesites Ltd. v. Scorpcast, LLC, No. 22-MC-361 (PAE), 2023 WL 2822272, at *3 n.1 (S.D.N.Y. Apr. 7, 2023). "Standing premised on a privacy interest allows challenges to related documents and other materials *not* directly implicated by the privacy interest." Id. (citing Copantitla v. Fiskardo Estiatorio, Inc., No. 09-CV-1608 (RJH) (JCF), 2010 WL 1327921, at *8 (S.D.N.Y. Apr. 5, 2010)). The Court will therefore evaluate the merits of Case-Mate's challenge to all of the requests in the Chase Subpoena, including those that do not concern financial records, such as communications between Chase and Kate Spade and Coach concerning the at-issue license agreements. See ECF No. 964-6 at 8 (Chase Subpoena Request Nos. 4, 6, 7, 8).

party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevance or undue burden.”). Nevertheless, Case-Mate may “raise the relevance of the evidence sought by a subpoena for purposes of balancing the relevance of the information sought against the litigant’s protected [privacy] interest.” Silverstone, 650 F. Supp. 3d at 203 (citing Refco, 2014 WL 5420225, at *6). Accordingly, the Court considers Case-Mate’s relevance arguments “for the limited purpose of weighing the relevance of the information sought” against Case-Mate’s privacy interests. Silverstone, 650 F. Supp. 3d at 203.

**B. Timeliness and Notice of the Chase Subpoena**

The Chase Subpoena was served on the appropriate Chase entity on February 13, 2025, after the close of fact discovery on January 31, 2025. ECF No. 964-3 at 5; ECF No. 964-6 at 2. Case-Mate contends that the Court should deny ACS’s motion to compel because the Chase Subpoena is untimely. ECF No. 991 at 10. However, ACS became aware of the Chase entity to whom the subpoena had to be directed only after the close of discovery, and once it was made aware of the error, ACS acted diligently and served the Chase Subpoena within two days. ECF No. 964-3 at 5; ECF No. 964-6 at 2. In short, ACS has shown good cause for the late-served Chase Subpoena. See DIRECTV, Inc. v. Richards, No. 03-CV-5606, 2005 WL 1514187, at *2 (D.N.J. June 27, 2005) (denying motion to quash where the plaintiff served the wrong entity and identified the proper custodian of records shortly after the discovery deadline).

Case-Mate also argues that the Court should deny ACS’s motion to compel because ACS did not give Case-Mate notice of the Chase Subpoena. ECF No. 991 at 11. Even if ACS was required to provide formal notice of the subpoena and failed to do so, there was no prejudice to Case-Mate. Case-Mate would have been aware of the Chase Subpoena given that it attended the discovery conferences where the subpoena was discussed. ECF No. 964 at 4-9. ACS also

provided Case-Mate with an update on the status of non-party subpoenas, including the Original Subpoena. ECF No. 964 at 3. And on October 16, 2025, ACS also filed a letter on docket, informing the Court of the existence of the Original Subpoena, and Case-Mate would have had notice of that letter. ECF No. 938 at 2. More importantly, Case-Mate has not suffered any prejudice because it has had an opportunity to oppose the subpoena and Chase has not produced any records in response to the subpoena. Morocho v. Stars Jewelry by A Jewler Corp., 345 F.R.D. 292, 294 (S.D.N.Y. 2024) (citing Malinowski v. Wall St. Source, Inc., No. 09-CV-9592 (JGK) (JLC), 2010 WL 4967474, at *2 (S.D.N.Y. Nov. 23, 2010); Kingsway Fin. Servs., Inc. v. Pricewaterhouse–Coopers LLP, No. 03-CV-5560 (RMB) (HBP), 2008 WL 4452134, at *3 (S.D.N.Y. Oct. 2, 2008)).

**C. Case-Mate's Motion to Quash and Motion for a Protective Order**

Where a movant like Case-Mate "claims a privacy interest in information subject to a subpoena and the movant has standing," Silverstone, 650 F. Supp. 3d at 203, the court must "weigh[ ] the relevance or probative value of the documents sought against the privacy interests . . . asserted." Solow, 2008 WL 190340, at *4; U.S. Reg'l Econ. Dev. Auth., LLC v. Matthews, No. 16-CV-01093, 2018 WL 2172713, at *9 (D. Conn. May 10, 2018) ("[T]he Court will consider whether the sought-after documents are relevant, to determine whether their probative value outweighs the privacy interest that defendants assert.").

The documents sought by ACS here are plainly relevant to ACS's counterclaims and affirmative defenses, which concern alleged malfeasance and tortious interference by Case-Mate with Vinci's licensing agreement with Kate Spade. For example, ACS seeks documents concerning any potential acquisition by Case-Mate of Vinci or its assets, and the purchase of the Siena Loan. See ECF No. 964-6 at 7-8. Such documents are directly relevant to ACS's

affirmative defenses concerning Case-Mate's alleged fraudulent acts or omissions in connection with the Kate Spade licensing agreement. See ECF No. 607 at 15-16. Additionally, the same documents are also relevant to Vinci's claims that Case-Mate conspired with Kate Spade and tortiously interfered with Vinci's license agreement and also took steps to force Vinci out of the relevant market. See ECF No. 568 at ¶¶ 119-171, 186-216; see also Pippins v. KPMG LLP, 279 F.R.D. 245, 254 (S.D.N.Y. 2012) ("Relevance is to be interpreted broadly and includes any matter that bears on, or that reasonably could lead to other information that could bear on, any issue that is or may be in the case.") (internal quotation marks and citation omitted).

Further, each request in the Chase Subpoena is linked to a claim asserted by ACS. For example, ACS claims that Case-Mate "had superior knowledge [ACS] was negotiating with Kate Spade for a new licensing relationship and that Kate Spade had already determined to replace Vinci with Case-Mate . . . as of mid-April 2023." ECF No. 607 at 80. With that superior knowledge, ACS alleges that Case-Mate made misrepresentations and omissions that caused ACS to payoff the Case-Mate loan at an over-inflated price. Id. at 81. Accordingly, the Chase Subpoena requests "all documents and communications" between Chase and Case-Mate and Chase and Kate Spade concerning Case-Mate's license agreement with Kate Spade. ECF No. 964-6 at 8. The Chase Subpoena also requests all documents and communications between Chase and any employee, officer, or director of Case-Mate or Kate Spade concerning this litigation, which is inherently linked to the claims asserted by the parties. Id.

ACS also brings claims for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment against Case-Mate stemming from and related to the Siena Loan Agreement, Project Shield (Case-Mate's potential acquisition of InCase, a Vinci asset), and Project Shield II (Case-Mate's potential acquisition of Vinci). ECF No. 607 at 90. The Chase

Subpoena, in turn, requests relevant documents and communications concerning (1) Case-Mate's purchase of the Siena Loan; (2) any agreement Chase entered to fund payroll for any entity connected to a transaction involving Case-Mate, Vinci, or Project Shield; (3) Case-Mate's plans for Vinci following its acquisition; (4) any UCC Article 9 sale of any Vinci-related assets; (5) any potential acquisition of Vinci or its assets; and (6) Project Shield and Project Shield II. ECF No. 964-6 at 9-10.

Moreover, the relevance of the documents and communications ACS seeks "far outweighs any general privacy interest asserted by" Case-Mate. Refco, 2014 WL 5420225, at *8. Case-Mate does not identify any specific harm that will result from production, "other than having to produce information in which they have a privacy interest." Id.; Adomni, Inc. v. CT Media, LLC, No. 23-CV-10338 (DEH), 2024 WL 4981510, at *3 (S.D.N.Y. Nov. 19, 2024) ("Other than the allegation that such a [privacy] interest exists, the movant fails to inform the Court how any relevant privacy interests would be negatively impacted by the disclosure of documents."); U.S. Reg'l Econ. Dev. Auth., 2018 WL 2172713, at *9. Thus, Case-Mate has not demonstrated how it would be harmed by disclosure of the information sought through the subpoena.[3] BLST Northstar, LLC v. Atalaya Cap. Mgmt. LP, No. 24-MC-66 (RWL), 2024 WL 2279195, at *5 (S.D.N.Y. Mar. 12, 2024).

However, as written, Request No. 11 in the Chase Subpoena fails the relevance requirement of Rule 26(b)(1). Request No. 11 seeks all documents and communications between Chase and Case-Mate concerning any request for funds, money, or an increase in a line of credit

[3] For this reason, Case-Mate has not established that a protective order is appropriate. Closed Joint Stock Co., 2016 WL 1364942, at *3 (quoting John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186-87 (S.D.N.Y. 2014)) (noting that a party opposing complete disclosure must establish a "clearly defined, . . . specific" injury that is "serious or significant").

from August 22, 2022, through June 5, 2022. ECF No. 964-6 at 9. This request is overbroad on its face. Absent more specificity concerning the request for funds and its connection to this litigation, ACS cannot "articulate a concrete linkage" between the discovery sought and the claims asserted. Edmonson, 2018 WL 4112816, at *1 (internal quotation marks omitted). To satisfy the relevance requirement, ACS must narrow the request so that there is a concrete linkage between the information sought and its claims in the Related Actions.

**D. Chase is Not Entitled to Attorney's Fees Under Rule 45(d)(1)**

Chase seeks reasonable attorney's fees incurred in responding to the Chase Subpoena pursuant to Federal Rule of Civil Procedure 45(d)(1). ECF No. 993-6 at 15. Under the first prong of the Rule 45(d)(1) inquiry, "the 'undue burden' analysis is tied to the relevance of the material sought and is directly related to the court's decision to quash a subpoena for imposing an undue burden." Breaking Media, 2021 WL 1299108, at *7 (citing Molefi v. Oppenheimer Tr., No. 03-CV-5631 (FB) (VVP), 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007)). Attorney's fees are properly awarded where "the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash." Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-CV-1382 (RWS), 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003).

Here, not only did Chase not bring a motion to quash, it has not opposed ACS's motion to compel compliance with the subpoena. See ECF No. 993-6. More importantly, Chase had agreed to produce documents responsive to the Chase Subpoena and was on the verge of producing those documents. See ECF No. 964-5 at 2-3. And as already discussed, the material sought by ACS is plainly relevant to the merits of the Related Actions. In short, Chase has not demonstrated that compliance with the subpoena would impose an undue burden. Chase is thus not entitled to reasonable attorney's fees from ACS under Rule 45(d)(1).

## CONCLUSION

For the foregoing reasons, ACS's motion to compel Chase to comply with the Chase Subpoena is **GRANTED**, Case-Mate's motion to quash the Chase Subpoena, or, in the alternative, for a protective order is **DENIED**, and Chase's motion to compel payment of reasonable attorney's fees from ACS is **DENIED**. The Clerk of Court is respectfully directed to close the motions at ECF Nos. 963 and 993.

**SO ORDERED.**

DATED: New York, New York
September 23, 2026

VALERIE FIGUEREDO
United States Magistrate Judge